**FILED**

**UNITED STATES DISTRICT COURT**
for the
**DISTRICT OF COLUMBIA**

OCT 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

STEVEN A. MCGEE          **COMPLAINT**          NO._____
Plaintiff
ID# 10511-040
LSCI Allenwood                              **Jury Trial Demanded of Causes of**
P.O. Box 1000                               **Action Against Defendants In Their**
White Deer, Pa. 17887                       **Individual Capacities, Trial By**
                                            **Court Requested of Federal Tort**
           V                                **Claims Against United States**

**UNITED STATES**

**ALBERTO GONZALEZ**
Attorney General & Successor
950 Pennsylvania Avenue
Washington, D.C. 20530
Sued In <u>Official Capacity</u>

**Karen Tandy**
DEA Administrator                    Case: 1:07-cv-01923
Office of Chief Counsel              Assigned To : Unassigned
DEA Headquarters                     Assign. Date : 10/25/2007
P.O. Box 28356                       Description: Pro Se General Civil
Washington, D.C. 20038
Sued In <u>Official Capacity</u>

**John F. Clark**
Director, U.S. Marshals Service
United States Marshals Service
Office of the Director
Washington, D.C. 20530
Sued In <u>Official Capacity</u>

**Margaret Chiara**
U.S. Attorney (former) Western Michigan
5th Floor the Law Building
330 Ionia Avenue NW
Grand Rapids, Mi. 49503
Sued In <u>Official Capacity</u>

**B. Rene Shekmer**
Assistant U.S. Attorney
5th Floor the Law Building
330 Ionia Avenue NW
Grand Rapids, Mi. 49503
Sued In <u>Official Capacity</u>

**Brian Delaney**
Assistant U.S. Attorney
5th Floor the Law Building
330 Ionia Avenue NW
Grand Rapids, Mi. 49503
Sued In <u>Official Capacity</u>

**RECEIVED**

SEP 2 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

(1)

## UNITED STATES DISTRICT COURT
### for the
## DISTRICT OF COLUMBIA

**DEFENDANTS**                          COMPLAINT

**Loretta Moore**                                    NO._____
DEA Agent
DEA Headquarters
700 Army-Navy Drive
Arlington, Va. 22202
Sued In <u>Official & Individual</u>
<u>Capacities</u>

**Sheila Goodell**
DEA Agent
DEA Headquarters
700 Army-Navy Drive
Arlington, Va. 22202
Sued In <u>Official & Individual</u>
<u>Capacities</u>

**"Willie" Wilson**                    **Mike Swidwinski**
DEA Agent                              DEA Special Agent
DEA Headquarters                       DEA Headquarters
700 Army-Navy Drive                    700 Army-Navy Drive
Arlington, Va. 22202                   Arlington, Va.
Sued In <u>Official & Individual</u>          Sued In <u>Official & Individual</u>
<u>Capacities</u>                             <u>Capacities</u>

**Dan Elbers**
U.S. Marshal
U.S. Marshals Service
600  Army-Navy Drive Ste.1250
Arlington, Va. 22202
Sued In <u>Official & Individual</u>
<u>Capacities</u>

**John Doe #1**                        **Edith Pickers**
U.S. Marshal Participating In          U.S. Marshal or Deputy
Arresting Plaintiff 2-25-04,           U.S. Marshals Service
and in Transferring Plaintiff          600  Army-Navy Drive Ste. 1250
On May 25, 2004                        Arlington, Va. 22202
U.S. Marshals Service                  Sued In <u>Official & Individual</u>
600  Army-Navy Drive Ste.1250          <u>Capacities</u>
Arlington, Va. 22202
Sued In <u>Official & Individual</u>
<u>Capacities</u>

**Jeff O'Hara**
Retained Attorney
303 Waters Building
161 Ottawa Avenue NW
Grand Rapids, Mi. 49503
Sued In <u>Individual</u> Capacity

(2)

## UNITED STATES DISTRICT COURT
### for the
### DISTRICT OF COLUMBIA

DEFENDANTS                          COMPLAINT

KENNETH TABLEMAN                                    NO._____
          &
FEDERAL DEFENDERS
CJA Appointed Attorney
50 Louis NW
Grand Rapids, Mi. 49503
Sued In His & Their
Individual Capacity

ROBERT HOLMES BELL
U.S. District Judge
Federal Building
110 Michigan Avenue NW
Grand Rapids, Mi. 49503
Sued In Official Capacity

Ellen Carmody
U.S. Magistrate Judge
Federal Building
110 Michigan Avenue NW
Grand Rapids, Mi. 49503
Sued In Official Capacity

Susan Driscoll Burque
Case Manager, U.S. District Court
Federal Building
110 Michigan Avenue NW
Grand Rapids, Mi. 49503
Sued In Official Capacity

Ronald Weston
Clerk of the U.S. District Court
Federal Building
110 Michigan Avenue NW
Grand Rapids, Mi. 49503
Sued In Official Capacity

John Doe #2
Clerk of the U.S. District Court
for the Western District of Michigan
Who Removed or Destroyed Plaintiff's
Filed Suppression Motions
Federal Building
110 Michigan Avenue NW
Grand Rapids, Mi. 49503
Sued In Official Capacity

Kevin Schad
CJA Appointed Attorney
1001 W. Main Street, Ste. F
Lebanon, Ohio 45036
Sued In Individual Capacity

(3)

UNITED STATES DISTRICT COURT
for the
DISTRICT OF COLUMBIA

DEFENDANTS                            COMPLAINT

**Melvin Houston**                                    NO._____
CJA Appointed Attorney
15346 Asbury Park
Detroit, Mi. 48227
Sued In <u>Individual Capacity</u>

**Susan Burlage**
Case Manager, U.S. 6th Cir.
Court of Appeals
Office of the Clerk
U.S. Court of Appeals
100 East Fifth Street, Rm. 532
Cincinnati, Ohio 45202
Sued In <u>Official Capacity</u>

**Janice Yates**
Deputy Clerk, U.S. 6th Cir.
Court of Appeals
Office of the Clerk
U.S. Court of Appeals
100 East Fifth Street, Rm. 532
Cincinnati, Ohio 45202
Sued In <u>Official Capacity</u>

**Ken Lumas**
Records Clerk, U.S. 6th Cir.
Court of Appeals
Office of the Clerk
U.S. Court of Appeals
100 East Fifth Street, Rm 532
Cincinnati, Ohio 45202
Sued In <u>Official Capacity</u>

**Ralph Guy**
U.S. Sixth Circuit Court of Appeals Judge
100 East Fifth Street
Potter Stewart U.S. Courthouse
Cincinnati, Ohio 45202
Sued In <u>Official Capacity</u>

**Ronald Gilman**
U.S. Sixth Circuit Court of Appeals Judge
100 East Fifth Street
Potter Stewart U.S. Courthouse
Cincinnati, Ohio 45202
Sued In <u>Official Capacity</u>

**John Rogers**
U.S. Sixth Circuit Court of Appeals Judge
100 East Fifth Street
Potter Stewart U.S. Courthouse
Cincinnati, Ohio 45202
Sued In <u>Official Capacity</u>

(4)

UNITED STATES DISTRICT COURT
for the
DISTRICT OF COLUMBIA

DEFENDANTS                           COMPLAINT

**Chicago Title Company**                    NO._____
941 W. Milham
Portage, Mi. 49024
In Their Individual Capacity

**Chuck Zagon**
Real Estate Agent, ERA Realty
2790 South 9th Street
Kalamazoo, Mi. 49009
Sued In Individual Capacity

**Michael Mahieu**
Private Party
10603 Stadium Drive
Kalamazoo, Mi. 49009
Sued In Individual Capacity

**John Doe #3**
Title Company Wrongfully Conveying
Plaintiff's Property at 31669
Pokagon Highway
Sued In Individual Capacity

**Michael & Jennifer Barlow**          **John Doe #4 Purchaser**
31669 Pokagon Highway                  of Property In Pokagon,
Niles, Mi. 49120                       Mi., Lots 28,29,30,31
Sued In Individual Capacity            Burnett's Addition, Sued In
                                       Individual Capacity

## GENERAL ALLEGATIONS

This Complaint is a civil action undertaken pursuant to
federal question and diversity jurisdiction of the Federal courts,
alleging a widespread conspiratorial enterprise among the named
Defendants to either commit, or else aid, abet and conceal a fraud
on the court in the District court of Western Michigan, with the
purpose of depriving Plaintiff McGee of the process of law due
under the Fifth and Fourteenth Ammendments, of his Sixth Amendment
right to counsel, and his Fourth Amendment right to be free from
illegal search and seizure. Defendants are also alleged to have
unconstitutionally deprived, or aided and abetted in depriving, the

(5)

Plaintiff of property, without the due process of law through means of extortion, abuse of process, malpractice, undue influence, wrongful conversion, and wrongful conveyance.

Many of the judicial and U.S. Attorney Defendants being sued in their official capacities are acknowledged to possess judicial immunity from damages, but are alleged to have knowingly and consciously committed overt acts, under color of federal law and in abusing their positions of Federal authority, in furtherance of the goals of the conspiratorial enterprise, for which liability is alleged to fall on the United States or else the private party conspirators such as attorneys or real estate agents who profited from the unlawful abuses of process perpetrated by the Federal official Defendants. The judicial and U.S. Attorney Defendants are also asserted to be subject to declaratory and injunctive relief under Federal law.

Plaintiff McGee was completely impoverished by the tortious and/or unconstitutional acts of the Defendants, and suffered actual damages, due to the joint and several actions of private parties working in concert with immune Federal officials, of everything earned or acquired over a lifetime; over $500,000.00 in real property and assets. In addition, Plaintiff suffered post-traumatic stress syndrome as a direct result of the warrantless search and seizure of his home and his subsequent hours-long false imprisonment and intimidating interrrogation without counsel by DEA Agents and the KVET (Kalamazoo Valley Enforcement Team) officers under their supervision, which has gone completely untreated and undiagnosed while Plaintiff McGee has been incarcerated in the Bureau of ? Prisons.

## JURISDICTION

Jurisdiction of the District Court for the District of Columbia is invoked over the Federal questions contained in the allegations of Plaintiff's Complaint pursuant to 28 USC § 1331, 28 USC § 1332, 28 USC § 1346, 28 USC § 1355, 28 USC § 1367, 28 USC 1395(a)&(c), 28 USC 1391, the Federal Tort Claims Act 28 USC § 1402, the Bivens Remedy (Bivens v Six Unknown Narcotics Agents 403 US 388, 29 L Ed 2d 619, and D.C. Code 11 § 521 Childs v United States Board of Parole 511 F 2d 1270.

## VENUE

Venue is proper in the District of Columbia under the diversity clauses of 28 USC § 1332 as the Defendants reside in four different judicial districts in Michigan, Ohio, and Washington D.C. from the Harrisburg, Pennsylvania District where Plaintiff McGee is currently incarcerated. Diversity jurisdiction is also apparent in the fact that the tortious acts and abuses of process underlying the Plaintiff's Complaint originated in executing decisions and policies formulated by the Federal Agency Defendants of the United States Justice Department, the Drug Enforcement Agency, and U.S. Marshals Service by Defendants Gonzalez, Tandy, Clark or their predecessors, within the jurisdiction of the District of Columbia. Jurisdiction in the District of Columbia is also asserted pursuant to 28 USC § 1395 in alleging that the proceeds from the unlawful sale of Plaintiff McGee's property were brought into the District of Columbia in being deposited by the U.S. Marshals in a special asset forfeiture fund based in Washington D.C.

An additional reason that venue would be inappropriate in Michigan or Ohio, where many of the alleged tortious acts by

(7)

Federal law enforcement and Federal judicial officers are acknowledged to have occurred, is that the Chief U.S. District Judge of Western Michigan, Robert Holmes Bell himself, is alleged to have been directing and/or actively participating in the racketeering scheme of collusion between the U.S. Attorney's Office and private "coooperating" attorneys that led to:

(1)  The fraud on the court of Plaintiff McGee's filed Suppression Motions [R.#23,25] against the illegal search being removed from the District court's judicial records prior to trial in order to place coercive pressure on Plaintiff McGee to plead guilty.

(2)   The unlawful forfeitures of Plaintiff McGee's property and assets without an adjudication of guilt, a conviction for the underlying offense, or the valid and final judgment of the court.

     As has been repeatedly demonstrated by documentary and testimonial evidence in the record, both the U.S. District Court  in Western Michigan and the Sixth Circuit Court of Appeals have repeatedly abused their judicial authority to conceal the fraud on the court that occurred, and the expropriation of Plaintiff McGee's property, by refusing to allow witnesses to be subpoened, refusing to hold requested evidentiary hearings, and by intentionally suppressing material and relevant evidence, both in the District court and on Appeal, by refusing to record, or by actually destroying, Plaintiff McGee's filed Motions and Exhibits that sought to put the issues of Government and judicial misconduct before the courts.

     Filing a civil action anywhere within the jurisdiction of the Western District of Michigan or the Sixth Circuit Court of Appeals would therefore be an exercise in futility, as those courts have already proven beyond a doubt that their only interest is covering

up for the criminal acts and abuses of process by Federal law
enforcement and their own judicial officers in this case, and neither
court would hesitate to continue abusing their judicial authority to
suppress the truth by dismissing Plaintiff McGee's claims on contrived
grounds.

If there were any judicial integrity left in the Western
District of Michigan, or the Sixth Circuit Court of Appeals, both the
fraud on the court that occurred in the District court in removing
the filed Suppression Motions from the judicial record, and the
subsequent cover-up of the Sixth Circuit Clerk's Office in refusing
to record Plaintiff McGee's Motions on Appeal alleging Government
misconduct, would be the subject of a grand jury investigation and
indictments.

That obviously will never happen, and the only appropriate
venue for the Plaintiff's civil action is the nuetral District of
Columbia, headquarters of the U.S. Department of Justice, the DEA,
and their unofficial policies of undermining the rule of law and the
Constitution by exercising improper influence in the Federal courts,
that directly led to the abuses documented in Plaintiff's Complaint.

## PARTIES AND FACTUAL ALLEGATIONS

(1)    At all times relevant to this Complaint, Plaintiff Steven A.
McGee has been a citizen of the United States, originally being a
resident of Kalamazoo in Western Michigan, until his home and all
real property were unlawfully forfeited by the U.S. District court.
At the times relevant to this Complaint between November 1, 2001 and
February 25, 2004, Plaintiff McGee was a resident of Bloomington
and Northern Indiana in the Seventh Circuit until his arrest by
U.S. Marshals. Plaintiff McGee is currently incarcerated at LSCI

Allenwood Federal prison, White Deer, Pa. in the Middle District of Pennsylvania, but whether that actually qualifies McGee as a "resident" of Pennsylvania is a stretch of definition. Plaintiff McGee is technically homeless, a resident of nowhere with no identifiable home judicial district.

(2)    At the times relevant to this Complaint, the <u>United States Justice Department</u>, the <u>Drug Enforcement Agency</u> (DEA), and the <u>U.S. Marshals Service,</u> under the direct supervision of Defendants **Alberto Gonzalez** as successor to John Ashcroft at Justice, **Karen Tandy** or predecessor, and **John F. Clark** or predecessor, developed and implemented synchronized policies that authorized warrantless raids, the unlawful seizure and expropriation of private property through abuses of process, and the exercise of improper influence on the judicial branch of government in order to deny criminal defendants basic constitutional rights.

(3)    The policies developed and implemented by Defendants **Gonzalez, Tandy,** and **Clark** directly resulted in Plaintiff McGee being subjected to a warrantless midnight search and hours-long false imprisonment and interrogation by DEA agents directing a local multi-jurisdictional task force, KVET, in being denied basic Constitutional due process in his criminal proceedings and Appeals, and being unlawfully deprived of over $500,000.00 in property and assets.

(4)    At the times relevant to this Complaint, **Loretta Moore** and **Sheila Goodell** were employed in capacities as agents by the Drug Enforcement Administration (DEA).

(5)    DEA Agents Moore and Goodell directed a local multi-jurisdictional task force, the Kalamazoo Valley Enforcement Team (KVET) to surround Plaintiff's home after midnight on May 11, 2001, and attempt to gain entry without a warrant.

(6)   After being told to leave the property, KVET officers seized Plaintiff McGee in the backyard of his home at approximately 1:00 AM, and then proceeded to enter Plaintiff's home with DEA Agents Moore and Goodell without a warrant.[Attch.**Ex.C(a)**Affidavit par.**1**

(7)   Once inside Plaintiff's home, DEA Agents Moore and Goodell interrogated Plaintiff without issuing Miranda warnings, and used a laptop computer brought along for the purpose to download information on Plaintiff McGee's financial assets, which they gained access to by opening Plaintiff's mail and examining financial and income tax records in the home. [Attch.**Ex.C(a)**Affidavit par.**1** ]

(8)   After DEA Agents Moore and Goodell had been searching Plaintiff McGee's home and financial records and interrogating him for close to two hours, they sent local KVET officers to wake up a judge in the middle of the night to obtain a State Search warrant to cover their actions. [Attch. **Ex.C(a)**Affidavit par.**2** ]

(9)   DEA Agents Moore and Goodell and their KVET proxies then subjected Plaintiff McGee to an hours-long interrogation without requested counsel lasting until dawn, without Plaintiff McGee ever having been placed under arrest.[Attch.**Ex.C(a)**Affidavit par.**2** ]

(10)   KVET officers under supervision of DEA Agents Moore and Goodell falsely imprisoned and assaulted Plaintiff McGee when he attempted to leave his home at approximately 4:00 AM May 11, 2001, physically restraining him and removing his car keys from his pockets to prevent him from leaving.[Attch.**ExC(a)**Affidavit par.**2** ]

(11)   DEA Agents Moore and Goodell used the information obtained from their warrantless search of Plaintiff McGee's financial records and mail the next morning to freeze Plaintiff's savings account at Michigan National bank containing approximately $86,000.00. [Attch. **Ex.C(a)**Affidavit par.**3** ]

(12)    At the times relevant to this Complaint, Defendant **Willie Wilson** was employed as an agent by the DEA.

(13)    On May 28, 2001, DEA Agents Moore, Goodell, Wilson, or others, intercepted a cell phone communication between Plaintiff McGee and his retained attorney; learning of a planned meeting scheduled for May 29th and a statement that had been prepared by Plaintiff McGee detailing DEA and KVET actions during the illegal search of May 11, 2001.

(14)    DEA Agents Wilson and Moore, together with KVET officers under their direct supervision, then intercepted and arrested Plaintiff McGee on a Federal warrant as he was on his way to his attorney Randy Levine's office on May 29, 2001 at approximately 4:00 PM.

(15)    KVET officers under the supervision of DEA Agents Moore and Wilson then seized the legal briefcase from Plaintiff McGee's car and removed the privileged attorney-client statement that had been prepared for attorney Levine from the legal briefcase for DEA and KVET agents to take turns reading.

(16)    DEA Agents Moore, Goodell, and Wilson acted in concert with AUSA Shekmer in deleting the DEA agent's reports on oral statements made during the illegal search of May 11, 2001, and the arrest of May 29, 2001, from the Discovery turned over by AUSA Shekmer to Plaintiff's attorney Levine.

(17)    At all times relevant to this Complaint, Defendant **AUSA B. Rene Shekmer** was employed by the Justice Department as an Assistant United States Attorney (AUSA) for the Western District of Michigan. AUSA Shekmer was assigned to prosecute Plaintiff McGee's criminal case of 1:01-CR-122.

(18)    AUSA Shekmer first intentionally deleted the DEA agent's

(12)

reports on Plaintiff's oral statements made during the illegal search
of May 11, 2001 and the arrest of May 29, 2001, eliminating any
potential references to the seized legal briefcase and the review by
DEA & KVET officers of the privileged attorney-client statement from
the Discovery turned over to Plaintiff's attorney Levine.

(19)    AUSA Shekmer also heavily redacted and edited KVET police
statements turned over in Discovery to Levine to conceal the
involvement of DEA agents in planning and executing the illegal search,
and the unlawful obtaining of a State Warrant for a Federal search.

(20)    In pursuit of the goal of unlawfully depriving Plaintiff McGee
of property without due process, AUSA Shekmer also willfully failed
to copy and disclose in Discovery the over 300 pages of exculpatory
financial documents and papers seized from Plaintiff's home during
the illegal search of May 11, 2001, in direct violation of the
Initial Discovery Order.

(21)    In pursuit of the conspiracy to commit a fraud on the court
and unlawfully deprive Plaintiff of property, AUSA Shekmer contacted,
or was contacted by, Plaintiff's newly retained attorney Jeff O'Hara,
and solicited the collusion of attorney O'Hara in a conspiratorial
agreement to commit a fraud on the U.S. District Court by removing
Plaintiff McGee's previously filed Suppression Motions from the
judicial record,  for purposes of aiding in coercing a plea from
the Plaintiff, and for extorting property and assets
from Plaintiff McGee not forfeitable under law. [Attch.**Ex.C(a)**
Affidavit par. **27** ]

(22)    In further pursuit of the conspiracy to commit a fraud on the
court and unlawfully deprive Plaintiff of property, AUSA Shekmer
acted in concert with Plaintiff's attorney O'Hara, and U.S. District
Judge Bell or his Case Manager Susan Burque acting on Bell's express

directions, to influence Clerk of the Court Ronald Weston or John
Doe #2 Clerk to remove Plaintiff's filed Suppression Motions from
the District Court's judicial records. [See Attch.**Ex.E**, R.#25
Certificate of Service]

(23)    In further pursuit of the alleged conspiracy, AUSA Shekmer
arranged in concert with Plaintiff's attorney O'Hara, District Court
Case Manager Susan Burque, and U.S. Magistrate Judge Ellen Carmody,
to close the doors to U.S. District Court prior to the start of a
scheduled Pretrial Conference of July 30, 2001, and delay the start
of court, for the purposes of allowing AUSA Shekmer and arresting
DEA Agent Moore to coerce and extort Plaintiff McGee to sign a
Plea Agreement in a court hallway without benefit of counsel. [See
Attch.**Ex. C(a)**Affidavit par.**36-46**]

(24)    In further pursuit of the conspiracy to commit a fraud on the
court and unlawfully deprive Plaintiff of property, AUSA Shekmer
acted in concert with Plaintiff's attorney O'Hara to physically
disrupt and halt Plaintiff McGee's testimony at the hastily convened
Plea Hearing subsequently conducted July 30, 2001, as Plaintiff
McGee attempted to testify as to the legal origins of the funds
deposited in his seized savings account. [Attch.**Ex. C(a)**Affidavit
par.**49-50** also financial "exact records" at Attch.**Ex.H** ]

(25)    AUSA Shekmer then held a whispered conference with attorney
O'Hara, and O'Hara returned to Plaintiff McGee to issue whispered
threats during the break in the proceedings to either alter his
testimony or else suffer the consequences of an extended prison
sentence. [Attach. **Ex. C(a)**    , Affidavit, Par.**51-52**]

(26)    While Plaintiff McGee was on direct Appeal COA# 04-1706
between May 2004 and September of 2006, AUSA Shekmer communicated

with, and conspired and acted in concert with, Sixth Circuit Clerks
Sue Burlage, Janice Yates, and Ken Lumas, to prevent Motions and
Exhibits filed by Plaintiff McGee from being recorded in the Court
of Appeals, including **Audiotapes** of McGee's Plea being coerced on
July 30, 2001, and a Motion to Require Revision of the Joint Appendix
#04-1706 Due To Fraud On The Court , that outlined Government
and judicial misconduct.

(27)   At all times relevant to this Complaint, **Ronald Weston** was
Clerk of the Court for the Western District of Michigan.**John Doe #2**
Clerk was employed by the Clerk's Office at the time Plaintiff
McGee's then attorneys Mequio & Peterson filed Suppression Motions
against the illegal search on July 10, 2001. The Suppression Motions
filed by Mequio & Peterson on 7/10/01 included a Motion To Suppress
Evidence, Motion To Suppress Statements, Motion To Preclude FRE
404(b) Evidence, and Motion To Adjourn Jury Trial & Motion To Extend
Motion Deadlines. [See Attached **Ex.E**, R#25 Certificate of Service]

(28)   In active support of the conspiracy to commit fraud on the
court and, under the influence of, and in concert with either, AUSA
Shekmer, attorney Jeff O'Hara, District Court Case Manager Susan
Burque, U.S. District Judge Bell, or some combination of those
judicial officers, Clerk Ronald Weston or Clerk John Doe #2 committed
a fraud on the court by removing all of Plaintiff McGee's Suppression
Motions from the judicial record (**16** pages),except the Motion To
Adjourn Jury Trial & Motion To Extend Motion Deadlines, which was the
only Motion recorded at [R.#23].

(29)   In concealing the fraud on the court that had occurred, Clerk
of the Court Weston subsequently ignored ignored numerous Motions
filed by Plaintiff McGee attempting to correct the record by recording

the missing Suppression Motions that had been filed with the court.

(30)   At the times relevant to this Complaint, **Susan Driscoll Burque** was Chief U.S. District Judge Bell's Case Manager for the U.S. District Court for the Western District of Michigan.

(31)   Susan Burque operated under the specific instuctions of Chief District Judge Bell as a liason between Judge Bell and the District Court, the U.S. Attorney's Office, and defendants' attorneys. Case Manager Burque used her influence, in concert with AUSA Shekmer and Plaintiff's colluding attorney Jeff O'Hara, with Clerk of the Court Ronald Weston or John Doe #2 Clerk to remove Plaintiff McGee's filed Suppression Motions from the District Court's judicial records.

(32)   Plaintiff McGee having pleaded innocent and a Final Pretrial Conference having been scheduled a week before trial, Case Manager Susan Burque, acting in concert with, and at the  behest of, AUSA Shekmer and District Judge Bell, arbitrarily moved Plaintiff's Pretrial Conference up 10 days to July 26th during the confusion surrounding the substitution of attorneys on July 3, 2001, for the purposes of assisting the Government's prosecution and avoiding trial.

(33)   District Court Case Manager Susan Burque was also instrumental in acting as a go-between in arranging with AUSA Shekmer, attorney O'Hara, and U.S. Magistrate Carmody for the start of court to be delayed for the scheduled Pretrial Conference of July 30, 2001, in hopes that AUSA Shekmer would be able to coerce a plea from Plaintiff McGee and avoid a trial on the issues, including the illegal search.

(34)   At the times relevant to this Complaint between July 10, 2001 and March 1, 2004, **Jeff O'Hara** was Plaintiff McGee's retained attorney of record in case #1:01-CR-122.

(35)   At the times relevant to this Complaint, **Ellen Carmody** was

a  United States Magistrate Judge for the Western District of Michigan.

(36)   Jeff O'Hara held a meeting in his Grand Rapids office with Plaintiff McGee on July 10, 2001 in which attorney O'Hara reviewed documents brought by Plaintiff which included the Indictment, the KVET police statements turned over in Discovery by AUSA Shekmer, and the **Suppression Motions** against the illegal search filed by attorneys Mequio & Peterson. [Attch. **Ex. C(a)**   , Affidavit par. **26**

(37)  After reviewing Plaintiff's legal documents on July 10, 2001, Jeff O'Hara informed Plaintiff McGee that he could work from Mequio & Peterson's filed Suppression Motions, and obtain a suppresssion hearing to exclude the evidence from the illegal search by the DEA that had occurred May 11, 2001. Plaintiff McGee returned to O'Hara's office later in the day on July 10, 2001 to retain O'Hara with a check for $25,000.00. Attorney O'Hara's first request was that retained attorneys Mequio & Peterson be dismissed because O'Hara "needed to work alone." [Attch. **Ex.** C(a)   , Affidavit par. **26-27**   ]

(38)   Almost immediately, attorney O'Hara contacted AUSA Shekmer and formed a collusive and conspiratorial agreement to betray Plaintiff McGee's legal interests. Jeff O'Hara's motives in forming the collusive alliance with AUSA Shekmer was to keep the $25,000.00 retainer without performing any legal services for the money, and to obtain favor from AUSA Shekmer for other clients he was representing.

(39)   In furtherance of the conspiracy, O'Hara met with AUSA Shekmer and DEA Agent Moore at DEA headquarters on July 13 , 2001 to "review evidence." Although the DEA  was in possession of over 300 pages of financial documents seized from Plaintiff's home during the illegal search, which O'Hara reviewed on that date, O'Hara made no effort to

obtain copies of the financial documents, which the District Court
had **Ordered** turned over to Plaintiff McGee in the Initial Discovery
Order. [R.# 12]. [Attch. **Ex. C(a)**   Affidavit par.__30__]

(40)   On or about July 17, 2001, in an attorney-client conference
in Jeff O'Hara's office in Grand Rapids, Plaintiff McGee delivered
copies to O'Hara of the "exact records" real estate closings that
comprised the funds deposited in Plaintiff's seized savings account.
[Attch. **Ex. C(a)** ι, Affidavit par.__27__]

(41)   In furtherance of the conspiracy, attorney O'Hara made
absolutely no efforts to interview witnesses or visit the scene of
the illegal search, actions which would have been crucial in
questioning police witnesses at any suppression hearing[Affidavit par.__30__

(42)   In contact and communication with AUSA Shekmer, District Court
Case Manager Burque, Clerk of the Court Weston, and/or District Judge
Bell, O'Hara agreed to the scheme of removing Plaintiff McGee's
filed Suppression Motions from the District Court record, and further
agreed not to contest the removal  or notify his client.

(43)   Prior to the scheduled Pretrial Conference of July 26, 2001,
Jeff O'Hara had made no preparations for either suppression hearings
or trial, and in an attorney-client conference one hour before the
Pretrial Conference, attorney O'Hara demanded that Plaintiff McGee
plead guilty to the charges, and threatened the Plaintiff with
immediate revocation of bond and an extended prison sentence if he
did not comply. [Attch. **Ex. : C(a)**   Affidavit par.__32__]

(44)   Attorney O'Hara then accompanied Plaintiff McGee to the
scheduled Pretrial Conference where AUSA Shekmer, working in concert
with O'Hara, handed O'Hara and the Plaintiff a Plea Agreement to sign
ten minutes before  the scheduled Hearing[ Attch. **Ex. C(a)**
Affidavit par. __33__ ]

(45)   Attorney O'Hara, acting in concert with AUSA Shekmer and the District Court, then informed Plaintiff McGee that his codefendant Tod Estes was going to plead guilty at the "Pretrial Conference", and O'Hara wanted Plaintiff to watch the proceedings to "see how its done." [Attach.Ex. C(a)   Affidavit par. 33    ]

(46)   When Plaintiff McGee refused to enter court and witness Tod Estes plead guilty, attorney O'Hara consulted with AUSA Shekmer, and Plaintiff's "Pretrial Conference" was abruptly canceled. [Attach. Ex. C(a)   , Affidavit par. 34    ]

(47)   Prior to the next scheduled "Pretrial Conference" of July 30, 2001, attorney O'Hara, in furtherance of the conspiracy and in concert with AUSA Shekmer, District Court Case Manager Burque, and U.S. Magistrate Judge Carmody, arranged for the start of court to be delayed and the doors to the District Court to be shut when Plaintiff arrived in court on July 30, 2001. [Attach.Ex. C(a)   Affidavit par. 36-38 ]

(48)   After making several phone calls from his office in the half-hour preceding the scheduled Pretrial Conference of July 30, 2001, attorney O'Hara walked Plaintiff McGee, who had been waiting in O'Hara's lobby, to Federal court, arriving approximately five minutes before the start of court. When Plaintiff McGee and attorney O'Hara arrived at court, the doors had been shut and AUSA Shekmer and arresting DEA Agent Moore were waiting outside, blocking the entrance. [Attach.Ex. C(a)   , Affidavit par. 37-38 ]

(49)   Attorney O'Hara then abandoned Plaintiff McGee outside court as AUSA Shekmer began pressuring Plaintiff McGee to sign the Plea Agreement. O'Hara made absolutely no efforts to intervene or provide the services of counsel during the approximately twenty minutes

that AUSA Shekmer pressured Plaintiff McGee to sign the Plea
Agreement. The doors to court were not opened by DEA Agent Moore
until Plaintiff McGee signed the Plea Agreement, 15 minutes after
the scheduled start of the Pretrial Conference.[Affidavit par. **39-46** ]

(50)    When DEA Agent Moore opened the doors to court, attorney
O'Hara immediately escorted Plaintiff McGee to the podium, where
Magistrate Carmody began conducting a consolidated Arraignment and
Plea Hearing. [Attch.Ex. **C(a)**       Affidavit par. **47** ]

(51)    When Plaintiff McGee balked during the attempted taking of a
plea to Count Two, the Forfeiture Count, and began explaining the legal
origins of the funds deposited in his seized savings account, and the
financial "exact records" backing his claims, attorney O'Hara,
signalled by the oral objections of AUSA Shekmer, delivered a hard kick
to Plaintiff McGee's left calf from behind the podium to disrupt and
halt Plaintiff McGee's testimony. [Attch.**Ex.** **C(a)**      , Affidavit
par. **48-50**, **Audiotape** of the disruption of the Plea Hearing at Appx.
of Exhibits to Supplemental Appellant Brief COA#04-1706, also filed
in S.CT.NO. 06-11004, and S.Ct.No. 06-9802.]

(52)    Attorney O'Hara then walked over to AUSA Shekmer and held a
short whispered conference. When O'Hara returned to the podium, O'Hara
cupped his hands to the Plaintiff's ear and reiterated AUSA Shekmer's
previous threats of an extended prison sentence, the immediate
revocation of bond, and the withdrawal of the Plea Agreement, if
McGee did not alter his testimony and play along. [Attach. **Ex.** **C(a)**
     Affidavit par. **51-52** ]

(53)    When the Plea Hearing resumed, U.S. Magistrate Carmody began
advocating on behalf of the Government by aggressively questioning
Plaintiff McGee and interposing erroneous legal definitions of

"commingling" into the proceedings. Magistrate Carmody then abruptly ended the Plea Hearing without taking a plea to Count Two, the Forfeiture Count, and without conducting any further inquiry into Plaintiff McGee's claims that the assets listed for forfeiture were not subject to forfeiture under the law.

(54)   At the times relevant to this Conplaint between March 4, 2004 and early in 2005, **Kenneth Tableman** was a stand-by appointed counsel for Plaintiff McGee under the Criminal Justice Act 18 USC 3006A (CJA).

(55)   At all times relevant to this Complaint, **Robert Holmes Bell** was the Chief District Judge for the U.S. District Court for the Western District of Michigan, and presiding Judge in Plaintiff McGee's criminal case 1:01-CR-122.

(56)   As Chief Judge of the U.S. District Court, Judge Bell, in accordance with his acknowledged Federalist judicial philosophy of supporting unlimited Executive Branch power, instituted improper measures and practices in his Court to "streamline" Federal judicial proceedings and avoid conducting criminal trials. These measures included arbitrarily and habitually denying defendants' pretrial motions and, in forfeiture cases, of abusing judicial process in whatever manner necessary to forfeit property to the Government that was not subject to forfeiture under the law.

(57)   In pursuit of his goals of Federal supremacy and judicial expediency, Judge Bell also authorized and developed the practice of using so-called "cooperating attorneys" in his Court; that is, defense attorneys retained by, or appointed for, criminal defendants who cooperate behind the scenes with the U.S. District court and the U.S. Attorney's Office to convict their own clients and see them sentenced to the terms predetermined by the U.S. Attorney's Office.   The

(21)

"cooperating attorneys", now almost all attorneys practicing Federal
law in the Western District of Michigan, victimized their clients,
including Plaintiff McGee, and made immense profits, by charging
substantial non-refundable retainers for legal work they knew in
advance would never be done or else would be dismissed by Judge Bell
or other District Court judges on contrived grounds.

(58)    In accordance with the long-standing practices and philosophies
adopted by the U.S. District Court on Judge Bell's orders, or else at
the specific directions of Judge Bell himself, District Court Case
Manager Susan Burque coordinated communications and agreements between
Plaintiff's attorney Jeff O'Hara and AUSA Shekmer, and influenced
Clerk of the Court Weston or John Doe #2 Clerk to commit a fraud on
the court by removing Plaintiff McGee's filed Suppression Motions from
the District court's judicial record.

(59)    On October 9, 2001, District Judge Bell issued an Initial Order
of Forfeiture [R.#53] without any conviction having attached for a
criminal offense under 21 USC § 841, and without any adjudication of
guilt, acceptance of a plea, or acceptance of the plea agreement.

(60)    District Judge Bell in issuing the Initial Order of Forfeiture
[R.#53] also found there to be a "nexus" between the assets listed for
forfeiture and the criminal offense, even though review of the Plea
Colloquy clearly revealed that Plaintiff McGee had not pleaded
guilty to Count Two, the Forfeiture Count, had not made any admissions
to the elements of the 21 USC § 853 Forfeiture Count during the Plea
Colloquy, and there were no stipulations to forfeiture in the signed
Plea Agreement as clearly mandated by provisions of the U.S. Attorney's
own Manual; Forfeiture Settlements 9-113.000.

(61)    On December 4, 2001, Judge Bell allowed AUSA Shekmer, AUSA
Delaney and the U.S. Attorney's Office to submit a Petition For

(22)

Final Order of Forfeiture without procedural jurisdiction to do so.
District Judge Bell granted the Government's Petition For Forfeiture
without any conviction having attached for the underlying criminal
offense of 21 USC § 841, without any adjudication of guilt or
Acceptance of the Plea, and without a final judgment of the court.
[See Attch.**Ex J, Judgment**].

(62)   As part of the Final Order of Forfeiture, District Judge Bell
utilized the language and provisions of a writ of execution in
ordering the U.S. Marshals to sell and dispose of Plaintiff McGee's
assets and property without any supporting judgment of the court.

(63)   When Plaintiff McGee dismissed colluding attorney O'Hara in
2004, moved to proceed pro se, and filed Motions to Withdraw Plea
[R.#70,73,94] and to recuse District Judge Bell [R.#96] for prejudice,
Judge Bell repeatedly abused the judicial authority of his office
and moved to cover-up for the unlawful forfeitures and the fraud on
the court that had occurred in removing the Suppression Motions from
the judicial record.

(64)   At, and prior to, the Motion Hearing of April 2, 2004 to hear
Plaintiff's Motions For Withdrawal of Plea concerning the ineffective
assistance of attorney Jeff O'Hara, District Judge Bell denied
Plaintiff McGee's pro se requests to subpoena witnesses to the Motion
Hearing, including denying subpoenas for banking and real estate
officials to confirm the legal origins of the funds deposited in the
forfeited savings account, and denying a subpoena for attorney O'Hara,
whose assistance was the subject of the Hearing.

(65)   As part of District Judge Bell's further efforts to exclude
material evidence and deny Plaintiff compulsory process, Judge Bell
exerted his influence with appointed stand-by counsel Ken Tableman to
direct Tableman not to subpoena witnesses to the Motion Hearing on

(23)

Plaintiff's behalf. Stand-by counsel refused to act on Plaintiff's written requests for subpoenas on Judge Bell's explicit directions.

(66)    Stand-by counsel Tableman further betrayed his client, Plaintiff McGee, and violated fiduciary duties owed to Plaintiff when, acting again on Judge Bell's express directions, Tableman warned Plaintiff McGee on or about April 25, 2004 not to contest the forfeitures of his property in the upcoming sentencing hearings, because Judge Bell had informed Tableman that Bell would not tolerate such actions.

(67)    Plaintiff McGee had filed an extensive Objections To The Presentence Report [R.#148,151] on April 30, 2004 that contested the unlawful forfeitures of his property, and included Exhibits of the financial "exact records" [Attch. **Ex.H**] proving the legal origins of the funds that had been deposited in the forfeited savings account. When Plaintiff McGee attempted to contest the forfeitures and the validity of the Plea Agreement at a point an hour-and-a-half into his objections during the Sentencing Hearing of May 3, 2004, District Judge Bell held Plaintiff McGee in contempt of court and ordered him removed in handcuffs from the courtroom.

(68)    A Motion demanding return of unlawfully seized property pursuant to Fed R Crim P 41(e) had been incorporated in the Motion To Suppress Evidence filed with the District Court on July 10, 2001. [See Attch. **Ex.E**, R.#25 Certificate of Service & Face Page of Motion to Suppress Evidence]. District Judge Bell never ruled on the Rule 41(e) Motion.

(69)    Plaintiff McGee also filed three separate Motions For Return of Unlawfully Seized Property at [R.#140,141,142] regarding both property seized during the illegal search and seizure by the DEA on May 11, 2001 and property taken by the U.S. Marshals from Plaintiff during his arrest on  2/25/04.

(70)    The only Motion For Return of Unlawfully Seized Property addressed by Judge Bell in his **Order** [R.#157] directed the U.S. Attorney's Office to return copies to Plaintiff McGee of the over 300 pages of financial documents that had been seized without probable cause  or authorization of the retroactively-issued State Search Warrant on May 11, 2001.

(71)    District Judge Bell did not include the forfeitures in either Plaintiff McGee's oral sentence or the final Judgment [R.#170] of the District Court. [See **Judgment** R.#170, Attch. **Ex. J**   ]

(72)    District Judge Bell has continued abusing the authority of his office in Plaintiff's post-conviction proceedings to conceal the unlawful forfeitures and the fraud on the court that occurred; most recently in his **Orders** [R.#319] denying Plaintiff McGee's Motion For New Trial, in which Judge Bell specifically refused to allow Plaintiff McGee to file the **Audiotape** of his Plea being coerced during the Plea Hearing of July 30, 2001.

---

(73)    At the times relevant to this Complaint, **Dan Elbers** and **John Doe #1 U.S. Marshal,** as well as other John Doe Marshals, were employed by the U.S. Marshals Service as Marshals or Deputies

(74)    At the times relevant to this Complaint, **Edith Pickers** was employed by the U.S. Marshals Service in Western Michigan as a U.S. Marshal or Deputy.

(75) .  At the times relevant to this Complaint, Special Agent **Mike Swidwinski** was employed as an agent of the Drug Enforcement Administration. (DEA).

(76)    At the times relevant to this Complaint, **Brian Delaney** was an Assistant United States Attorney for the Western District of Michigan.

(77)    On the morning of May 11, 2001, DEA Agents Moore and Goodell

had "frozen" Plaintiff McGee's savings account at Michigan National
Bank. On May 14th, DEA Agent Moore obtained a ten-day protective
restraining Order on the savings account pursuant to 21 USC § 853
(e)(1) from a U.S. Magistrate judge for the Western District of
Michigan. The Order only approved restraint of the account, and did
not authorize seizure.

(78)    Despite having no legal authority to seize the $87,355.48 in
Plaintiff's savings and checking accounts at Michigan National Bank,
DEA Agents Moore, Goodell, or Special Agent Mike Swidwinski **abused**
**process** in seizing the accounts and **converting** them into cash. [See
R.#56, Writ of Execution, Marshals "Return", Attch.**Ex. L** ]

(79)    Although the official docket *[Attch.**Ex. Prefix I**] at [R.#56]
shows the "property **seized** (taken from DEA) pursuant to Initial Order
of Forfeiture as to deft. Steven Allen McGee", the actual "Return"
(Writ of Execution) at [R.#56, Attch.**Ex. L** ] clearly shows that
U.S. Marshal  or Deputy Edith Pickers actuallly **seized** the $87,355.48
in **cash** from DEA Special Agent Mike Swidwinski on **June 12, 2001.**

(80)    As previously noted, the Initial Order of Forfeiture [R.#53]
under which the U.S. Marshals and Dan Elbers et al were proceeding
in forfeiting Plaintiff McGee's property was not issued until
**October 19, 2001**, or **three months after** U.S. Marshal or Deputy Edith
Pickers and supervising U.S. Marshal Dan Elbers abused process  in
seizing and converting Plaintiff McGee's savings and checking accounts
without legal authorization.

(81)    Both the U.S. Attorney's Office and District Judge Bell  had
been notified in the Presentence Report (Par.    ) and the letter to
Judge Bell of November 1, 2001 [R.#104], that one of the forfeited
properties, the home at 10603 Stadium Drive, did not belong to

---

* The Docket Exhibit from 1:01-Cr-122 in **Prefix I** is actually
located in the appendix to the previously filed Petition For
Declaratory Judgment.

Plaintiff McGee, but was actually **titled** in his sister Marlene
Rheault's name. In fact, both AUSA Shekmer and attorney O'Hara were
aware prior to the Plea Hearing of July 30, 2001 that the Stadium
property was titled in Marlene Rheault's name, and Plaintiff McGee
held no forfeitable legal interest.

(82)    When Judge Bell issued the Final Order of Forfeiture [R.#64]
on December 4, 2001, U.S. Marshal Dan Elbers, or other U.S. Marshals
under his supervision, improperly executed Judge Bell's Order without
any supporting judgment of the court, seizing the home at 10603
Stadium Dr. and Plaintiff McGee's house and property in Pokagon, Mi.

(83)    On or about January 2, 2002, Marlene Rheault requested
Plaintiff's brother, Brian McGee, to take possession of the home on
Stadium Drive, Plaintiff McGee's personal property still stored in
the house, and to change the locks. When Brian McGee called a lock-
smith to 10603 Stadium Drive, U.S. Marshal Dan Elbers,or other U.S.
Marshals under his supervision, arrived on the scene and instructed
Brian McGee  to leave the property and never return, or face arrest.

(84)    Tens of thousands of dollars of Plaintiff McGee's personal
possessions and property  were still stored in the home at 10603
Stadium Drive, property which was eventually stolen or destroyed due
to the negligence and abuses of process by U.S. Marshal Dan Elbers
and other U.S. Marshals under his supervision in improperly seizing
and wrongfully executing the forfeiture of the home at 10603 Stadium
Drive without a valid judgment of the court.

(85)    Due to the U.S. Marshals negligence in failing to properly
secure the home at 10603 Stadium Drive or provide for adequate
security, the Stadium Drive home was broken into on numerous occasions
by thieves who stole many of Plaintiff Mcgee's personal possessions
stored in the home.

(86)     The U.S. Marshals had never notified Marlene Rheault of
forfeiture proceedings against the home at 10603 Stadium Drive,
despite knowledge by U.S. District Judge Bell, the U.S. Attorney's
Office, and Dan Elbers and the U.S. Marshals Service, of Marlene
Rheault's titled interest in the property. Instead, Dan Elbers and
the U.S. Marshals Service proceeded to contract with a real estate
firm, ERA Network Realty and Chuck Zagon, and attempted to sell the
property.

(87)     A buyer was located, and the title company hired to conduct
the closing, Chicago Title Company, ran a title search, discovering
that Marlene Rheault actually held legal title to the property at
10603 Stadium Drive. Chicago Title Company issued a Title Commitment
document instructing the U.S. Marshals, U.S. Attorney's Office, and
ERA Network Realty and Chuck Zagon that, in order to convey valid
title, they must not only obtain a warranty deed from Marlene Rheault,
but also a warranty deed from Steven A. McGee pursuant to the Plea
Agreement. [See Attch. **EX. M** , Title Commitment Document]

(88)     Lacking marketable title to sell the property at 10603 Stadium
Drive, AUSA Brian Delaney, under the supervision of U.S. Attorney
Chiara, filed a Fed R Civ P 60(b) Motion For Relief of Judgment [R.#67]
regarding the alleged "judgment" of the Final **Order** of Forfeiture
[R.#64], seeking to rescind the Forfeiture Order so that the
Government could initiate an ancillary proceeding to determine Marlene
Rheault's interest in the Stadium property. The U.S. Attorney's office
falsely claimed in their Rule 60(b) Motion that they had Marlene
Rheault's permission to file the Motion and were acting on Ms. Rheault's
behalf.

(89)     U.S. Attorney Chiara and AUSA Delaney having been made fully

aware and noticed that Marlene Rheault was in possession of a
Warranty Deed to the Stadium property, made intentionally false
misrepresentations of material fact in their Rule 60(b) Motion For
Relief of Judgment, both that Marlene Rheault held only a **lien** on the
property, and that an actual and valid judgment of the District Court
had been issued including the forfeitures. No conviction had yet
attached, Plaintiff McGee had not yet been adjudicated guilty, and
there was no "judgment" of conviction for a criminal offense at the
time of the Government's filing of the 60(b) Motion For Relief of
Judgment [R.#67].

(90)    After Plaintiff McGee filed an Ethics Complaint with the Sixth
Circuit against AUSA Shekmer, and a report to the Senate and House
Judiciary Committees on the improper judicial practices and attorney
collusion operating in Judge Bell's Court, U.S. Attorney Chiara and
the U.S. Attorney's Office, or the U.S. Marshals or FBI, illegally
tapped the phones of Plaintiff McGee's family or friends without a
warrant in order to determine his whereabouts, and then spent
thousands of dollars for the U.S. Marshals to stake out Wal-Mart
stores in Northwest Indiana and Illinois for a period of several
months.

(91)    On February 25, 2004, U.S. Marshal Dan Elbers and John Doe #1
Marshal and a third Marshal arrested Plaintiff McGee in Lansing, Ill.
At the time of the arrest, the U.S. Marshals seized Plaintiff McGee''s
cell phone, a computer disc, and his wallet.

(92)    U.S. Marshal Dan Elbers refused to return the property taken
during Plaintiff's arrest, in response to Plaintiff's Motion For
Return of Unlawfully Seized Property [R.#142,Attch.**Ex. P**   ], but
never filed for forfeiture of the items seized. Plaintiff McGee
directly appealed to the District Court prior to the Motion Hearing of

April 2, 2004 for return of the seized computer disc, which contained two years of legal research and writing on Plaintiff's case, but was denied.

(93)    Following sentencing on May 20, 2004, John Doe #1 Marshall, accompanied by two other unknown Marshals, transferred Plaintiff McGee to the Federal Detention Center (FDC) in Milan, Mi. John Doe #1 Marshal seized approximately 70-100 lbs. of legal files and materials associated with Plaintiff's case, and refused to transfer the legal files to FDC Milan. John Doe #1 Marshal took the address of Plaintiff's attorney-in-fact Charles Smith to which to allegedly mail the legal files.

(94)    After Plaintiff McGee's transfer to FDC Milan, however, the U.S. Marshals Service called Charles Smith and informed him they would not mail the legal files to him, and if Charles Smith wanted Plaintiff's legal files and records, Mr. Smith would have to come to the U.S. Marshals Office in Grand Rapids and pick them up.

(95)    At the times relevant to this Complaint, **Chuck Zagon** was a real estate broker for ERA Network Realty in Kalamazoo, Michigan contracted by the U.S. Marshals to sell property unlawfully forfeited in Plaintiff McGee's case at 10603 Stadium Drive in Kalamazoo.

(96)    At the times relevant to this Complaint, **Chicago Title Company** was a licensed real estate title company in Kalamazoo, Michigan contracted to manage the sale and conveyance of title to the property forfeited at 10603 Stadium Drive in Plaintiff McGee's criminal case of 1:01-CR-122.

(97)    At the times relevant to this Complaint, **John Doe #3 Title Company** was a title company licensed to do business in Michigan and contracted to manage the sale and conveyance of title to the property forfeited in Plaintiff McGee's case commonly known as lots 28,29,30 & 31 of Burnett's Addition, Pokagon, Cass County, Michigan.

(98)    Chuck Zagon and ERA Network Realty were contracted by the
U.S. Marshals Service in Grand Rapids to sell the property forfeited
in Plaintiff McGee's case at 10603 Stadium Drive in Kalamazoo, Mi.
Chuck Zagon and ERA Network Realty were notified by Chicago Title
Company that there was a problem in conveying title to the Stadium
Property, in that the property was legally titled to Marlene Rheault,
Plaintiff McGee had not conveyed marketable title to the United States
as required by the Plea Agreement, and that Marlene Rheault also held
a first mortgage on the Stadium property in the amount of $30,000.00.
[See Attch.**Ex  M** , Title Commitment Document from Chicago Title.]

(99)    Chuck Zagon was also personally notified by Plaintiff McGee
by letter,prior to the property at 10603 Stadium being sold, that the
Stadium property had been unlawfully forfeited by the U.S. District
court, and the forfeiture was legally void. Plaintiff McGee warned
Chuck Zagon in his letter of the legal consequences of wrongfully
converting and conveying title to the property at 10603 Stadium Dr.

(100)    Despite the Title Commitment [Attch. **Ex. M** ] obtained by
Chicago Title Company clearly stating that a Warranty Deed from
Plaintiff McGee would be necessary to transferring valid title, and
the letter received by realtor Chuck Zagon from Plaintiff McGee
notifying him of the legally void forfeiture of the Stadium property,
Chuck Zagon, ERA Network Realty, and Chicago Title Company wrongfully
converted, sold, and conveyed title to the 10603 Stadium Drive
property to Michael Mahieu.

(101)    At all times relevant to this Complaint, **Michael Mahieu** was
a resident and business owner in Kalamazoo County, Michigan. Michael
Mahieu is the recipient of the wrongfully converted and conveyed
property at 10603 Stadium Drive, and was fully aware, or should have

been aware, at the time of the sale and wrongful conversion of the Stadium property, that he was purchasing tainted goods and bad title.

(102)   At the times relevant to this Complaint, **Michael and Jennifer Barlow** were residents of Niles, Michigan. Michael and Jennifer Barlow are second puchasers of the wrongfully converted and conveyed property at 31669 Pokagon Highway that was unlawfully forfeited in Plaintiff McGee's criminal case of 1:01-CR-122. Michael and Jennifer Barlow were aware, or should have been aware, that they were purchasing unlawfully converted property and that title to the Pokagon property had previously been wrongfully conveyed.

(103)   **John Doe #3 Title Company** wrongfully conveyed title to the property unlawfully forfeited by the U.S. District court at Lots 28,29,30,& 31 of Burnett's Addition,Pokagon, lawfully belonging to Plaintiff McGee,to the unknown **John Doe #4 Purchasers** who eventually sold the Pokagon property to Michael and Jennifer Barlow. John Doe #3 Title Company was fully aware at the time of the sale of the Pokagon property that the United States did not possess marketable title to the property, but proceeded to wrongfully convert and convey the property to John Doe #4 purchasers anyway.

(104)   At the times relevant to this Complaint, **Susan Burlage** was a case Manager for the Clerk's Office in the Sixth Circuit Court of Appeals.

(105)   At the times relevant to this Complaint, **Janice Yates** was the Chief Deputy Clerk for the Sixth Circuit Court of Appeals.

(106)   At the times relevant to this Complaint, **Ken Lumas** was a records clerk working in the Clerk's Office for the Sixth Circuit Court of Appeals.

(107)   In furtherance of the conspiracy to aid and abet extortion, deprive Plaintiff McGee of property without due process, and conceal

the fraud on the court involved in removing Plaintiff McGee's filed
Suppression Motions from the judicial record, judicial officers of
the Clerk's Office for the Sixth Circuit Court of Appeals, including
Sue Burlage, Janice Yates, and Ken Lumas, in concert with AUSA
Shekmer, U.S. Attorney Chiara, District Judge Bell, or other Justice
Dept. or judicial officials, repeatedly abused legal process and
violated their oaths of office by refusing to record Motions validly
filed with the Court by Plaintiff McGee alleging Government misconduct,
by excluding material evidence from appellate review, by repeatedly
violating governing Rules of Appellate Procedure, and by refusing to
provide requested public judicial records.

(108)   On or about September of 2004, while on direct Appeal COA#
04-1706, Plaintiff McGee filed a Motion For Stay of Judgment with
the Sixth Circuit Court of Appeals. In support of the Motion For Stay
of Judgment, Plaintiff's attorney-in-fact Charles Smith submitted
Exhibits to the Court for recording, including several copies of an
**Audiotape** of Plaintiff McGee's Plea Hearing on July 30, 2001,
demonstrating the coercion that was exerted on Plaintiff McGee to
disrupt, halt, and coerce his testimony.

(109)   In concert with AUSA Shekmer, U.S. Attorney Chiara, U.S.
District Judge Bell, or others, Deputy Clerk Janice Yates refused
to record the Audiotapes of the disruption of the Plea Hearing in
the Appellate record, claiming the audiotapes were being returned.
The audiotapes of Plea Hearing were never returned to either
Plaintiff McGee or attorney-in-fact Charles Smith. [See Attch.
**Ex.  U** , Letter to 6th Cir. Court of Appeals of Nov. 29, 2006 with
COA#04-1706 Docket Entry from 9/22/04]

(110)   Plaintiff McGee filed a Motion To Correct The Certified
Record with the Sixth Circuit in COA#04-1706 on May 4, 2005 to move
the Clerk's Office and Court to record in the docket the Motion To
Suppress Evidence, Motion To Suppress Statements, and Motion To
Suppress FRE 404(b) Evidence that had been filed in the District Court
on July 10, 2001 by Plaintiff's attorneys Mequio & Peterson, but never
recorded. Plaintiff McGee, in a previously filed Designation Of Record
On Appeal, had specifically refused to designate Docket #23 to the
record without acknowledgement of the filing of the Suppression
Motions. [See Designation of Record On Appeal R.#263, and Certificate
of Service R.#25, Attch.**Ex. E**   ]

(111)   After receiving the Government's Appellee Brief in his direct
Appeal, Plaintiff McGee filed a Motion To Strike Portions of the
Appellee Brief that was received by the Sixth Circuit on March 20,2006.
That Motion documented the improper and unethical inclusion by AUSA
Shekmer in the Appellee Brief of information related to forfeiture
that had been stricken from the judicial record by the District judge
in response to Plaintiff's objections at sentencing.[Attch.**Ex.R**   ]

(112)   Sixth Circuit Case Manager Sue Burlage, in concert with AUSA
Shekmer, U.S. Attorney Chiara, or others, in furtherance of the
conspiracy to deprive Plaintiff of due process and deprive Plaintiff
McGee of property without due process, witheld the Motion To Strike
Portions of the Appellee Brief from being recorded in Plaintiff's
direct Appeal  #04-1706, in violation of her oath of office and the
due process of law owed to Plaintiff under the governing Rules of
Appellate Procedure. [See COA Dockets, Attch.**Ex.R&S**   ]

(113)   Plaintiff McGee had also filed a Motion Objecting To Briefing
Schedules Violating Due Process  on March 20, 2006. Following AUSA

Shekemr and the Government's failure to file the Appellee Brief on
direct Appeal as directed on December 19, 2005, after almost a year
of extensions, Sixth Circuit Case Manager Sue Burlage, in concert with
AUSA Shekmer and Government objectives, rearranged and condensed
Briefing schedules in Plaintiff McGee's Appeals at #04-1706, #04-1406,
#04-2003,2005 & 05-2198, and #06-1010 that were deliberately designed
to prevent Plaintiff from complying with Briefing Deadlines in his
pending Appeals.

(114)   Case Manager Burlage also witheld the Motion Objecting To
Briefing Schedules Violating Due Process from being recorded in the
Court of Appeals in violation of her oath of office and the governing
Rules of Appellate Procedure.

(115)   In furtherance of the conspiracy to deny Plaintiff McGee due
process on Appeal, to conceal Government misconduct and the fraud on
the court, and to unlawfully deprive Plaintiff of property, Case
Manager Sue Burlage, in concert with AUSA Shekmer and other judicial
officers or Justice Dept. officials, approved and paid for an over
800 page Joint Appendix in Plaintiff's direct Appeal#04-1706 that
intentionally excluded material documents that had been designated by
Plaintiff McGee as necessary to supporting his arguments on Appeal,
including his Objections To the Presentence Report R.#148,151,& 169].

(116)   On March 30, 2006, in furtherance of the conspiracy to aid,
abet, and conceal the fraud on the court in removing Plaintiff
McGee's Suppression Motions from the judicial record, Case Manager
Sue Burlage sent a letter or fax to the U.S. Attorney's Office  and
AUSA Shekmer "requiring U.S.A. to provide shortened designation to
apply to this case." [See Attch.Ex. R&S, COA Dockets]

(117)   In furtherance of the conspiracy to conceal the fraud on the

court, the next day, on March 31, 2006, AUSA Shekmer sent back a
revised designation of Joint Appendix contents for Plaintiff's direct
Appeal #04- 1706 "only removing **16 pages.**" 16 Pages are the exact
number of pages of the Suppression Motions R.#23,25 removed from the
judicial record. [See Attch.**Ex.R&S**, COA Dockets]

(118)   On April 14, 2006, Plaintiff McGee filed a Motion For Stay of
Judgment and Motion For Bond with Sixth Circuit Judge Karen Nelson
Moore, with a supporting Appendix. Sixth Circuit Case Manager Sue
Burlage refused to file the Motion or to forward it to Judge Moore,
and destroyed the Motion and Appendix.

(119)   On May 23, 2006, in furtherance of the conspiracy between
Justice Department and judicial officials to summarily dismiss
Plaintiff McGee's claims on Appeal without proper review, Sixth
Circuit Case Manager Burlage forwarded Plaintiff's direct Appeal to
staff attorneys for summary dismissal.

(120)   At the time Case Manager Burlage forwarded Plaintiff's direct
Appeal to staff attorneys for summary dismissal, Plaintiff McGee had
not been provided with a copy of the Joint Appendix,and therefore
had been unable to fill in the multiple open blanks in the Supplemental
Appellant and Reply Briefs #04-1706 left to be filled in with the
exact page references in the Joint Appendix to the parts of the
judicial record supporting Plaintiff's arguments on Appeal.

(121)   On June 8, 2006, Plaintiff McGee filed a Motion To Compel
Clerk To File the Motion To Strike Portions of the Appellee Brief,
pursuant to Federal Rules of Appellate Procedure 25(a)(4). Sixth
Circuit Case Manager responded in the docket that the Motion had
already been previously filed. [See Attch.**Ex.R&S**, COA Dockets]

(122)   As documented by the **Exhibits R & S** of contradictory dockets,

and attorney-in-fact Smith's monitoring of the Sixth Circuit's
dockets on Pacer, the Motion To Strike Portions of the Appellee Brief
and the Motion Objecting To Briefing Schedules Violating Due Process
were not added to the Docket until **6/8/06**, or after the Plaintiff's
direct Appeal had been sent to staff attorneys for summary dismissal.

(123)  In furtherance of the conspiracy to deny Plaintiff due process
on Appeal and to conceal Government and judicial misconduct, Sixth
Circuit Case Manager Sue Burlage tampered with the electronic judicial
dockets of the Sixth Circuit to retroactively file the Motion To
Strike Portions of the Appellee Brief sometime between May 23, 2006
and June 8, 2006, retroactively backdating the Motion to make it
appear that the Motion To Strike was recorded when it was received
on **March 20, 2006**. [See Attach.**Ex. Q** Postal receipts showing delivery,
and Attach.**Exs. R & S** , Dockets of COA]

(124)  On the same date of June 8, 2006 that Plaintiff McGee filed
his FRAP 25(a)(4)  Motion To Compel the Clerk to file Motions being
witheld from the record, Plaintiff filed a Motion To Compel Service
of Joint Appendices, reiterating the prejudice that would accrue to
his Appeals if he were not provided with a copy of the Joint Appendix
and permitted to fill in the references to the record left blank in
his Supplemental Appellant and Reply Briefs.

(125)  Plaintiff McGee also filed a Motion with the Sixth Circuit
pursuant to FRAP and local Rule 30(i) Format to include his pro se
Appendix of Exhibits to his Supplemental Appellant Brief#04-1706
on direct Appeal as part of the Joint Appendix #04-1706.

(126)  On August 21, 2006, Plaintiff McGee filed [See Postal Receipts,
Cover Page, Attach.**Ex. T** ] a Motion To Require Revision of the Joint
Appendix Due To Fraud On The Court and Motion For Ethical Sanctions

Agaunst the U.S. Attorney's Office that demonstrated the fraud on
the court that had occurred in Plaintiff McGee's Suppression Motions
being deleted from the Joint Appendix on direct Appeal.

(127)    In furtherance of the conspiracy to deny Plaintiff McGee
due process on Appeal and conceal Government misconduct, Case
Manager Sue Burlage and the Sixth Circuit Court of Appeals refused
to record the Motion To Require Revision of the Joint Appendix when
it was received, have never recorded it since and, in all liklihood,
destroyed the Motion. [See Attch.**Ex. T** , U.S. Postal Receipts]

(128)    Following the confirmation from the Sixth Circuit that the
Suppression Motions  had been removed from the judicial record, the
Plaintiff's attorney-in-fact Charles Smith attempted to purchase
additional docket entries from the Sixth Circuit. Plaintiff McGee
sent a letter on November 29, 2006 to the Court of Appeals [Attch.
**Ex. U**] requesting copies of certain docket entries filed in his
direct Appeal  that seemed to indicate the involvement of Case
Manager Sue Burlage in covering up for the fraud on the court that
had occurred.

(129)    Attorney-in-fact Smith contacted the records clerk for the
Sixth Circuit Ken Lumas by phone, and was instructed by Lumas to
remit a $26.00 "Basement fee" to locate the records. [See check,
Attch.**Ex. V**]. Despite payment of the fee,  and repeated contacts
by Charles Smith with Records Clerk Ken Lumas by phone over a period
of weeks, the requested records were never provided. [Attch.**Ex. V** ]

(130)    At the times relevant to this Complaint, **Ralph Guy, Ronald
Gilman, and John Rogers** were judges on the United States Sixth
Circuit Court of Appeals.

(131)    On September 29, 2006, a three Judge Panel of the Sixth

Circuit denied all of Plaintiff McGee's claims on Appeal. Due to
the repeated and deliberate violations of Plaintiff's due process
rights on Appeal by collaborating Justice Department officials and
Sixth Circuit judicial officers, the staff attorneys and Judges
Guy, Gilman, and Rogers;

(A)    Did not have before them the evidence that a fraud on the court
had been committed in the removal of Plaintiff McGee's Suppression
Motions from the judicial record.

(B)    Did not have the evidence before them that the Government had
included information stricken from the record by the District judge
in support of forfeiture arguments in the Government's Appellee Brief.

(C)    Did not have before them the extensive Appendix of Exhibits
to the Supplemental Appellant Brief #04-1706 filed witht the court
by Plaintiff McGee containing many of the material Exhibits that had
been intentionally excluded from the Government-filed Joint Appendix.

(D)    Most importantly, did not have before them copies of the
Plaintiff's Appellant and Reply Briefs  in which accurate references
to the pages of documents in the record of the Joint Appendix could
be located supporting Plaintiff McGee's arguments on Appeal.

(132)    As a result of the above documentary evidence being missing
and deleted from the record on Appeal, neither the staff attorneys
or Judges Guy, Gilman, and Rogers impartially or adequately reviewed
the assignments of error raised on direct Appeal by Plaintiff McGee.

(133)    The staff attorneys for the Sixth Circuit, and Judges Guy,
Gilman and Rogers instead resorted to judicial sophism and the
fabrication of facts and testimony in constructing Opinions that
were intended to cover-up for the fraud on the court, the extortion
and coercion of the Plea that had occurred in open proceedings of
the U.S. District court, and the unlawful forfeitures of Plaintiff

McGee's assets and property.

(134)   Neither the staff attorneys or Judges Guy, Gilman, and Rogers at any point listened to the multiple copies of the Audiotapes of  the Plea Hearing provided demonstrating the coercion of the Plea that took place on July 30, 2001, or reviewed the supporting evidence of the financial "exact records" showing the completely legal origins of the funds deposited in Plaintiff McGee's forfeited savings account.

(135)   At the times relevant to this Complaint, **Kevin Schad** and his successor, **Melvin Houston**, were attorneys appointed to represent Appellant McGee   in his direct Appeal COA#04-1706 under the Criminal Justice Act 18 USC § 3006A.

(136)   Both attorneys Kevin Schad and Melvin Houston violated a fiduciary duty to Plaintiff McGee when they both refused to contest the unlawful forfeiture of Plaintiff McGee's assets and property after being specifically requested to do so.

(137)   Both attorneys Kevin Schad and Melvin Houston were furnished by Plaintiff McGee  with extensive portions of the judicial record supporting his claims on Appeal, including the filed (and missing) Suppression Motions, the financial "exact records" demonstrating the the legal origins of the funds deposited in Plaintiff's forfeited savings account, and the Audiotapes of Plaintiff McGee's Plea being coerced.

(138)   Both attorneys Schad and Houston rendered Plaintiff McGee the ineffective assistance of counsel on his direct Appeal in failing to raise forfeiture and other meritorious issues that were brought to their attention, including the District judge's failure to review Plaintiff McGee's eligibility for a "safety valve" reduction in sentence, and the erroneous and unconstitutional imposition of

the ten year term of supervised release.

(139)    After attorney Houston's appointment as counsel on Appeal, Houston was contacted by attorney-in-fact Smith on Plaintiff McGee's behalf to inquire what issues attorney Houston intended to raise on Appeal. Houston informed Charles Smith that Houston had been told on his appointment by the Clerk's Office to "raise two issues at the most" in Plaintiff McGee's direct Appeal.

(140)    Plaintiff McGee requested both attorney Houston and the Sixth Circuit to withdraw the Appellant Brief #04-1706 that had been filed on Plaintiff McGee's behalf by attorney Houston due to multiple factual inaccuracies.

(141)    Attorney Houston in fact did not conduct any independent investigation or consult with Appellant McGee before drafting his Appellant Brief that he filed with the Sixth Circuit, but based the Appellant Brief completely on information that had been supplied to him by AUSA Shekmer and the Government, in only rasing two issues on Appeal.

(142)    The appointment of counsel for indigents under the Criminal Justice Act , as that program is practiced and being run in the Sixth Circuit is, in fact, a racketeering operation for the benefit of participating attorneys and the Court of Appeals, in which appointed attorneys Schad and Houston only pretended to provide the assistance of counsel while filing hollow shells of Appellate Briefs that contained no substantive  arguments and had absolutely zero' chances of reversing or overturning Plaintiff McGee's sentence and conviction.

(143)  Plaintiff McGee filed complaints with the Sixth Circuit against both attorneys Schad and Houston, asking each to withdraw in succession.

(144)    Attorney Houston refused to withdraw when requested, and refused to provide Plaintiff McGee with a copy of the Joint Appendix in response to Plaintiff's written request, preventing Plaintiff McGee from incorporating page references to the Joint Appendix into the blank spaces that had been left in his Appellant and Reply Briefs for the purpose of referring to the parts of the record supporting his arguments on Appeal.

(145)    At the times relevant to this Complaint, **Margaret Chiara** was the United States Attorney for the Western District of Michigan, as successor to Philip Green.

(146)    U.S. Attorney (now former) Chiara was direct supervisor of AUSA Shekmer and AUSA Brian Delaney during the period when many of the torts and abuses of process are alleged to have occurred, including moving for forfeiture of Plaintiff Mcgee's assets and property with no final judgment or procedural jurisdiction to do so.

(147)    U.S. Attorney Chiara also assisted in covering-up for the fraud on the court and the unlawful forfeitures by assisting in preparation of the fraudulent Joint Appendix #04-1706 that intention-ally deleted material evidence such as the Suppression Motions and Plaintiff McGee's Objections To The Presentence Report [R.#148,151] that had been designated on Appeal.

(148)    U.S. Attorney Chiara was repeatedly notified by Plaintiff McGee of AUSA Shekmer's repeated violations of the law, but refused to take any corrective action.

## EXHAUSTION OF REMEDIES

Plaintiff McGee has exhausted his available remedies before filing suit against the United States with the filing of the two Federal Tort Claims documented at Exhibits **C & D.** The United States

Government received the Federal Tort Claim [**Exhibit C**] on September
15, 2006 as substantiated by **Exhibit B**, the signed U.S. Postal
receipt. The Government never responded or denied Plaintiff McGee's
Tort Claim, leaving Plaintiff McGee six months to file suit from
March 15, 2007. Plaintiff McGee's suit has been timely filed with
the D.C. Circuit Court pursuant to 28 USC § 2401(b) prior to
September 15, 2007.

Any claimed application of a statute of limitations on the
part of the United States in regard to the torts alleged in Plaintiff
McGee's civil action are equitably tolled under 28 USC § 2401 as a
result of the continuing tortious acts committed by AUSA Shekmer and
the U.S. Attorney's Office in exerting improper influence on Sue
Burlage and the Clerk's Office for the Sixth Circuit to refuse to
record validly filed Motions alleging the Government misconduct in
this case, in using information stricken by the District judge from
the record to support arguments in the Government's Appellee Brief
#04-1706, and in using taxpayer funds to compile a Joint Appendix
#04-1706  that did not comply with Appellate Procedure in intention-
ally excluding both Plaintiff McGee's Appendix of Exhibits and
numerous documents from the record that were designated by Plaintiff
McGee on direct Appeal.

All of those above actions by the U.S. Attorney's Office and
the Clerk's Office for the Sixth Circuit were taken to either
conceal the fraud on the court that had occurred in removing
Plaintiff's filed Suppression Motions from the record, or else to
cover-up for the unlawful forfeiture of Plaintiff's assets and
property, and accrued within the two years prior to filing of the
Tort Claim by Plaintiff McGee.

Doctrine of equitable tolling applies to 28 USC § 2401(b).
Glarner v United States 30 F 3d 697 (**6th** 1994)

Continuing tort sufficient to toll statute of limitations is occasioned by continued unlawful acts, not by continuing ill effects from original tort.
Maslauskas v United States  583 F Supp 349 (D.C. Mass. 1984)

Also, as numerous courts have held, no statute of limitations applies to Motions For Return of Unlawfully Seized Property under Fed R Crim P 41(e). Plaintiff McGee has never waived or conceded his claims under Rule 41(e) that his property was unlawfully seized and forfeited since the filing of his Motion To Suppress Evidence (& Motion For Return of Unlawfully Seized Property) [See Face Page of Motion, Attch.**Ex.E**], that was never recorded by the District court as part of the fraud on the court that is alleged in Plaintiff's civil action.

That Motion filed by Plaintiff McGee [See Attch.**Ex.E**, Certificate of Service R.#25] was never ruled on by the District court, and Plaintiff McGee has preserved his rights to demand return of unlawfully seized property by arguing and incorporating the issue into his Supplemental Appellant and Reply Briefs on direct Appeal #04-1706.

Action seeking return of property seized by Federal agents is not tort action but in fact proceeding under Federal Rules of Criminal Procedure so that two year statute of limitations in 28 USC § 2401(b) is not applicable.
Mayo v United States  413 F Supp 160 (E.D. Ill. 1976)

Post-conviction motion for return of seized property is proceeding which is ancillary to entire criminal proceeding, such motion is not new cause of action against Government, and is not subject to two year period of limitation of 28 USC § 2401(b).
United States v Totaro  468 F Supp 1045 (D.C. Md. 1979)

## LEGAL THEORIES UNDERLYING THE PLAINTIFF'S COMPLAINT

The legal theories underlying the Plaintiff's Complaint
are that:  (1)   The United States is liable under the Tort Claims
Act for the alleged torts of abuse of process, extortion, fraud,
false imprisonment, assault, unlawful deprivation of property,
wrongful conversion and wrongful conveyance committed by the named
United States employees in the Justice Department, DEA, U.S. Marshals
Service etc. in the course of their employment, together with the
contracted legal agents of the United States acting on the Government's
behalf, including the two title companies and ERA Network Realty &
Chuck Zagon wrongfully conveying title to Plaintiff's real property.
(2)   The United States employee Defendants of the DEA and U.S.
Marshals Service sued in their individual capacities under the Biven's
Remedy  are liable for the torts of assault, false imprisonment,
wrongful seizure and unlawful deprivation of property, and abuse of
process because, in committing those torts, the individual named
Defendant  agents knowingly and willfully violated Plaintiff McGee's
Constitutional rights and in doing so, were acting outside the
discretionary scope of their authority.
(3)   The Defendants sued in their individual capacities of attorney
Jeff O'Hara, CJA appointed counsels Tableman, Schad, and Houston,
Chuck Zagon and ERA Network Realty, Chicago Title Company, John Doe
#3 Title Company, Michael Mahieu, Michael & Jennifer Barlow, and
John Doe #4 purchasers, are personally liable in conspiring with
immune Federal officials to profit from either the unlawful
deprivation and forfeiture of Plaintiff McGee's property, or else
the payment of unearned legal fees.

In reviewing the Plaintiff's allegations in the Complaint,

his sworn Affidavit in support of his Federal Tort Claim, [Attch.
Ex. C(a)), and even the preliminary documentary evidence included in
the Appendix of Exhibits supporting the Complaint, it cannot be refuted
that the fraud on the court evident in Plaintiff McGee's Suppression
Motions being removed from the District court's judicial record prior
to trial could have only occurred as a result of a conspiracy among
judicial officers of the District court, the U.S. Attorney's Office,
and Plaintiff's attorney Jeff O'Hara.

It is also irrefutable from the Plaintiff's Exhibits that
the United States Justice Department and the U.S. Attorney's Office
in Grand Rapids  exercised a conspiratorial influence, in collaboration
and in concert with judicial officers of the Clerk's Office for the
Sixth Circuit Court of Appeals, in order to suppress the evidence that
a fraud on the court had occurred and Plaintiff's property had been
unlawfully forfeited, and to prevent those claims from being documented,
recorded, or considered in Plaintiff McGee's direct Appeal #04-1706.

At the times the named Defendant judicial officers and Justice
Department attorneys were repeatedly abusing judicial process and
committing the torts alleged in Plaitiff's Complaint, they were fully
aware that they were either violating the law or governing Rules of
Criminal or Appellate Procedure, and were actively engaged in denying
Plaintiff McGee's Constitutional rights to the due process of law.

As such, their actions, taken in concert or in acknowledgement
of unofficially promoted procedures, constituted a conspiratorial
interaction as defined by the precepts of conspiracy theory, as each
named judicially immune Defendant was conscious of the consequences
of his tortious actions on Plaintiff McGee's person and property, and
that their actions were being undertaken to reinforce previous abuses

of process and torts committed by Government or judicial Defendants
at prior stages of the proceedings.

The rampant abuses of judicial process documented in Plaintiff
McGee's criminal proceedings are not just a threat to the reputation
and integrity of judicial proceedings in the United States, but
rather imply that the Federal justice system in the Western District
of Michigan has been organized into a racketeering operation by
collaborating attorneys, Justice Department officials, and judges  to
victimize Federal criminal defendants and plunder their assets under
cover of law, and to then take whatever steps are necessary to conceal
their activities from discovery.

Plaintiff McGee, standing completely impoverished by the
Government's unlawful forfeitures of his property and being currently
imprisoned, is in no position to vigorously prosecute his civil
action when opposed by the very forces of the State that are
simultaneously the Defendants of his civil action and his jailors,
and will accordingly seek the appointment of counsel to assist in
prosecuting his meritorious claims. As can be seen from the BOP
Remedy attached to the cover letter to the Clerk, the Bureau of Prisons
is now assisting the Justice Department's oppression of Plaintiff
McGee,in attempting to restrict Plaintiff's First Amendment right to
free speech, and his Sixth Amendment right of access to the courts,
by limiting Plaintiff to spending $25.00 **a month for both legal copies**
and anything else he may need.

---

### PRAYER FOR RELIEF

Wherefore, in repectfully requesting relief from the District
of Columbia District Court, Plaintiff McGee first moves the Court for
the appointment of counsel to help shoulder the burden of proceeding

with his legitimate claims against a United States Justice Dept. that is continuing to abuse process by using any available means to prevent Plaintiff's allegations from receiving a fair hearing or coming to the attention of the public.

Plaintiff McGee therefore also requests the Court to use the powers granted to it by statute to appoint a special prosecutor to investigate the Plaintiff's allegations and to bring charges, as the facts and evidence clearly demonstrate a massive abuse of the public trust by Justice Department and judicial officers that threatens  the integrity and reputation of the entire American justice system. Plaintiff McGee's allegations have previously been brought to the attention of both the House and Senate Judiciary Committees,  as well as the House Committee On Government Reform, and Plaintiff respectfully urges the Court to consult with the House and Senate Committees as to the advisability of appointing a special prosecutor in this case.

Second, Plaintiff McGee respectfully moves this Court to Grant his Motion To Proceed In Forma Pauperis, to docket his civil action, to direct the U.S. Marshals to serve the named Defendants, and to proceed to issue a scheduling Order for the civil action, including Discovery.

Plaintiff seekd return pursuant to his filed Federal Rules of Criminal Procedure 41(e) Motions For Return of Unlawfully Seized Property  [See Attch. **Ex.E,N,O,P**] of his two houses and property at 10603 Stadium Drive, Kalamazoo, Mi. and in Pokagon, Michigan, the over $87,000.00 in his seized savings account and interest, as well as the seized Mitsubishi Montero  and Toyota Celica taken in the illegal search of May 11, 2001, together with the Plaintiff's

property and personal possessions remaining in the Plaintiff's
Stadium Drive residence that were negligently lost or destroyed by
the U.S. Marshals seizing the home, and the cell phone, computer
disc, and contents of the Plaintiff's wallet seized by the U.S.
Marshals during Plaintiff's arrest February 25, 2004, or else the
awarding of $280,000.000 in actual damages and $9,720,000.00 in
**compensatory, punitive, proximate, and future damages**, liability to
be more specifically enumerated and determined according to law
against the United States by the Court itself, and against the
Defendants sued in their individual capacities at <u>trial by jury.</u>

Plaintiff also seeks relief from the Court by declaratory
judgment pursuant to the Declaratory Judgment Act 28 USC § 2201.
Plaintiff seeks both initial and immediate Declaratory Judgments
adjudicating Constitutional issues whose resolution Plaintiff
contends is already indicated by facts and evidence concurrently
put before the Court, and Declaratory Judgments later in the
proceedings after issues and facts have been clarified by Discovery
and further submissions of fact and governing law. From the combined
record now put before the Court of Plaintiff's Attached Appendix of
Exhibits and the Plaintiff's Affidavit in Support of Federal Tort
Clainm [**Ex.C(a)**], Plaintiff moves the Court:

To **Declare** that:  The removal of Plaintiff McGee's filed Suppression
Motions from the District court judicial record constituted a fraud
on the court as defined by controlling Federal judicial precedents,
and a violation of Plaintiff McGee's substantial Constitutional
rights to due process in being perpetrated by the alleged
conspirators to exert improper influence on Federal judicial
proceedings and the U.S. District court in order to prevent the
raising of meritorious Fourth Amendment defenses by Plaintiff McGee

(49)

at trial.

To **Declare** that:  The Forfeiture Orders issued in Plaintiff's criminal case of 1:01-Cr-122 are legally **void** for having been issued in violation of the governing forfeiture statute of 21 USC § 853 without a conviction having attached, without Acceptance of a plea, and without a valid and final judgment of the court.

To **Declare** that:  The DEA, DEA Agent Loretta Moore, and Special Agent Mike Swidwinski violated Plaintiff's Fifth Amendment right not to be deprived of property without the due process of law, and abused legal process, in unlawfully seizing Plaintiff McGee's checking and savings accounts at Michigan National Bank with an expired restraining order; illegally converting the savings account into cash.

To **Declare** that:  The U.S. Marshals Service, U.S. Marshal Dan Elbers, and Marshal or Deputy Edith Pickers violated Plaintiff McGee's  rights to the due process of law in **seizing** the $87,355.48 from DEA Special Agent Mike Swidwinski without legal authorization or procedural jurisdiction.

To **Declare** that:  The execution of the forfeitures by the U.S. Marshals against Plaintiff McGee solely on the basis of an Order of Forfeiture, without a final judgment of the District court, is legally **void**.

To **Declare** that:  The property at 10603 Stadium Drive was wrongfully conveyed by Chicago Title Company without a forfeiture order being included in a final judgment of the District court, and without a voluntary conveyance of Title from Plaintiff McGee.

To **Declare** that:  The property owned by Plaintiff McGee in Pokagon, Michigan, Lots  28, 29, 30 & 31 of Burnett's Addition, was wrongfully conveyed by John Doe #3 Title Company without an order of forfeiture first being included in a final judgment of the

District court, or a voluntary conveyance of Title from Plaintiff
McGee.

To **Declare** that:  The Plaintiff's Fifth Amendment rights to the
due process of law were violated by Case Manager Sue Burlage and the
Sixth Circuit Clerk's Office refusal to record the Motion To Require
Revision of the Joint Appendix Due To Fraud On The Court [See Attch.
**Ex.T**], in violation of vested liberty interests granted Plaintiff by
Federal Rules of Appellate Procedure 25(a)(4).

To **Declare** that:  Records clerk for the Sixth Circuit Ken Lumas
violated Plaintiff First Amendment right of access to Federal judicial
records in refusing to provide records requested by Plaintiff for
which he tendered payment through his attorney-in-fact. [See Attch.
**Ex.V.**

Plaintiff also moves the Court pursuant to standard procedure
under the Declaratory Judgment Act 28 USC § 2201 to schedule and hold
an evidentiary hearing on his preliminary claims for declaratory
judgment, and to have appointed counsel represent the Plaintiff after
a sufficient time allowed for said counsel to consult with Plaintiff,
receive legal materials relevant to the Plaintiff's claims, and
familiarize himself with the case.

> Existence of essential elements for declaratory relief under
> 2201 including "existence of controversy" should be determined as
> of time of court's hearing, rather than at commencement of action.
> Golden v Zwickler 349 US 103, 22 L ed 2d 113 (emphasis added)

> District court's dismissal of [declaratory judgment] action is
> improper without evidentiary hearing on issue of whether actual
> controversy existed between parties requiring a declaratory judgment.
> Robin Products Company v Tomecek 465 F 2d 1193 (6th Circuit)

Plaintiff also moves the Honorable District Court for the
District of Columbia for a subpoena, or, pursuant to Fed R Civ P 65,

(51)

for injunctive relief or a temporary restraining Order, to protect
Plaintiff McGee's First Amendment right of access to his own
judicial records, by compelling Defendant records Clerk for the
Sixth Circuit Ken Lumas to produce information docketed in Plaintiff's
direct Appeal COA#04-1706 concerning collaboration between Case
Manager Sue Burlage and AUSA Shekmer in concealing the fraud on the
District court that occurred, that was specifically requested in
Plaintiff's letter [Attch.**Ex.U**] of Nov. 29, 2006, for which payment
was tendered. [See Attch.**Ex.V**].

> Respectfully submitted,
>
> Steven A. McGee
>
> *Steven A McGee*

UNITED STATES DISTRICT COURT
for the
DISTRICT OF COLUMBIA

STEVEN A. MCGEE                          NO._____
Plaintiff

V

UNITED STATES, ET AL

APPENDIX OF ATTACHED EXHIBITS

**Exhibit**

A .......... DOJ U.S. Attorney's Bulletins #214- 7/15/89 & #180- 8-15-90

B .......... Signed U.S. Postal Receipt Signature Card Showing Delivery
            of Federal Tort Claim to U.S. Dept. of Justice Torts
            Branch on September 15, 2006, and Copy of Outside of
            Mailing Envelope

C .......... Federal Tort Claim of Steven A. McGee Delivered to
            U.S. Dept. of Justice Torts Branch on Sept. 15, 2006

C(a)........ **Affidavit In Support of Federal Tort Claim**

D........... Federal Tort Claim Filed January 4, 2007 Against District
            Court Clerk Ronald Weston and Officers of the U.S.
            District Court for the Western District of Michigan
            Concerning the Fraud On The Court In Removing Plaintiff
            McGee's Filed Suppression Motions From the Judicial Record

E .......... Face Page of the Motion To Suppress Evidence (& Motion For
            Return of Unlawfully Seized Property) and Certificate of
            Service [R.#25] Showing Filing of the Suppression Motions
            With the District Court on July 10, 2001

F .......... Outline of the Joint Appendix COA# 04-1706 Filed by AUSA
            Shekmer & U.S. Attorney Chiara Demonstrating the Deletion
            of **16 pages** of the Suppression Motions from the Judicial
            Record at R.#23

G .......... Affidavit of Steven A. McGee in Petition For Writ of
            Certiorari S.Ct.No. 06-9802 Relating (at par.25-26) the
            Acquisition of District Court Docket# 23 & 25 From the
            Court of Appeals by Attorney-In-Fact Charles Smith

H .......... Financial "Exact Records" Demonstrating the Legal Origins
            of Funds Deposited In Plaintiff's Forfeited Savings Account,
            From Exhibits to Motion For Withdrawal of Plea, [R.#70]

## APPENDIX OF ATTACHED EXHIBITS

**Exhibits**

I .......... Sworn Affidavit In Support of Petition to the U.S.
Justice Dept. For Restoration and Return of Forfeited
Savings Account

J .......... Judgment R.#170

K .......... District Court Certified Docket Page Showing R.#56, the
U.S. Marshals Writ of Execution ("Return") On The Initial
Order of Forfeiture, Demonstrating the Marshals **Seizure**
of Plaintiff's Savings Account on **June 12, 2001**, <u>Three
Months Before</u> the Initial Order of Forfeiture Was Issued
On **October 19, 2001**

L .......... R.#56, The U.S. Marshals Writ of Execution (Return of
Service) Forfeiting The Plaintiff's Savings Account
And $87,355.48

M .......... Title Commitment Document From Sale of Plaintiff's
Forfeited Home at 10603 Stadium Drive, Kalamazoo, Mi.,
Illustrating Clause That Government Must Obtain **Warranty
Deed** From Steven A. McGee To Convey Valid Title

N .......... Motion For Return of Unlawfully Seized Property [R.#140]

O .......... Motion For Return of Unlawfully Seized Property [R.#141]

P .......... Motion For Return of Unlawfully Seized Property [R.#142]

Q .......... Face Page of Motion to Strike Portions of the Appellee
Brief #04-1706 Due To Fraud On The Court and U.S. Postal
Receipts Showing Delivery to the Sixth Circuit on
March 20, 2006

R .......... Downloaded Court of Appeals Docket From Pacer Showing
That the Motion to Strike Portions of the Appellee Brief
Was Not Recorded In The Sixth Circuit Docket

S .......... Later Sixth Circuit Docket Demonstrating Tampering With
the Docket by Case Manager Sue Burlage In Later Filing
the Motion To Strike Portions of the Appellee Brief, and
Retroactively Backdating the Filing Almost Three Months
To March 20, 2006.

T .......... Face Page of Motion To Require Revision of the Joint
Appendix Due To Fraud On The Court and U.S. Postal Receipts
Showing Delivery  To The Sixth Circuit

## APPENDIX OF ATTACHED EXHIBITS

**Exhibits**

U .......... Letter From Plaintiff McGee to Sixth Circuit Clerk's
Office of November 29, 2006, Requesting Public Judicial
Records From the Docket of His Own Appeal #04-1706
Seeming To Show the Involvement of Case Manager Sue
Burlage in Efforts to Conceal the Fraud On The Court of
Removing the Suppression Motions From the Judicial Record

V .......... Records of Plaintiff's Attorney-In-Fact Charles Smith's
Efforts to Acquire Public Judicial Records From Sixth
Circuit Records Clerk Ken Lumas, Including the Payment
of $26.00 For Records That Were Never Delivered

# EXHIBIT

# A

Executive Office For U.S. Attorneys, Department of Justice , U.S.
Attorney's Bulletins #214 of July 15, 1989, & #180 of August 15, 1990

*The Justice Department's Big, Bad, Dumb War on Drugs*                    191

The belief that the Justice Department's obsession with forfeitures is partly driven by interests other than the enforcement of the drug laws is also supported by direct evidence. In June 1989, Acting Deputy Attorney Edward S. G. Dennis dispatched an administrative bulletin ordering the nation's U.S. attorneys to take all possible actions to make their forfeiture cases "current," even if that effort required federal prosecutors to drop matters they were already pursuing. If inadequate resources are available to meet the forfeiture goal, Dennis said, "you will be expected to divert personnel from other activities or to seek assistance from other U.S. Attorneys' offices."[39]

One year later, the attorney general himself warned U.S. attorneys that the Justice Department had fallen far behind its budget projection in the collection of assets. "We must significantly increase production to reach our budget target. . . . Failure to achieve the $470 million projection would expose the Department's forfeiture program to criticism and undermine confidence in our budget projections. Every effort must be made to increase forfeiture income during the remaining three months of [fiscal year] 1990."[40]

While the Justice Department now seems to be more discreet in the wording of its policy directives, the popularity of this particular cash cow with law enforcement officials means that the fund-raising potential of the forfeiture program is always mentioned. "Although the primary mission of the [Justice Department's] program is to maximize the effectiveness of forfeiture as a law enforcement tool in the fight against crime, revenue is an ancillary benefit," a recent annual report delicately declared. Since fiscal year 1986, it added, more than $1 billion in cash and tangible property "have been reinvested into law enforcement efforts at the state and local levels."[41]

*40 Executive Office for U.S. Attorneys, Department of Justice, U.S. Attorney's Bulletin 180, August 15, 1990

*39 Executive Office for U.S. Attorneys, Department of Justice, U.S. Attorney's Bulletin 214, July 15, 1989

07-1923

**FILED**

OCT 2 5 2007

**NANCY MAYER WHITTINGTON, CLERK**
**U.S. DISTRICT COURT**

# EXHIBIT

# B

Signed U.S. Postal Receipt Signature Card Showing
Delivery of Federal Tort Claim to U.S. Dept. of
Justice Torts Branch On September 15, 2006, and Copy
of Outside of Mailing Envelope

**SENDER: COMPLETE THIS SECTION**

- ☒ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ☒ Print your name and address on the reverse so that we can return the card to you.
- ☒ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

J.S. Dept. of Justice- Torts Branch
New York, N.Y. Field Office
26 Federal Plaza, Room 320
New York, N.Y. 10278-0004

2. Article Number
   *(Transfer from service label)*     7003 3110 0006 1245 5555

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                    ☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery
                                   9/15/06

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*            ☐ Yes

07-1923

**FILED**

OCT 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Steven A. McGee
#10511-040
Low Security Correctional
Institution Allenwood
P.O. Box 1000
White Deer, Pa. 17887

U.S. Department of Justice
Torts Branch
New York, N.Y. Field Office
26 Federal Plaza, Room 320
New York, N.Y. 10278-0004



IMPORTANT: Save this receipt and Internet access to delivery inform addressed to APOs and FPOs.

■ If a postmark on the Certified Mail dia at the post office (for postmaster receipt is not needed, detach and endorsement "Restricted Delivery."

■ For an additional fee, delivery addressee's authorized agent. Adv

■ For an additional fee, a Return Re delivery. To obtain Return Receipt s Receipt (PS Form 3811) to the arti fee. Endorse mailpiece "Return Re a duplicate return receipt, a USPS required.

■ NO INSURANCE COVERAGE I valuables, please consider Insured

■ Certified Mail is not available for a

**Important Reminders:**
■ Certified Mail may ONLY be comb
■ A unique identifier for your mailpiec
■ A record of delivery kept by the Po

**Certified Mail Provides:**
■ A mailing receipt



CERTIFIED MAIL

7003 3110 0006 1295 5555
7003 3110 0006 1295 5555



# EXHIBIT

# C

_____

Federal Tort Claim of Steven A. McGee Delivered to U.S.
Dept. of Justice Torts Branch On September 15, 2006

9-13-06 sm

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of the form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any (See instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| U.S. Department of Justice- Torts Branch<br>New York, N.Y. Field Office<br>26 Federal Plaza, Room 320<br>New York, N.Y. 10278-0004 | Steven A. McGee #10511-040<br>LSCI Allenwood<br>P.O. Box 1000<br>White Deer, Pa. 17887 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. or P.M.) |
|---|---|---|---|---|
| ☐ MILITARY  ☐ CIVILIAN | 8-2-53 | Single | May 11, 2001— ongoing until present | |

**8. Basis of Claim** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.) See attached Affidavit in support of Federal Tort Claim. Claimant McGee's property was unlawfully seized without probable cause, and McGee was subsequently unlawfully deprived of his property by the multiple abuses of judicial process detailed in the supporting Affidavit by the named tort feasors, which included the fraudulent conveyance of Claimant McGee's described real property. Claimant McGee was also extorted by AUSA Shekner and the U.S. Attorney's Office, who also directed, in concert with other officers of the Court, the removal of, and tampering with, documents in the judicial record of Claimant McGee's criminal case 1:01-CR-122 to cover their crimes.

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT. Unlawful deprivation of property and the resulting emotional duress and mental anguish.

07-1923

**11. WITNESSES**

| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| See attached continuation sheet | |

**FILED**

OCT 2 5 2007

| 12. (See instructions on reverse) | AMOUNT OF CLAIM (In dollars) | | | J. MICHAEL McMAHON, CLERK<br>U.S. DISTRICT COURT |
|---|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) | |
| | $10,000,000.00 | | $10,000,000.00 (10 million) | |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| Steven A. McGee | | 9/12/06 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-109<br>Previous editions not usable.<br>Designed using Perform Pro, WHS/DIOR, Jun 98

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85) (EG)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2

CONTINUATION SHEET TO

FEDERAL TORT CLAIM

OF STEVEN A. MCGEE

(8)    §        Property Involved In The Claim

**B.    Currency**

(1)    Approximately $4,403.00 in United States currency seized from 10603 Stadium Drive, Kalamazoo, Michigan, the residence of Steven McGee, on or about May 10, 2001.

**C.    Bank Accounts**

(1)    Michigan National Bank, Account Number 4111941235, in the name of Steven A. McGee, with a balance of $1,334.78, plus any accrued interest;

(2)    Michigan National Bank, Account Number 1147278103, in the name of Steven A. McGee, with a balance of $86,020.70, plus any accrued interest;

64



**D.    Vehicles**

(1)    One 1991 Toyota Celica, 2 door, VIN JT25T87F6M0065328;

(2)    One 1992 Mitsubishi Montero, 4 door, VIN JA4GK51S4NJ007938;

**E.    Personal Property**

(1)    One John Deere STX38 Tractor, VIN SM00STXH306335.

**F.    Real Property**

(1)    Any and all interest of STEVEN ALLEN MCGEE in the real property commonly known as 10603 Stadium Drive, Kalamazoo, Michigan, in Kalamazoo County, together with all improvements, fixtures and appurtenances thereon, more particularly described as:

Land in the Township of Texas, Kalamazoo County, Michigan, described as: Commencing at the Southeast corner of the North fractional ½ of the Northwest fractional 1/4 of Section 6, Town 3 South, Range 12 West; thence North 89 degrees 50 minutes West along the South line thereof 333 feet to beginning; thence continuing along said South line North 89 degrees 50 minutes West 800 feet; thence North parallel with the North and South 1/4 line 127.88 feet; thence South 89 degrees 50 minutes East 195 feet; thence North parallel with the North and South 1/4 line 500 feet to the Southerly Right of Way of Stadium Drive; thence North 75 degrees 36 minutes 48 seconds East thereon 424.66 feet; thence South 00 degrees 1 minute 26 seconds West 449.74 feet; thence South 89 degrees 50 minutes East 193.99 feet; thence South 00 degree 00 minutes 29 seconds East 283.70 feet to the place of beginning.

Out of Tax Number: 3909-06-130-012
New Tax Number for 2001: 3909-06-130-013.

EXCEPTING: Beginning at a point on the North and South Quarter line of Section 6 Town 3 South, Range 12 West, 1447.88 feet North of the center of said Section: running thence North 89 degrees 50 minutes West 938 feet to a point five feet West of the East line of Lot 10 of the unrecorded Plat of C.W. Wilcox's Subdivision and the place of beginning of this description; continuing thence North 89 degrees 50 minutes West 195 feet; thence North 451.41 feet to the South line of Stadium Drive; thence Northeasterly along said South line of Stadium Drive 200.75 feet; thence South 500 feet to the place of beginning.

(2)    Any and all interest of STEVEN ALLEN MCGEE in the real property commonly known as Lots 28, 29, 30, and 31 of Burnett's Addition of Pokagon, Pokagon, in Kalamazoo County, together with all improvements, fixtures and appurtenances thereon, more particularly described as:

2

Land in the Township of Pokagon, Cass County, Michigan, described as:
Parcel I: Lots numbered Twenty-eight (28), Twenty-nine (29), and Thirty (30),
Burnett's Addition of Pokagon, according to the plat thereof as recorded in Liber V
of Plats, page 594, Cass County Records.
Parcel II: Lot number Thirty-one (31), Burnett's Addition of Pokagon, according to
the plat thereof as recorded in Liber V, page 594, Cass County Records.

Tax Number: 14-110-110-030-00 (Affects Lots 28, 29 and 30)
Tax Number: 14-110-110-031-00 (Affects Lot 31).

CONTINUATION SHEET TO

FEDERAL TORT CLAIM

OF STEVEN A. MCGEE

(#11)  **Witnesses:**

DEA Agent Loretta Moore

DEA Agent "Willie" Wilson

U.S. Marshal Dan Elbers

U.S. Attorney Margaret Chiara

AUSA B. Rene Shekmer

AUSA Brian Delaney

attorney Jeff O'Hara

Sheila Goodell

Brian Beauchamp

Earl Martin

Craig Habel

KVET (Kalamazoo Valley Enforcement Team)
Officers Hecht and Hake

Theresa Skakas (KVET attorney)

former U.S. Probation Officer
Roger Finkbeiner

Clerk of the U.S. District Court
Ronald Weston

U.S. District Court Case Manager
Susan Driscoll Burque

U.S. District Judge Robert Holmes Bell

# EXHIBIT

# C (a)

---

Affidavit Filed In Support of Federal Tort Claim

# AFFIDAVIT OF STEVEN A. MCGEE

State of Pennsylvania )
                        ) ss:
County of Union )

     I, Steven A. McGee, being duly sworn, deposes and states that this Affidavit is made on personal knowledge, and if sworn as a witness, I can testify competently to the following facts:

(1)    After midnight on May 11, 2001, my home was raided by a joint DEA/State drug enforcement team (KVET) in an initially warrantless search and seizure. DEA Agents Loretta Moore and Sheila Goodell entered my home and began a warrantless search of my financial records and mail. DEA Agents Moore and Goodell interrogated me without Miranda warnings after I had requested an attorney.

(2)    DEA Agents  sent Kalamazoo Valley Enforcement Team (KVET) officers to obtain a State Search  Warrant for their search, which arrived approximately am hour to two hours after the search had been initiated. DEA and KVET agents had informed me that I was not under arrest, but when I attempted to leave, I was physically seized by two KVET officers who forcibly removed my car and house keys from my pockets. I was repeatedly berated and interrogated by KVET Sgt. Martin and Officer Beauchamp, who ignored my requests for an attorney, and kept up their interrogation for hours, until nearly dawn.

(3)    With the information taken in their warrantless search, DEA Agents froze my savings and checking account at Standard Federal Bank containing $86,000.00 when business opened on May 11, 2001. I had informed DEA Agents Moore and Goodell during their interrogation that the funds in my savings account were legally derived and that their were no drug proceeds in the account.

(4)    DEA and KVET officers also seized three vehicles from my property without probable cause, and confiscated hundreds of

documents that exceeded the limited scope of the State Search
Warrant. DEA and KVET officers took numerous items and documents
from my home that were never included in any search inventory.
Assistant Kalamazoo City Attorney Theresa Skakas  filed a State
lis pendens against my residence at 10603 Stadium Drive in
Kalamazoo, Mi. on May 11, 2001.

(5)    Assistant United States attorney B. Rene Shekmer began
preparing a Federal prosecution against me to take to a Grand Jury,
working closely with DEA Agent Loretta Moore.

(6)    On or about May 14, 2001 DEA Agent Moore went to a Federal
Magistrate Judge and obtained an Order pursuant to 21 USC 853(e)
to restrain the over $85,000.00 in my savings account.

(7)    I retained attorney Randy Levine to represent me and instructed
him to get back my seized property, and to file suppression motions
against the illegal search and seizure of May 11, 2001 if charges
were filed against me.

(8)    On or about May 20, 2001, I moved out of my home on Stadium
drive to stay with a friend. I had been waking up every morning with
the sheets drenched in sweat and was not sleeping well. DEA and KVET
agents had me under constant surveillance and were following me all
over town. I was able, however, to leave my home unnoticed, and
police were unaware of my whereabouts.

(9)    On May 24, 2001, a Federal Indictment was returned against me
for conspiracy to manufacture marijuana. A Forfeiture Count was also
returned by the Grand Jury that did not include my home on Stadium
Drive or any of my other real estate holdings.

(10)   While staying at my friend's apartment, I maintained contact
with my attorneys by cell phone and worked on a statement concerning
the DEA/KVET search & seizure of May 11, 2001, as I had been

(2)

instructed by attorney Levine, to prepare for the filing of suppression motions. Federal agents intercepted my cell phone conversations with attorneys Levine and Steve Sossman concerning the planned Suppression Motions, and learned of a planned meeting with attorney Sossman set for May 29th.

(11)    I spotted  DEA agents in a surveillance vehicle the morning of May 29th when I arrived to meet with attorney Sossman. The DEA agents followed attorney Sossman and myself to the law library located in the Kalamazoo Public Library. Agents then followed me as I walked to attorney Levine's office when I dropped off my prepared statement to him concerning the illegal search of my home, and then followed me back to my residence on Stadium Drive.

(12)    When I attempted to return to attorney Levine's office later in the afternoon of May 29th, DEA and KVET agents stopped my car and arrested me for conspiracy to manufacture marijuana. Attorney Levine had previously informed the DEA and AUSA Shekmer that I would self-surrender on demand. KVET Officer Beauchamp grabbed my legal briefcase from the front seat of the car and began rummaging through the contents. I immediately informed DEA Agents Moore and Wilson, and KVET Sgt. Martin, that the briefcase contained privileged attorney-client communications.

(13)    KVET Officer Beauchamp continued searching my legal briefcase until he located the privileged statement that had been written to attorney Levine concerning the search of May 11th. Beauchamp removed the statement from the legal briefcase and began reading it on top of the car. When he was finished, other KVET officers who had participated in the illegal search of May 11th took turns reading the privileged statement. The statement was eventually handed over to DEA Agent Moore, who reviewed it with KVET Sgt. Martin in a car parked

(3)

nearby. I overheard Sgt. Martin urging DEA Agent Moore to obtain a search warrant for attorney Levine's office. The complete contents of the legal briefcase, including the privileged attorney-client statement, were taken to DEA headquarters in Grand Rapids. I was taken to the Kent County Jail.

(14)    I called attorney Levine from the Kent County Jail to inform him that I had been arrested, and that I had overheard DEA and KVET officers discussing plans to obtain a search warrant for his office. I informed Levine that my legal briefcase had been seized by the DEA, containing the privileged statement concerning the May 11th raid, as well as attorney fee arrangements and other legal documents.

(15)    Attorney Levine was accompanied by my brother Brian McGee to Grand Rapids on May 30, 2001 when he represented me at my arraignment. My brother Brian informed me that during the ride up to Grand Rapids, Levine had expressed concern over the Dea and KVET's interest in him, and had inquired whether my brother Brian had been asked any questions about Levine by the DEA and KVET during their consensual search of my brother's home on May 29th.

(16)    Attorney Levine sent a letter to AUSA Shekmer requesting the Discovery due under Federal Rules of Criminal Procedure 16. Attorney Levine also represented me at the Initial Pretrial Conference on June 8, 2001. Levine indicated to the U.S. District Court at that time that he intended to file suppression motions regarding the illegal search.

(17)    At the conclusion of the Pretrial Conference, attorney Levine requested the Court to return my legal briefcase and contents that had been seized during my arrest on May 29th. AUSA B. Rene Shekmer agreed, and Levine and myself walked directly from Court to the

nearby DEA headquarters, where we retrieved the briefcase and contents from DEA Agents Moore and Wilson.

(18)    AUSA Shekmer complied with the Initial Discovery Order [R.#12] by supplying only heavily redacted portions of KVET police reports concerning the illegal search of May 11, 2001. The Initial Discovery Order [R.#12] had required the Government to furnish copies of the hundreds of documents that had been seized from my home, but AUSA Shekmer failed to provide those documents.

(19)    The redacted police statements provided by AUSA Shekmer in Discovery fraudulently omitted the participation of DEA agents in the search of May 11th, 2001. Any mention of DEA Agent Moore's entry and search of my home prior to the arrival of a search warrant was intentionally deleted. No DEA statements regarding oral statements that were made during the hours-long interrogation on May 11, 2001 were provided. No DEA statements regarding my arrest on May 29, 2001, the seizing of my legal briefcase, or oral statements made at that time, were provided to attorney Levine. DEA agents filed false material declarations of fact stating that I had "self-surrendered" on May 30, 2001; fraudulently concealing the arrest of May 29, 2001.

(20)    A week after the Pretrial Conference, attorney Levine informed me that he would withdraw from the case if I did not come up with an additional $60,000.00 retainer. A mortgage that attorney Levine had arranged for my home on Stadium Drive to pay his legal fees had initially been approved, but fell through when the Lis Pendens filed by KVET lawyer and Assistant Kalamazoo City Attorney Theresa Skakas on May 11th, showed up on a title search.

(21)    A week later, attorney Levine informed me in a letter that he had ceased to perform legal work on my behalf. The planned Suppression Motions were due by July 6, 2001. Levine refused to

return any part of his retainer until another attorney agreed to take over the case.

(22)    Desperate to file the Suppression Motions before the Pretrial Motion Deadline of July 6th, I arranged with my sister, Marlene Rheault, to mortgage my residence and property on Stadium Drive to her for $30,000.00. Marlene Rheault personally flew in from Los Angeles to loan me the money. Prior to my arrest, Marlene Rheault had no knowledge of any possible involvement in marijuana cultivation on my part. She was also not aware if any illegal contraband had been found during the illegal search of May 11th, and I did not tell her.

(23)    Using $5,000.00 of the borrowed money, I retained attorneys Mequio and Peterson on or about July 2, 2001, informing them of the imminent Suppression Motion Deadline and the urgency of the situation.  Mequio and Peterson informed me that they had contacted the U.S. District Court in Grand Rapids, and allowances would be made for late filing of the Suppression Motions due to the substitution of attorneys. Attorney Levine did not transfer the Discovery provided by AUSA Shekmer to new attorneys Mequio and Peterson until July 5, 2001, one day before the Pretrial Motion Deadline.

(24)    Trial had been set for August 13, 2001, and the Final Pretrial Conference for August 6, 2001. The U.S. Attorney's Office in Grand Rapids has a policy of not negotiating plea agreements less than two weeks before trial. Taking advantage of the confusion surrounding the substitution of attorneys, and at the urging of unknown parties, the District Court moved up the date of the Final Pretrial Conference to July 26, 2001, without the knowledge or prior consent of my attorneys.

(25)    On July 10, 2001, Mequio and Peterson filed the Suppression Motions in U.S. District Court as promised; filing a Motion to

(6)

Suppress Evidence, Motion To Suppress Statements, Motion to Suppress
404(b) Evidence, Motion For Return Of Unlawfully Seized Property,
Motion For a Continuance, and Motion To Extend Motion Deadlines.

(26)    Also on July 10, 2001, I used the remaining $25,000.00
borrowed from my sister Marlene to retain attorney Jeff O'Hara from
Grand Rapids, believing him from reputation and recommendation to be
a highly skilled criminal defense attorney who would vigorously
defend my legal interests. Before being retained, attorney O'Hara
reviewed the Suppression Motions filed that day by Mequio and
Peterson, as well as the police statements provided in Discovery, and
assured me that he would be able to work from Mequio and Peterson's
Motions.

(27)    Unknown to me at the time, attorney O'Hara contacted AUSA
B. Rene Shekmer and entered into a collusive arrangement with the
U.S. Attorney's Office to fix the outcome of my case and assist in
forfeiting all of the property and assets I owned, including property
not included in the Indictment. O'Hara first demanded, as a condition
of his employment, that I remove retained attorneys Mequio and
Peterson from the case because O'Hara "needed to work alone." Shortly
after O'Hara was retained, in the first week of his employment, I
provided O'Hara in an interview with financial records proving the
legal origins of the $86,000.00 in my seized savings account, including
the relevant real estate transactions that comprised the deposits to
the account.

(28)    A week after being retained, O'Hara began extorting my property
from me by communicating threats from AUSA Shekmer in attorney
correspondence dated July 16th and 19th of 2001. Those threats
stated that if I persisted in continuing to trial, that AUSA Shekmer
would seize and forfeit all of my real estate holdings.

O'Hara also informed me in his attorney correspondence that he was negotiating a plea agreement with AUSA Shekmer, falsely claiming that I had authorized him to do so.

(29)    The U.S. Attorney's Office in Grand Rapids has an official policy regarding plea agreements, which they commonly distribute to defense attorneys in pretrial proceedings. That policy states that no plea agreement will be offered to any defendant until the defendant has given a proffer to the Government, which will then be evaluated before any plea agreement is considered. That official U.S. Attorney's policy also states that terms for the proffer will be negotiated with the defendant's lawyer in a proffer letter prior to testimony being taken in any proffer. There were no proffer letters exchanged between AUSA Shekmer and attorney O'Hara, and no proffer given by me, prior to the scheduled Pretrial Conferences of July 26th and July 30th of 2001.

(30)    Between being retained on July 10th, and the scheduled Pretrial Conference of July 26th, attorney O'Hara did absolutely no work on my case, other than make one trip to DEA headquarters on July 13th to allegedly review evidence, during which he failed to request or obtain copies of the hundreds of documents that had been illegally seized on May 11th, and were required to be turned over in the Initial Discovery Order. [R.#12].  O'Hara also failed to interview a single witness or gather impeachment evidence against prospective witnesses. With my Suppression Motions filed asserting an illegal search and seizure, O'Hara never arranged to visit my home and property to examine the scene of the illegal search and, in fact, made absolutely no preparations for suppression hearings.

(31)    After receiving AUSA Shekmer's threats to seize and forfeit my real estate, I took steps to protect my property, and my sister

Marlene's mortgage, by transferring Title to my Stadium Drive
property to Marlene Rheault with a Warranty Deed  dated July 24,
2001.

(32)   Attorney O'Hara requested that I come to his office in Grand
Rapids an hour before the scheduled Pretrial Conference of July 26,
2001  for a meeting. O'Hara informed me in vague terms what AUSA
Shekmer was offering in terms of a plea agreement, but had nothing
in writing for me to read. I asked O'Hara if there was any word about
when suppression hearings were going to be held, and he told me that
Judge Bell was not going to consider the Suppression Motions [R.#23]
because they had been filed late.

    Seeing my surprise,O'Hara then told me that if I refused to
plead guilty in the forthcoming Pretrial Conference, that AUSA
Shekmer would move to revoke my bond pending trial. O'Hara further
threatened me by telling me AUSA Shekmer planned to file a superceding
Indictment, and when that happened, the DEA would then be sent to
"rearrest" me.

    Near the end of the meeting, I told O'Hara that I had
transferred  Title to my home on Stadium Drive to my sister Marlene
and gave him a copy of the Warranty Deed. O'Hara became furious, and
told me  İ would have to rescind the Warranty Deed, or there would
be no plea agreement.  If I didn't plead out, O'Hara told me, I would
be convicted and sentenced to 12 years or more in Federal prison,
and there was nothing he could do to help me.

(33)   Attorney O'Hara and I then walked the five minutes to the
Federal courthouse for the scheduled Pretrial Conference. A few
minutes after our arrival, as we stood in the hallway outside Court,
AUSA Shekmer appeared and handed O'Hara some papers, which included
an Information and a Plea Agreement. I had absolutely no idea what

an information was, or what was going on.

Attorney O'Hara then informed me that my co-defendant, Tod Estes, who was visible in an adjoining room off the Court hallway signing papers with his attorney and AUSA Shekmer, was going to plead guilty at the upcoming Pretrial Conference, and O'Hara wanted me to watch the proceedings so I, "could see how it's done." O'Hara then handed me the Information and Plea Agreement and told me to let him know what I thought before the Pretrial Conference began. At that point, there was less than ten minutes remaining before the Hearing was scheduled to start.

(34)    When I finally read the terms of the Plea Agreement and the Information, I became infuriated. AUSA Shekmer had added my home on Stadium Drive and a house I owned in Pokagon, Michigan, which had not been included in the Indictment, to the list of assets being sought for forfeiture, and was offering nothing in terms of a sentencing agreement.

AUSA Shekmer had stepped back into the hallway, and when she approached within speaking distance, I told her that I had mortgaged my home to my sister; afraid, in light of O'Hara's threats, of telling her the full truth that I had already transferred Title to the property. AUSA Shekmer informed me that she wasn't worried because "we have a Lis Pendens on the property."

I then approached attorney O'Hara and expressed my anger over the forfeiture provisions listed in the Information. I told O'Hara that I would never agree to the stated terms in the proposed Plea Agreement.  Court was being called into session for the scheduled Pretrial Conference, and O'Hara hurried to consult with AUSA Shekmer at the Court entry. After a brief conversation with AUSA Shekmer, O'Hara returned and told me my Pretrial Conference had been adjourned,

and would be rescheduled. I left the Courthouse.

(35)    The forfeiture provisions in the Plea Agreement stated only that:

> "The Defendant further agrees that he will admit forfeiture to the Government of each and every item of personal and real property listed in Count Two of the attached information and that he will execute any and all documents necessary to effect transfer of clear and marketable title to the Government relative to each item of personal and real property listed in Count Two."

Notably, there was no stipulation of facts supporting forfeiture as required in a plea agreement. There was no stipulation in the Plea Agreement  that any of the assets sought for forfeiture were either derived from illegal proceeds or used to facilitate the alleged conspiracy to manufacture marijuana. There was no stipulation that I would waive any right, title,  or claim to the property if, for some reason, I did not fulfill the agreement by conveying marketable title to the Government. Also, notably, there was no language in the Plea Agreement stating that I would not contest the forfeitures at sentencing.

The foregoing provisions are mandatorily required to be included in any plea agreement to create a valid forfeiture agreement, as stated in Forfeiture Settlements 9-113.000 of the U.S. Attorney's Manual.

(36)    O'Hara called and informed me that my Pretrial Conference had been rescheduled for July 30, 2001, and to call the morning of the 30th for further instructions. When I called as instructed, O'Hara told me to come up to his office a half-hour before the scheduled Conference. O'Hara told me that there was now a "second option" on the table regarding the Plea Agreement which would not require me to forfeit my home on Stadium Drive, and we would discuss it prior to the Hearing.

(37)    I arrived at attorney O'Hara's office on July 30, 2001, a
half-hour before the scheduled Pretrial Conference. I was told by
O'Hara's receptionist to wait in the outer lobby as attorney O'Hara
was busy with other clients. I sat steaming in O'Hara's lobby for
twenty minutes as O'Hara consulted with two men, and then spoke to
someone on the phone for several minutes. O'Hara eventually emerged
from his office at twenty after four, put on his jacket, and
announced that it was time to go to Court. There had been no
discussion of the upcoming Pretrial Conference, the proposed Plea
Agreement, or the "second option" O'Hara had brought up that morning
over the phone.

(38)    As O'Hara and I walked to Court, I desperately tried to engage
O'Hara in a discussion of the upcoming Pretrial Conference, and what
the Government was offering in the so-called "second option", but
O'Hara avoided answering my questions; remaining mostly silent and
listening to me discuss the case.

        When we got off the elevator and approached the courtroom,
the hallway was strangely empty of people, unlike the previous
Pretrial conference of July 26th. All the people with business before
the Federal Court that day; defendants, attorneys, U.S. Probation
Officers, and U.S. Marshals were already seated inside the Federal
courtroom, and the doors to Court were shut. Outside, directly in
front of the door, stood AUSA Shekmer and arresting DEA Agent Moore.
There was five minutes remaining before the scheduled 4:30 PM start
of the Pretrial Conference.

(39)    Attorney O'Hara had not informed me that any meetings were
going to be held with AUSA Shekmer prior to the Pretrial Conference,
but had made absolutely clear during the consultation in his office
July 26th what the consequences would be if I did not sign the Plea

(12)

Agreement and plead guilty to the charges. As we neared the door to the courtroom, AUSA Shekmer stepped forward and asked me if I had decided to sign the Plea Agreement or not. I waited for attorney O'Hara to speak up on my behalf, but he said nothing.

(40)   I then answered AUSA Shekmer's question by informing her that attorney O'Hara had told me there was a second option on the table that would not entail forfeiture of my home on Stadium Drive. I told AUSA Shekmer that I might agree to signing a plea agreement under those conditions, which as I understood them, would require me to plead guilty to conspiring to manufacture marijuana, and would leave the forfeitures to be decided in separate civil proceedings.

AUSA Shekmer then told me, "You've got it all wrong". She said that the Government would not offer any plea agreement at all unless I agreed to the forfeitures of each and every item listed in the Information. I then asked AUSA Shekmer why I could not plead guilty to the conspiracy to manufacture, and innocent to the Forfeiture Count. (Count Two). AUSA Shekmer told me the Government could not legally allow me to split my pleas, because it would "set up a conflict" for the Government, and that the District Court would proceed to forfeit my properties anyway if I plead gulity to Count One.

(41)   I protested that the money in my savings account was completely legal but AUSA Shekmer told me that, regardless, if I did not agree to forfeit the savings account, there would be no plea agreement or recommendation for a reduced sentence, and that I could expect the Government to then seek the full range of statutory penalties, up to life in prison. Attorney O'Hara had the financial records I had given him detailing the legal origins of the funds in my savings account stored in his office two blocks away, but said

(13)

nothing to AUSA Shekmer as she continued to pressure me. By this time I was wondering why Court had not been called into session, because it was after 4:30.

(42)    AUSA Shekmer then told me that if I wanted to keep my home of 14 years, I would have to buy it back from the Government for the assessed price of $85,000.00. I told AUSA Shekmer that there was $85,000.00 in my savings account to pay for my home, but she told me that the Government already had control of my bank account, and I would need to come up with $85,00.00 in additional cash if I wanted my home back.

(43)    After we had been standing outside Court talking for several minutes after the starting time for the scheduled Pretrial Conference, an elderly woman opened the courtroom door and came out into the hallway to have a word with AUSA Shekmer. The woman told AUSA Shekmer that the Judge was waiting for her, and asked AUSA Shekmer how much longer it would be before she was ready to appear in Court. AUSA Shekmer told the woman we would not be too much longer, and the woman disappeared back inside the closed courtroom.

(44)    By this time, I was in a state of near panic. I knew attorney O'Hara, whom I had paid $25,00.00 to represent my interests in this case and litigate my filed Suppression Motions against the illegal search of my home, would not lift a finger to help me. I believed, due to threats of attorney O'Hara and AUSA Shekmer, that if I did not sign the Plea Agreement, my bond would very likely be immediately revoked during the upcoming Hearing, and I would receive a long prison sentence if I did not plead guilty and give the Government everything they wanted in terms of forfeiture, even if the assets and properties had nothing to do with any illegal activities.

AUSA Shekmer then spoke up and told me the best she could do

for me on the forfeitures would be to return one of my seized
vehicles. Knowing this was all I would get, I told AUSA Shekmer that
I needed my Dodge truck back to do remodeling work, and told her I
would sign the Plea Agreement. Attorney O'Hara had not said a word
until this point, from the moment AUSA Shekmer had first addressed
me fifteen minutes earlier.

(45)    Attorney O'Hara then directed me to sit at an old school desk
which was sitting incongruously in the Court hallway, and handed me
a pen. O'Hara and AUSA Shekmer dug through their briefcases and
produced documents for me to sign. I signed the Plea Agreement, which
stated that I had already given a proffer to the U.S. Attorney's
Office as required to be offered a plea agreement, even though no
proffer had ever been given and no proffer terms agreed upon. AUSA
Shekmer and attorney O'Hara also knowingly affixed their signatures
on the Plea Agreement to that false assertion.

(46)    I signed the Plea Agreement with its language that I would
transfer "clear and marketable title" to my home on Stadium Drive,
when I had already transferred Title by Warranty Deed to my sister
Marlene, the fact of which O'Hara was aware when he also signed the
Plea Agreement. AUSA Shekmer was at least aware that Title to the
Stadium property was not free and clear and that my sister held a
mortgage on the property.  AUSA Shekmer and O'Hara then shoved
another document in front of me to sign stating that I had already
appeared before Magistrate Carmody and had been informed of, and
was aware of all my rights, when I had yet to make an appearance
before Magistrate Carmody to be arraigned on the Information. [See
R.#36, Consent to Magistrate Carmody conducting the Plea Hearing.]

(47)    AUSA Shekmer then motioned to DEA Agent Moore to open the
doors to Court and everyone entered the courtroom. Attorney O'Hara

(15)

then directed me to walk down the aisle with him to the podium.
O'Hara had not prepared me for either the proceedings of a pretrial
conference or a plea hearing, but Magistrate Carmody began conducting
what appears in retrospect to have been a simultaneous Arraignment
and Plea Hearing when I reached the podium.

(48)    In the ensuing Plea Hearing of July 30, 2001, I initially
answered Magistrate Carmody's questions with O'Hara and AUSA
Shekmer's threats in mind, and tried to tailor my answers to what I
thought they wanted me to say; answering most questions simply yes
or no. However, when Magistrate Carmody asked me directly, in
attempting to take a plea to Count Two, the Forfeiture Count, if the
assets listed for forfeiture were either derived from illegal proceeds
or used to facilitate the manufacture of marijuana, I believed that
I might still have a chance of protecting my property and assets
from forfeiture, and honestly answered the Judge's question, "No,
not all of them."

(49)    Magistrate Carmody then asked me which assets were not subject
to forfeiture and, in answering her question about the only asset
about which I was allowed to testify, I informed Magistrate Carmody
that the $85,000.00 in my savings account derived from legitimate
real estate transactions.  Magistrate Carmody then asked me if I
had any records proving my claims.

(50)    I attempted to answer Magistrate Carmody's question by
informing her that I had "exact records" proving the legal origins
of the funds in my savings account, but after informing her of that
fact, my testimony was interrupted in mid-sentence, first by AUSA
Shekmer rising from her seat to object, and, almost simultaneously,
by attorney O'Hara giving me a hard kick to the calf of my left leg
to halt my testimony. I lost my train of thought, stumbled over my

words, and then tried to finish my sentence.

(51)   AUSA Shekmer then spoke to Magistrate Carmody and requested
to have a word with attorney O'Hara. AUSA Shekmer and O'Hara held a
short whispered conversation out of earshot of the Court, and then
O'Hara returned to the podium. O'Hara cupped both his hands to my
ear and whispered, so no one could hear; "Look, it doesn't matter
to me one way or another, but if you want a deal you'd better change
your tune."

(52)   Once again having been put in fear of the consequences of
not cooperating with AUSA Shekmer  and attorney O'Hara, I then
scrambled for words and informed Magistrate Carmody that attorney
O'Hara had advised me to say that all my assets were "commingled",
and there was no dividing them between legal and illegal, all the
time knowing that attorney O'Hara had the "exact records" showing
the real estate transactions deposited in my savings account stored
in his office two blocks away.

(53)   Magistrate Carmody then quickly brought the Plea Hearing to
a close; misstating forfeiture law by concluding that any alleged
"commingling" was a sufficient basis to establish that the assets
were subject to forfeiture.

(54)   A week after the Plea hearing, attorney O'Hara called and
told me that I would have to show up to give a  mandatory interview
to AUSA Shekmer and DEA agents. O'Hara told me the interview was
absolutely necessary if I expected to receive any leniency from the
Government and receive the "safety valve" reduction in sentence
below the ten year statutory mandatory minimum. O'Hara also told me
that I would receive time off of any sentence by giving the interview
for, "acceptance of responsibility".

        O'Hara also told me that I had no choice concerning the

interview with the prosecutor, because such interviews were mandatory in cases where a plea of guilty had been entered. Attorney O'Hara told me, in complying with the terms of the Plea Agreement, that I would have to cooperate completely with AUSA Shekmer and answer all her questions, but that any information provided would be strictly confidential, and could not be used against me by the Government or the U.S. Probation Officer writing the Presentence Report.

(55)   I gave the "mandatory" interview to AUSA Shekmer on August 8, 2001, which lasted approximately one hour. Attorney O'Hara was present as well as DEA Agents Moore and Wilson. I cooperated with the investigators and gave then the names of other people who were involved in Tod Estes' marijuana growing operation. When AUSA Shekmer and the DEA agents asked me about events in years prior to the charged conspiracy, I declined to answer their questions. The DEA agents attempted to question me concerning proceeds of the alleged marijuana conspiracy, but I told them I had not pleaded to selling marijuana, only conspiring to grow it, and that my earnings were documented in my income tax returns. I informed them  that the most money I had legally made in one year was between $50,000.00 and $80,000.00.

(56)   .AUSA Shekmer or the DEA agents evidently violated the Plea Agreement and the guarantees of confidentiality I had been promised, because information and topics that were discussed during the August 8, 2001 interview later turned up in the Presentence Report. Some of the information was taken out of context or altered beyond recognition.

(57)   At or near the end of September 2001, I requested attorney Jeff O'Hara to try to withdraw my Plea, after KVET officers surrounded

(18)

me in my driveway, again held me hostage, and searched my car without a warrant. O'Hara sent me a letter stating that he would try to withdraw my Plea if those were my wishes, but after I told him to proceed with filing the motions, he refused.

(58)    The District Court issued an Initial Order of Forfeiture [R.#53] on October 9, 2001 without having accepted the Plea. The U.S. Marshals, under the supervision of Marshal Dan Elbers, began seizing and posting my property, improperly utilizing civil and admiralty procedures in a criminal forfeiture. The Motion For Return of Unlawfully Seized Property was still before the District Court at [R.#23] and had not been ruled upon.

(59)    Under tremendous mental strain, I did not appear for sentencing on November 5, 2001, and left the Court's jurisdiction.

(60)    On December 4, 2001, AUSA Shekmer petitioned the U.S. District Court to issue a Final Order of Forfeiture when no motion had been made under Fed R Crim P 43 to sentence me in absentia, and no final judgment had yet been issued. The Plea had also never been accepted by the District Court. AUSA Shekmer had been fully informed by this point that the Stadium Drive home had been legally transferred to my sister Marlene by Warranty Deed prior to the Plea Hearing or the filing of the Information, and could not have been legally forfeited.

(61)    On December 4, 2001, the District Court issued a Final Order of Forfeiture [R.#64] with no underlying criminal judgment, and still without having ever accepted the Plea. District Judge Bell had also been informed that the Stadium drive property had been legally transferred to my sister by Warranty Deed and was not forfeitable under 28 USC 853(p). The U.S. Marshals seized the home on Stadium Drive that they knew was Titled in my sister Marlene Rheault's name, and took steps to begin selling the property.

(19)

(62)   On or about January 1, 2002, my brother Brian McGee, at the request of my sister Marlene, called a locksmith and attempted to change the locks at the Stadium Drive home and take possession of the house. When the U.S. Marshals arrived, my brother Brian informed them that my sister held Title to the house and had instructed him to take possession. The Marshals told Brian McGee the house had been forfeited to the Government, and to leave and never come back.

(63)   The Marshals continued trying to sell the Stadium Drive property without any underlying judgment or legal transfer of Title. A real estate agent, Chuck Zagon, was contracted to list the property. A prospective buyer was located, and the title company engaged to close the sale, Chicago Title, issued a Title Insurance Commitment informing the U.S. Marshals and the U.S. Attorney's Office that to transfer lawful Title, they must obtain a Warranty Deed from me, pursuant to the signed Plea Agreement, and a Warranty Deed from Marlene Rheault.

(64)   The U.S. Attorney's Office promptly sent a letter to Marlene Rheault demanding that she sign and return a quit claim deed to the Government. I had been in touch with Marlene Rheault sporadically since leaving the court's jurisdiction, and I advised her by phone to hire an attorney and file for an ancillary hearing to assert her claim to the Stadium Drive property.  I had mortgaged the property to her to pay my legal fees and went through a lot of personal agony when the Marshals seized my former home, and put my sister's investment in jeopardy. I wanted to help my sister get the property or her money back.

(65)   On July 26, 2002, the U.S. Attorney's Office filed a Motion For Relief of Judgment of Forfeiture pursuant to Fed R Civ P 60(b). AUSA Brian Delaney falsely claimed that Marlene Rheault held only

(20)

a mortgage on the property, and fraudulently omitted the fact that
Marlene Rheault held Warranty Deed to the property. Under the Fed
R Crim P 32.2, only a claimant can file for relief, and there was
never any "Judgment of Forfeiture" as the U.S. Attorney's Office
mistitled their Motion, but only an Order.

(66)   On September 9, 2002, Marlene Rheault filed a Petition For
An Ancillary Hearing  [R.#72]. My sister told me that she and her
attorney had been in touch with the U.S. Attorney's Office in the
person of AUSA Brian Delaney, and that AUSA Delaney had assured her
that an agreement would be reached in which she could recover the
$30,000.00 she had loaned me for the mortgage.

(67)   On September 18, 2002 I filed a Motion For Withdrawal of Plea
[R.#73] and a Motion To Set Aside Final Forfeiture Order [R.#75]
with the District Court.

(68)   A Motion Hearing was held on September 19, 2002. I had
notified the Court that I would not be appearing personally, pursuant
to Fed R Crim P 43. Neither retained attorney Jeff O'Hara or AUSA
Shekmer made an appearance at the Hearing. The District Judge
dismissed my Motions for "failure to prosecute", noting, however,
that I could refile the Motions when I personally appeared before
the Court.

(69)   The U.S. Attorney's Office applied for, and the District Court
granted, abusive civil discovery Motions to allegedly discover my
sister Marlene's interest in the Stadium Drive property. Marlene
Rheault's interest in the property had been completely disclosed
in the Petition For Ancillary Hearing, and the Warranty Deed attached.
Among the abusive and harrassing procedures employed by the U.S.
Attorney's Office were requests for production of documents detailing
every purchase over $500.00 made by Marlene Rheault in the past five

(21)

years. No conviction had yet attached in the criminal case due to the Plea not being accepted, and there was no final judgment in the case.

(70)    As related to me by my sister, after service of the Interrogatories, Request For Production of Documents, and Request For Admissions [R.#77], the U.S. Attorney's Office, through AUSA Brian Delaney, exerted extortionate pressure on Marlene Rheault to sign the Government's proposed compromise settlement or face ruinous attorney's fees. AUSA Delaney now informed my sister that the Government would only return $20,000.00 of the $30,000.00 she had loaned me for the mortgage, and she could take it or leave it.

(71)    My sister Marlene was forced to sign the Stipulation and Compromise Settlement [R.#81], under the harrassing litigation tactics and extreme pressures applied by the U.S. Attorney's Office, in order to get back any of the money she had loaned me for attorneys' fees and the completely legitimate and legal mortgage on the Stadium Drive property.

(72)    Following the "Judgment of Forfeiture" against Marlene Rheault, the U.S. Marshals proceeded to sell the Stadium Drive property. Title was somehow conveyed without ever obtaining "clear and marketable title" from me as required by the Plea Agreement   and the conditions stated in the Title Insurance Commitment document. The U.S. Marshals, under the direction of Dan Elbers, also sold and disposed of my other assets while the Motion For Return of Unlawfully Seized Property [R.#23] was still pending before the Court, the Plea had not yet been accepted, and there was no valid and final judgment in the criminal case encompassing forfeiture of the listed assets.

(73)    I was arrested on February 25, 2004 by the U.S. Marshals.

(74)    Prior to sentencing on May 3rd and May 20th of 2004, I made

(22)

extensive Objections to the Presentence Report [R.#148,151, 169] and to the unlawful forfeitures of my property. I presented evidence in the Exhibits to the Objections to the Presentence Report, that was admissible under Fed R Evid 803(6)(8)(14)&(15), of business records that rebutted the Government's presumption to forfeiture, and proved the legal origins of much of the property that had been forfeited.

(75)    In response to my written and oral objections at the Sentencing Hearing of May 3, 2004 [Transcript R.#159], the District Judge ordered extensive revissions to, and excissions from, the Presentence Report during Sentencing on May 20, 2004. [Transcript R.#216]

(76)    Following Sentencing on May 20, 2004, I Appealed my conviction and sentence to the Sixth Circuit Court of Appeals. My filed Briefs with the Court contested the unlawful forfeitures of my property.

(77)    U.S. Attorney Chiara and AUSA Shekmer filed an Appellee Brief in my criminal Appeals before the Sixth Circuit at #04-1706, #04-1406, & #04-2003, 2005, & 05-2198, that intentionally included prejudicial information that had been stricken from the record by the District Judge on May  20, 2004, in support of their arguments on Appeal.

(78)    U.S. Attorney Chiara and AUSA Shekmer filed a Joint Appendix in my Appeals that excluded the documents I had designated on Appeal as necessary to supporting my arguments, and that included an unrevised Presentence Report still containing the information stricken from the PSR by the District Judge. U.S. Attorney Chiara and AUSA Shekmer also filed in the Joint Appendix a docket entry, represented to the Court as being R.#23 from the District Court record, in which the crucial 16 pages of Suppression Motions filed July 10, 2001 were intentionally deleted.    Further Affiant Saiths Not.

EXECUTED: _Aug. 30, 2006_    _Steven A. McGee_

Steven A. McGee

On this _30th_ day of August 2006 before me a Notary Public
in and for said County appeared Steven A. McGee, to me known to be
the same person described in and who executed the foregoing
instrument and then acknowledged the same to be his free act
and deed.

Steven A. McGee
#10511-040
LSCI Allenwood
P.O. Box 1000
White Deer, Pa. 17887

NOTARIAL SEAL
Christine R. Vandine, Notary Public
Gregg Twp., Union County
My commission expires February 9, 2008

AFFIDAVIT OF STEVEN A. MCGEE

(pg.24)

# EXHIBIT

# D

Federal Tort Claim Filed January 4, 2007 Against District
Court Clerk Ronald Weston and Officers of the U.S.
District Court For The Western District of Michigan
Concerning the Fraud On The Court In Removing  Plaintiff
McGee's Filed Suppression Motions from the Judicial Record

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of the form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

**1. Submit To Appropriate Federal Agency:**

United States Supreme Court
1 First Street NW
Washington, D.C. 20543

**2. Name, Address of claimant and claimant's personal representative, if any.** *(See instructions on reverse.) (Number, street, city, State and Zip Code)*

Steven A. McGee  #10511-040
LSCI Allenwood
P.O. Box 1000
White Deer, Pa. 17887

| 3. TYPE OF EMPLOYMENT ☐ MILITARY ☐ CIVILIAN | 4. DATE OF BIRTH 8/2/53 | 5. MARITAL STATUS Single | 6. DATE AND DAY OF ACCIDENT July 10,2001 until present-- Discovered--Sept. 2006 | 7. TIME *(A.M. or P.M.)* |
|---|---|---|---|---|

**8. Basis of Claim** *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)*

    Reckless and willful negligence and abuse of process in aid and abettance of extortion & fraud, and fraud on the Court, in refusing to record, or else destroying or removing filed Federal judicial records; as detailed in the attached Continuation pages and two attached Affidavits, one on file with the Tort Division of the U.S. Justice Department, and the other as a statement of the case in a Petition For Writ of Certiorari filed with the Supreme Court in COA# 04-2003,2005,& 05-2198.

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and Zip Code)*

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instructions on reverse side.)*   See property descriptions in attached Continuation pages.

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

    Wrongful deprivation of property and the resulting mental anguish and emotional distress involved in trying to recover expropriated property while being constantly obstructed by the BOP and Justice Department.

**11. WITNESSES**

| NAME | ADDRESS *(Number, street, city, State, and Zip Code)* |
|---|---|
| See Continuation Sheets | -------------------------------------------------- |

**12.** *(See instructions on reverse)* **AMOUNT OF CLAIM** *(In dollars)*

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY $10,000,000.00 | 12c. WRONGFUL DEATH | 12d. TOTAL *(Failure to specify may cause forfeiture of your rights.)* $10,000,000.00 |
|---|---|---|---|

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT *(See instructions on reverse side.)* *Steven A Mc'Gee* | 13b. Phone number of signatory | 14. DATE OF CLAIM 1/04/07 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. *(See 31 U.S.C. 3729.)* | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. *(See 18 U.S.C. 287, 1001.)* |

95-109
Previous editions not usable.
Designed using Perform Pro, WHS/DIOR, Jun 98

NSN 7540-00-634-4046

**FILED**

OCT 2 5 2007

NANCY MAYER WHITTINGTON, CLERK

STANDARD FORM 95 (Rev. 7-85) (EG)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 38 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## INSTRUCTIONS
### Complete all items - insert the word NONE where applicable

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in Item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in Item 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:
(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

Failure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights.

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden,
to  Director, Torts Branch
    Civil Division
    U.S. Department of Justice
    Washington, DC 20530
and to the
Office of Management and Budget
Paperwork Reduction Project (1105-0008)
Washington, DC 20503

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

| 15. Do you carry accident insurance? ☐ Yes, If yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)* and policy number. ☑ No |
|---|

| 16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? NA | 17. If deductible, state amount NA |
|---|---|

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? *(It is necessary that you ascertain these facts)*

NA

| 19. Do you carry public liability and property damage insurance? ☐ Yes, If yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)* ☑ No |
|---|

SF 95 (Rev. 7-85) BACK

CONTINUATION SHEET TO FEDERAL TORT CLAIM OF STEVEN A. MCGEE

#8 -- BASIS OF CLAIM

#8--    District Court Clerk Ronald Weston or deputy clerks under his
direct supervision received Suppression Motions against an illegal
search by the DEA on July 10, 2001, filed by Claimant McGee's
attorneys Mequio & Peterson, but in violation of his oath of office
and Federal statute, 28 USC § 951, District Court Clerk Weston and
unknown deputies refused to record the filed Suppression Motions. In
all, Clerk Weston and his deputies deleted **16 pages** of the Suppression
Motions, recording only a single Motion that was filed on July 10,
2001; a Motion To Extend Motion Deadlines & Motion To Adjourn Jury
Trial with Brief in support; which recording was fraudulently and
deceptively intended to make it appear that all the Suppression
Motions filed with the District Court on July 10, 2001 had been
recorded in the docket by the Clerk.

28 USC § 951 states:

        "Each clerk of court and his deputies shall take the following
        oath or affirmation before entering on their duties: 'I, _____,
        having been appointed, do solemnly swear, (or affirm) that I will
        truly and faithfully enter and record all orders, decrees, judgments,
        and proceedings of such court, and will faithfully and impartially
        discharge all other duties of my office to the best of my abilities
        and understanding. So help me God.'"

    Fraud on the Court has been defined as:

        "Fraud on the Court... is fraud which is directed to the judicial
        machinery itself and is not false statements or perjury... It is thus
        fraud... where the impartial functions of the court have been
        directly corrupted."
    Bulloch v United States 763 F 2d 1115,1121 (10th Cir. en banc 1985)

    7 Moore's Federal Practice 60-360 at ¶60.33 notes that
fraud on the court should;

        "embrace only species of fraud which does or attempts to, subvert

(1)

the integrity of the court itself, or is a fraud perpetrated by the
officers of the court... et al, so that the judicial machinery
cannot perform in the usual manner its impartial tasks of adjudging
cases that are presented for adjudication."

"Alternately stated, '[in] order to set aside a judgment or order
because of fraud upon the court under Rule 60(b)... it is necessary
to show an unconscionable plan or scheme which is designed to improperly
influence the court in its decision.' England v Doyle 281 F 2d at 309."
Rozier v Ford Motor Company 573 F 2d 1332,1338

The destruction of Court documents, and removal of the
Suppression Motions from the District Court record by judicial
officers Clerk of the Court Weston and deputies, constituted a fraud
on the Court that was intended to corruptly interfere with the
impartial functioning of the U.S. District Court, as the actions
were specifically undertaken to prevent an unlawful search and
seizure by the DEA from being contested as Constitutionally allowed
by the Fourth Amendment.

The unlawful actions of Clerk Weston in removing the filed
Suppression Motions were intended to assist a  conspiratorial alliance
between the U.S. Attorney's Office and Claimant McGee's colluding
attorney, Jeff O'Hara, whose objective it was to eliminate any
adversarial challenge to the Federal charges  lodged against Claimant
McGee, to aid and abet the extortion of property and assets not
subject to forfeiture under the law, and to secure a large non-
refundable retainer of $25,000.00 to attorney O'Hara while performing
no legal work on Claimamt McGee's behalf.

The unlawful actions of the District Court Clerk's Office
were undertaken in direct response to improper influence wielded by
either the DEA, Assistant U.S. Attorney B. Rene Shekmer,or by the
Chief District Judge Robert Holmes Bell himself, on his direct orders,

(2)

or as conveyed through his District Court Case Manager, Susan Driscoll Burque.

District Court Clerk Ronald Weston, and other responsible John or Jane Doe judicial officers under his direct supervision, violated a sworn statutory and administrative duty owed to Claimant McGee to record documents in the record that were validly filed with the U.S. District Court to contest an unlawful search of the Claimant's home by the DEA, resulting in irreparable harm to the Claimant involving the loss of everything earned or acquired by Claimant McGee over a lifetime, $50,000.00 in attorney's fees, and the immeasurable mental anguish and emotional duress incurred by Claimant McGee over the past five years in trying to fight his case in court, and recover his expropriated life savings and properties, while now impoverished and imprisoned.

Executed: 1-4-07

Steven A. McGee

(3)

CONTINUATION SHEET TO

FEDERAL TORT CLAIM

OF STEVEN A. MCGEE

(8)    §        Property Involved In The Claim

B.    Currency

(1)    Approximately $4,403.00 in United States currency seized from 10603
       Stadium Drive, Kalamazoo, Michigan, the residence of Steven McGee, on
       or about May 10, 2001.

C.    Bank Accounts

(1)    Michigan National Bank, Account Number 4111941235, in the name of
       Steven A. McGee, with a balance of $1,334.78, plus any accrued interest;

(2)    Michigan National Bank, Account Number 1147278103, in the name of
       Steven A. McGee, with a balance of $86,020.70, plus any accrued interest;

D. Vehicles

(1)   One 1991 Toyota Celica, 2 door, VIN JT25T87F6M0065328;

(2)   One 1992 Mitsubishi Montero, 4 door, VIN JA4GK51S4NJ007938;

E. Personal Property

(1)   One John Deere STX38 Tractor, VIN SM00STXH306335.

F. Real Property

(1)   Any and all interest of STEVEN ALLEN MCGEE in the real property commonly known as 10603 Stadium Drive, Kalamazoo, Michigan, in Kalamazoo County, together with all improvements, fixtures and appurtenances thereon, more particularly described as:

Land in the Township of Texas, Kalamazoo County, Michigan, described as: Commencing at the Southeast corner of the North fractional ½ of the Northwest fractional 1/4 of Section 6, Town 3 South, Range 12 West; thence North 89 degrees 50 minutes West along the South line thereof 333 feet to beginning; thence continuing along said South line North 89 degrees 50 minutes West 800 feet; thence North parallel with the North and South 1/4 line 127.88 feet; thence South 89 degrees 50 minutes East 195 feet; thence North parallel with the North and South 1/4 line 500 feet to the Southerly Right of Way of Stadium Drive; thence North 75 degrees 36 minutes 48 seconds East thereon 424.66 feet; thence South 00 degrees 1 minute 26 seconds West 449.74 feet; thence South 89 degrees 50 minutes East 193.99 feet; thence South 00 degree 00 minutes 29 seconds East 283.70 feet to the place of beginning.

Out of Tax Number: 3909-06-130-012
New Tax Number for 2001: 3909-06-130-013.

EXCEPTING: Beginning at a point on the North and South Quarter line of Section 6 Town 3 South, Range 12 West, 1447.88 feet North of the center of said Section: running thence North 89 degrees 50 minutes West 938 feet to a point five feet West of the East line of Lot 10 of the unrecorded Plat of C.W. Wilcox's Subdivision and the place of beginning of this description; continuing thence North 89 degrees 50 minutes West 195 feet; thence North 451.41 feet to the South line of Stadium Drive; thence Northeasterly along said South line of Stadium Drive 200.75 feet; thence South 500 feet to the place of beginning.

(2)   Any and all interest of STEVEN ALLEN MCGEE in the real property commonly known as Lots 28, 29, 30, and 31 of Burnett's Addition of Pokagon, Pokagon, in Kalamazoo County, together with all improvements, fixtures and appurtenances thereon, more particularly described as:

2

(5)

Land in the Township of Pokagon, Cass County, Michigan, described as:

Parcel I: Lots numbered Twenty-eight (28), Twenty-nine (29), and Thirty (30), Burnett's Addition of Pokagon, according to the plat thereof as recorded in Liber V of Plats, page 594, Cass County Records.

Parcel II: Lot number Thirty-one (31), Burnett's Addition of Pokagon, according to the plat thereof as recorded in Liber V, page 594, Cass County Records.

Tax Number: 14-110-110-030-00 (Affects Lots 28, 29 and 30)
Tax Number: 14-110-110-031-00 (Affects Lot 31).

CONTINUATION SHEET TO

FEDERAL TORT CLAIM

OF STEVEN A. MCGEE

(#11)  **Witnesses:**

DEA Agent Loretta Moore
DEA Agent "Willie" Wilson
U.S. Marshal Dan Elbers.
Other Unknown John Doe U.S. Marshals
U.S. Attorney Margaret Chiara
AUSA B. Rene Shekmer
AUSA Brian Delaney
Attorney Randy Levine
Attorney Jim Mequio
Attorney Gary Peterson
Notary & Secretary Working for Mequio & Peterson
DEA Agent Sheila Goodell
Brian Beauchamp  (KVET Officer)
Craig Habel  (KVET Officer)
KVET (Kalamazoo Valley Enforcement Team) Officers Officers
Hecht and Hake
Other Unknown John Doe KVET Officers
Former U.S. Probation Officer Roger Finkbeiner
Theresa Szakas (former KVET Attorney)
Clerk of the U.S. District Court Ronald Weston
Other Unknown John or Jane Doe Clerks of the U.S. District
Court for the Western District of Michigan
U.S. District Court Case Manager Susan Driscoll Burque
U.S. District Judge Robert Holmes Bell
U.S. District Judge Quist
U.S. Magistrate Judge Scoville
U.S. Magistrate Judge Brennan
Attorney William Fette
Attorney Jeff O'Hara

# EXHIBIT

# E

Face Page of the Motion to Suppress Evidence (& Motion
For Return of Unlawfully Seized Property) and Certificate
of Service [R.#25] Showing Filing of the Suppression
Motions With the District Court On July 10, 2001

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

* * * * *

UNITED STATES OF AMERICA,

    Plaintiff,

                                  Hon. Robert Holmes Bell

vs.

                                  Case No. 101-CR-122

STEVEN McGEE,

    Defendant.

_____/

## MOTION TO SUPPRESS EVIDENCE
### (ORAL ARGUMENT REQUESTED)

NOW COMES Defendant, Steven McGee, by and through his attorneys, MEQUIO & PETERSON, P.L.C., and pursuant to FR Crim P 12(b)(3) and FR Crim P 41(e) & (f), hereby moves for entry of an Order to Suppress evidence, statements, and to return property unlawfully seized from Defendant. In support of said motion, Defendant relies upon and incorporates by reference the attached Brief in Support of Motion to Suppress as though fully set forth herein.

                              MEQUIO & PETERSON, P.L.C.
                              Attorneys for Defendant

Dated: July 10, 2001           By:    _____
                              Gary R. Peterson (P31139)

                              BUSINESS ADDRESS:
                              1300 West Centre Avenue
                              Suite 201
                              Portage, MI 49024
                              (616) 323-3332

077923

**FILED**

OCT 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

*(margin, rotated text)* MEQUIO & PETERSON, P.L.C. ATTORNEYS AT LAW 1300 West Centre Avenue, Suite 201 • Portage, MI 49024 PH: (616) 323-3332 • FAX: (616) 324-6134



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

* * * * *

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

STEVEN McGEE,

     Defendant.

Hon. Robert Holmes Bell

Case No. 101-CR-122

MEQUIO & PETERSON, P.L.C.
ATTORNEYS AT LAW
1300 West Centre Avenue Suite 201 • Portage, MI 49024
•PH: (616) 323-3332• FAX: (616) 324-6184

## PROOF OF SERVICE

Cheryl L. Johnson, being first duly sworn, deposes and says that on the **10th** day of July, 2001, she served the **Motion to Suppress Evidence (Oral Argument Requested), Brief in Support of Motion to Suppress Evidence, Motion to Suppress Statements (Oral Argument Requested), Brief in Support of Motion to Suppress Statements, Motion to Preclude FRE 404(b) Evidence (Oral Argument Requested) Brief in Support of Motion to Preclude FRE 404(b) Evidence, Motion to Extend Motion Deadlines and Motion to Adjourn Jury Trial (Oral Argument Requested) and Brief in Support of Motion to Extend Motion Deadlines and Motion to Adjourn Jury Trial** via facsimile (616) 456-2517 and by enclosing same in a sealed envelope with first class postage fully prepaid addressed to:

     Rene Shekmer
     Assistant United States Attorney
     P.O. Box 208
     Grand Rapids, MI  49501

counsel of record and deposited the envelope and its contents in a United States Government mail receptacle.

     I declare that the statements above are true to the best of my information, knowledge and belief.

_Cheryl L. Johnson_
Cheryl L. Johnson



**MEQUIO & PETERSON,** P.L.C.
ATTORNEYS AT LAW ——————

1300 West Centre Avenue, Suite 201
Portage, MI 49024
PH: (616) 323-3332
FAX: (616) 324-6184

July 10, 2001

U. S. District Court
410 West Michigan Avenue
Kalamazoo, MI 49007

Re:    *People v Steven McGee*
       *Case No. 101-CR-122*

Dear Clerk:

Enclosed for filing in the above referenced matter please find the original and Judge's Copy of the following:

- Motion to Suppress Evidence (Oral Argument Requested) with Exhibits
- Brief in Support of Motion to Suppress Evidence
- Motion to Suppress Statements (Oral Argument Requested)
- Brief in Support of Motion to Suppress Statements
- Motion to Preclude FRE 404(b) Evidence (Oral Argument Requested)
- Brief in Support of Motion to Preclude FRE 404(b) Evidence
- Motion to Extend Motion Deadlines and Motion to Adjourn Jury Trial (Oral Argument Requested)
- Brief in Support of Motion to Extend Motion Deadlines and Motion to Adjourn Jury Trial
- Proof of Service

If you have any questions, please do not hesitate to contact me.

Very truly yours,

MEQUIO & PETERSON, P.L.C.

James D. Mequio

JDM/das
Enclosures
cc:  Rene Shekmer (w/encl).

# EXHIBIT

# F

Outline of the Joint Appendix COA#04-1706 Filed By AUSA
Shekmer & U.S. Attorney Chiara Demonstrating the Deletion
of **16 Pages** of the Suppression Motions From the Judicial
Record at R.#23

Exhibit C... Outline of Joint Appendix Filed By Government in 04-1706

16 Pages of Suppression Motions Are Missing From DCT#23
See Exhibit B A

<table>
<tr><th>Description of Item</th><th>Record<br>Entry No.</th><th>Appendix<br>Page No.</th></tr>
<tr><td>Order Allowing Substitution of Attorneys<br>(7/3/01) .................................................</td><td>R.22</td><td>72</td></tr>
<tr><td>Motion to Extend Motion Deadlines<br>and Motion to Adjourn Jury Trial<br>with Brief in Support<br>(7/10/01) .................................................</td><td>R.23</td><td>74 ?<br>↑<br>↓ - 5 pages</td></tr>
<tr><td>Appearance<br>(7/18/01) .................................................</td><td>R.28</td><td>79</td></tr>
<tr><td>Stipulation and Order for<br>Substitution of Attorney<br>(7/23/01) .................................................</td><td>R.29</td><td>81</td></tr>
<tr><td>Information<br>(7/30/01) .................................................</td><td>R.34</td><td>84</td></tr>
<tr><td>Waiver of Indictment<br>(7/30/01) .................................................</td><td>R.35</td><td>89</td></tr>
<tr><td>Consent<br>(7/30/01) .................................................</td><td>R.36</td><td>90</td></tr>
<tr><td>Plea Agreement with Steven Allen McGee<br>(7/30/01) .................................................</td><td>R.37</td><td>91</td></tr>
<tr><td>Report and Recommendation<br>(7/31/01) .................................................</td><td>R.38</td><td>102</td></tr>
<tr><td>Initial Order of Forfeiture<br>(10/9/01) .................................................</td><td>R.53</td><td>105</td></tr>
<tr><td>Defendant's Sentencing Memorandum<br>(10/31/01) .................................................</td><td>R.59</td><td>111</td></tr>
<tr><td>Final Order of Forfeiture<br>(12/4/01) .................................................</td><td>R.64</td><td>120</td></tr>
</table>

07-1923

**FILED**

OCT 2 5 2007

# EXHIBIT

# G

Affidavit of Steven A. McGee in Petition For Writ of
Certiorari S.Ct.No. 06-9802 Relating (at par.25-26) the
Acquisition of District Court Docket #23 & #25 From the
Court of Appeals by Attorney-In_Fact Charles Smith

COA# 04-2003,2005,& 05-2198
In the
## SUPREME COURT OF THE
## UNITED STATES

---

### STATEMENT OF FACTS

---

### AFFIDAVIT IN SUPPORT OF PETITION

### FOR WRIT OF CERTIORARI

State of Pennsylvania)
                     )ss
County of Union      )

---

I, Steven A. McGee, being duly sworn, deposes and states that this Affidavit is made on personal knowledge, is true, complete and correct, and if sworn as a witness, I can testify competently to the following facts:

(1)  My home was subjected to an initially warrantless search by a multi-jurisdictional DEA/State task force (KVET) after midnight on May 11, 2001. DEA agents sent local law enforcement in the middle of the night to wake up a State judge and obtain a State Search Warrant to cover their actions, after having searched my home and interrogated me for close to two hours.

(2)  A Federal Indictment was returned against me on May 24, 2001, charging me with Conspiracy to Manufacture Marijuana and Forfeiture Counts. I retained the services of attorney Randy Levine, and instructed him to file Suppression Motions against the illegal search.

(3)  On May 29, 2001, after having intercepted attorney-client communications, the DEA/KVET task force arrested me while I was on my way to attorney Levine's office, and seized a privileged client-attorney statement prepared for Levine concerning the actions of the DEA/KVET squad during the illegal search of May 11, 2001, as well as attorney-client fee arrangements.

(4)  On May 30, 2001, I pleaded **innocent** to the charges at the arraignment.

**FILED**

07-1923

OCT 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

(1)

(5)   KVET attorney Szakas placed a lis pendens on my home without having initiated State legal process against me, which caused an already approved mortgage on my home to pay for attorney Levine's fees, to be rescinded. Attorney Levine then withdrew from the case in the middle of the one month period set to file pretrial motions, when I could not pay Levine an additional $60,000.00.

(6)   I retained new attorneys Mequio & Peterson, who only received the Discovery given by AUSA Shekmer to attorney Levine, on July 5, 2001, one day before the Motion Deadline. Mequio & Peterson contacted the District Court, and were assured there would be not problem filing the Suppression Motions a couple of days late, due to the late substitution of attorneys. [See Affidavit of attorneys Mequio & Peterson (R#163)]

(7)   Mequio & Peterson filed the Suppression Motions [R#23] with the District Court on July 10, 2001, including a Motion to Suppress Evidence and Motion for Return of Unlawfully Seized Property, Motion to Suppress Statements, Motion to Suppress 401(b) Evidence, and Motion to Extend Motion Deadlines and Motion to Adjourn Jury Trial. [See Certificate of Service (R#25)]

(8)   I retained another attorney to aid in my criminal defense, Jeff O'Hara, on July 10, 2001. Before being retained, O'Hara reviewed my legal work, including the just-filed Suppression Motions, and reassured me that he would contest the illegal search and seizures, and that he could work from Mequio & Peterson's Motions. Shortly after being retained, O'Hara insisted that I discharge retained attorneys Mequio & Peterson, saying he needed to "work alone". I had paid O'Hara a $25,000.00 retainer with money borrowed from my sister.

(2)

(9)  The filed Suppression Motions were removed from the judicial records of the District Court at the instigation of Chief District Judge Robert Holmes Bell in response to improper influence exercised by either the DEA/KVET task force, the U.S. Attorney's Office, or attorney Jeff O'Hara, who by now was actively colluding with the U.S. Attorney's Office.

(10) The only Motion actually recorded at [R#23] by the District Court Clerk was the Motion to Extend Motion Deadlines and Motion to Adjourn Jury Trial, intended to deceptively make it appear that all the Suppression Motions filed on July 10, 2001 by Mequio & Peterson had been recorded.

(11) Attorney O'Hara and the U.S. Attorney's Office began exerting pressure on me to plead guilty, and attempting to extort property and assets from me that were not forfeitable under the law. I was unaware that the Suppression Motions had not been recorded by the District Court Clerk, and could not understand why O'Hara acted as if they had never been filed.

(12) When I refused to plead guilty at what was scheduled as a Pretrial Conference on July 26, 2001, my Pretrial Conference was cancelled and I was sent home from Court.

(13) When I arrived with attorney O'Hara for the rescheduled Pretrial Conference of July 30, 2001, approximately five to ten minutes before the start of Court, AUSA Shekmer and arresting DEA Agent Moore had arranged with presiding U.S. Magistrate Judge Carmody to shut the doors to Court. While U.S. District Court was being held up for fifteen minutes to accomodate her actions, AUSA Shekmer pressured me to sign a Plea Agreement while attorney O'Hara stood by and did nothing.

(3)

(14) During the subsequently and suddenly convened Plea Hearing, when I attempted to enter "exact records" demonstrating the legal origins of the funds in my seized savings account, and plead innocent to the Forfeiture Count, attorney O'Hara kicked me in the leg to halt my testimony, and then issued whispered threats to alter my testimony or else. [See **audiotape** of Plea Hearing, APPX. of Exhibits to Supplemental Brief #04-1706, **pg. 1**]

(15) In response to these events, I fled the Court's jurisdiction, and wrote a letter to Judge Bell on November 1, 2001, detailing the coercion of my Plea that took place on July 30, 2001, and contesting the forfeitures of my property. [R#104, Ex. J to Motion to Withdraw Plea R#70, JA: <u>174-180</u>]

(16) District Judge Bell then issued a Final Order of Forfeiture on December 4, 2001, without having accepted any plea, and no conviction for the criminal offense having thus attached, and without a valid and final judgment of the Court.

(17) On March 2, 2004, I filed Motions [R#93] with the Court to remove attorney O'Hara as counsel, and a Motion for Withdrawal of Plea, [R#94], on grounds of ineffective assistance of counsel and coercion of the Plea. I moved to proceed pro se, and a stand-by counsel, Ken Tableman of Federal Defenders, was appointed to assist me. A Motion Hearing on the Motions for Withdrawal of Plea and Motion for Evidentiary Hearing was scheduled for April 2, 2004.

(18) In preparation for the Motion Hearing on the Motions to Withdraw Plea, I instructed stand-by counsel Tableman, and investigators working for Federal Defenders, to obtain a copy of the audiotape of the Plea Hearing and copies of the bank records for my unlawfully

forfeited savings account at Michigan National Bank.

(19) Stand-by counsel Tableman informed me that Judge Bell would only permit attorney O'Hara and arresting DEA Agent Moore to be called as witnesses to the scheduled Motion Hearing of April 2, 2004, and that Tableman would handle the issuance of any subpoenas.

(20) I wrote an ex parte request to Judge Bell for subpoenas for the scheduled Motion Hearing, naming ten potential witnesses and explaining the relevance of their testimony to my claims of ineffective assistance and unlawful forfeiture of my property.

(21) When it became clear that District Judge Bell was going to deny my Sixth Amendment Right to compulsory process to subpoena witnesses, documents, or the audiotape of the Plea Hearing to the Motion Hearing to support my allegations, I filed an Affidavit in Support of Motion Alleging Judicial Prejudice, requesting Judge Bell to recuse himself from the case, citing his incentive to conceal improprieties involved in the unlawful forfeitures, and failure to rule on the filed Suppression Motions, as evidence of prejudice and an inability to render a fair or impartial decision. [R#114]

(22) I also filed a Motion for a Continuance at [R#114], citing my inability to support my allegations without calling witnesses or being able to subpoena documents, and without yet having been provided with an audiotape of the Plea Hearing or my case files from ex-attorney O'Hara. I also orally requested a continuance at the end of the Motion Hearing of April 2, 2004. [Transcript R#120, pg. 39-41, JA: 695 - 697]

(23) District Judge Bell proceeded to conduct a sham Hearing on April 2, 2004, without allowing me to call any witnesses or produce

any documents in support of my allegations. Judge Bell summarily

denied all my Motions. [R#116] During the "Hearing", I read my

allegations into the record as they were filed with the Court

in my Motion for Withdrawal of Plea at [R#111, JA: 350-399] and

sworn to under penalty of perjury pursuant to 28 USC 1746. [Transcript

R#120, JA: 658-716, Appendix III to Petition for Writ of Certiorari

in CoA #04-2003, 2005 & 05-2198]

(24) Following the Motion Hearing of April 2, 2004, I instructed

stand-by counsel Tableman to obtain the copies of my bank records

at Michigan National Bank "at any cost". Stand-by counsel Tableman

refused, and informed me that District Judge Bell had instructed

him to terminate his investigation.

(25) In August of 2006, my attorney-in-fact Charles Smith made

arrangements with the Clerk's Office for the Sixth Circuit Court

of Appeals and purchased several docket entries from the District

Court record, including R#23 and R#25.

(26) Charles Smith informed me that the only documents returned

by the Sixth Circuit from R#23 was the Motion to Extend Motion

Deadlines and Motion to Adjourn Jury Trial. Charles Smith forwarded

the documents from the record sent by the Sixth Circuit, confirming

the fact that the Suppression Motions: Motion to Suppress Evidence,

Motion for Return of Unlawfully Seized Property, and Motion to

Suppress Statements, had never been recorded by the District Court

Clerk or else had been fraudulently deleted from the record.

Executed: 12-12-06                          Steven A. McGee
                                            Steven A. McGee

On this 12 day of December 2006 before me a Notary
Public in and for said County appeared Steven A. McGee,
to me known to be the same person described in and who
executed the foregoing instrument and then acknowledged
the same to be his free act and deed.
Steven A. McGee #10511-040
LSCI Allenwood
P.O. Box 1000
White Deer, Pa. 17887                        (6)

NOTARIAL SEAL
Christine R. Vandine, Notary Public
Gregg Twp., Union County
My commission expires February 9, 2008

# EXHIBIT

# H

---

Financial "Exact Records" Demonstrating the Legal Origins
of Funds Deposited in Plaintiff's Forfeited Savings Account,
From Exhibits to Motion For Withdrawal of Plea [R.#70]

299

**A. Settlement Statement**     U.S. Department of Housing and Urban Development     OMB No. 2502-0265

**B. Type of Loan**

1. ☐ FHA 2. ☐ FmHA 3. ☒☒ Conv. Unins.
4. ☐ VA 5. ☐ Conv. Ins.

6. File Number     7. Loan Number  7054499    8. Mortgage Insurance Case Number

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name, Address, and Tax Identification Number of Seller | F. Name and Address of Lender |
|---|---|---|
| NORMAN D. CALVERT<br>JILL A. CALVERT<br>520 MEADOW LANE DR. #81<br>THREE RIVERS, MI 49093 | STEVEN A. MOREE<br>10603 STADIUM DR.<br>KALAMAZOO, MI 49009 | THE FIRST NATIONAL BANK OF<br>THREE RIVERS<br>88 N MAIN ST<br>THREE RIVERS, MI 49093 |

| G. Property Location (if the complete address, including legal description if necessary) | H. Settlement Agent Name, Address, and Tax Identification Number |
|---|---|
| 53831 DAY RD.<br>MARCELLUS, MI 49067<br><br>LEGAL DESCRIPTION: SOUTH 1/4 OF<br>NORTHWEST 1/4 OF SOUTHEAST 1/4 OF THE<br>SOUTHWEST 1/4 S 20, T 5 S | TAX ID#<br>THE FIRST NATIONAL BANK OF THREE RIVERS<br>88 N MAIN ST<br>THREE RIVERS, MI 49093 |
| | Place of Settlement<br>THREE RIVERS, MI 49093 |
| | I. Settlement Date<br>FEBRUARY 12, 1999 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower** | | **400. Gross Amount Due To Seller** | |
| 101. Contract sales price | | 401. Contract sales price | 29,900.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | | 403. | |
| 104. PAYOFF GREEN TREE | | 404. | |
| 105. | | 405. | |
| *Adjustments for items paid by seller in advance* | | *Adjustments for items paid by seller in advance* | |
| 106. City/town taxes   to | | 406. City/town taxes   to | |
| 107. County taxes   to | | 407. County taxes   to | |
| 108. Assessments   to | | 408. Assessments   to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due From Borrower** | | **420. Gross Amount Due To Seller** | 29,900.00 |
| **200. Amounts Paid By Or In Behalf Of Borrower** | | **500. Reductions In Amount Due To Seller** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 3,487.14 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. LAND CONTRACT PAYOFF | 2,642.19 |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments for items unpaid by seller* | | *Adjustments for items unpaid by seller* | |
| 210. City/town taxes   to | | 510. City/town taxes   to | |
| 211. County tax 01/01/99 to 02/12/99 | | 511. County tax 01/01/99 to 02/12/99 | 61.36 |
| 212. Assessments   to | | 512. Assessments   to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | | **520. Total Reduction Amount Due Seller** | 6,190.69 |
| **300. Cash At Settlement From/To Borrower** | | **600. Cash At Settlement To/From Seller** | |
| 301. Gross amount due from borrower (line 120) | | 601. Gross amount due to seller (line 420) | 29,900.00 |
| 302. Less amounts paid by/for borrower (line 220) | | 602. Less reductions in amount due seller (line 520) | 6,190.69 |
| 303. Cash ☐ From ☒☒ To Borrower | | 603. Cash ☒☒ To ☐ From Seller | 23,709.31 |

The undersigned hereby acknowledges receipt of a completed copy of pages 1 and 2 of this statement and any attachments referred to herein.

Borrower _____     Seller _____

Borrower _____     Seller _____

**SELLER'S TAX IDENTIFICATION NUMBER SOLICITATION AND CERTIFICATION**

You are required by law (unless you are a corporation or governmental unit) to provide the Settlement Agent named above with your correct taxpayer identification number. If you do not provide the Settlement Agent with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

_____
**Seller's Signature**

Previous Edition is Obsolete     **SELLER'S COPY**

BANKERS SYSTEMS, INC., ST. CLOUD, MN (1-800-397-2341) FORM HUD-1-TS 5/5/91

HUD-1 (3-86) RESPA, HB 4305.2
(page 1 of 2)

09-1923

**FILED**

OCT 25 2007

**NANCY MAYER WHITTINGTON, CLERK**
**U.S. DISTRICT COURT**

Ex. A

298

*CROSSROADS*

*REAL ESTATE*

6443 S. WESTNEDGE · PORTAGE, MI 49002 · 327-6741

## Seller's Settlement Statement
### Order No.  29348

Buyer:      J & D Investments, L.L.P., P O Box 218, Mattawan, MI 49071

Seller:     Steven A. McGee, 10603 Stadium Drive, Kalamazoo, MI 49009

Property:   XXX Stadium Drive, Kalamazoo, MI 49009

Lender:     Old Kent Bank, 101 E. Crosstown Pkwy., Kalamazoo, MI 49001

Closing Date:   August 17, 2000

**CREDITS:**

| | | |
|---|---|---|
| Contract sales price . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | $55,000.00 |
| Tax Proration 08-17-00 thru 12-31-00 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 68.86 |
| | **Total Credits** | $55,068.86 |

**CHARGES:**

| | | | |
|---|---|---|---|
| Seller Credit to Buyer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | 500.00 |
| **Broker's Commission** | | | |
| Broker's commission . . . . . . . . . . . . . . . . . . Crossroads Real Estate | | | 1,925.00 |
| Broker's commission  . . . . . . . . . . . . . . . . . . Preferred Carlson | | | 1,925.00 |
| **Title Charges** | | | |
| Deed Prep  . . . . . . . . . . . . . . . . . . . . . . . . . . Devon Title Company  . . . . . . . . . . . . . . . . . . | | | 40.00 |
| Title insurance . . . . . . . . . . . . . . . . . . . . . . . Devon Title Company  . . . . . . . . . . . . . . . . . . | | | 360.00 |
| Owner's coverage  . . . . . . . . . . $55,000.00  . . . . . . . . . . . . . . . . . . | | $360.00 | |
| **Recording Charges and Transfer Taxes** | | | |
| Revenue Stamps . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | 473.00 |
| **Other Charges** | | | |
| Administrative Fee . . . . . . . . . . . . . . . . . . Preferred Carlson  . . . . . . . . . . . . . . . . . . | | | 80.00 |
| | **Total Charges** | | $5,303.00 |

**DUE TO SELLER** | $49,765.86

*Steven A. Mc Gee*
Steven A. McGee

All real estate taxes due and payable have been paid.
There are no special assessments against this property.
All conditions of the sales agreement and addendum have
been met and are satisfactory to buyer and seller.
IRS Disclosure form supplied by Devon Title Company.
Prepared by Devon Title Company.
Closed at Devon Title Company.

Seller acknowledges that they have been advised to seek the
advice of an attorney regarding this transaction.

CROSSROADS  REAL ESTATE, REALTOR

By: _____

Ex B

300



TITLE, BOND AND MORTGAGE COMPANY

Date: 04/13/2001
Payed To: STEVEN A. MCGEE
Amount: $15,925.34
File No: TB-56769

Description: LAND CONTRACT PAYOFF

Ref:

Check Number: 71596

PAYMENT RECORD

071596

Exc.

**302**

🔺 **Michigan National Bank**

| OFFICE OF TRANSACTION | OFFICE OF ACCOUNT | OTHER |
|---|---|---|

Checks and other items are received for deposit
regulations governing your account. Payments n...
been accelerated.

... to the provisions of the Uniform Commercial Code and the rules and
...ved may be returned uncredited if for improper amount or if loan has

```
082121 11003 JI71100  R      PM N  15:29 03-11-99
CSR #7234
SAV DEP    1147278103         AMT    $23,000.00
```

This is a receipt for your checking account deposit or other transaction, as indicated, at the office whose
symbol or validation appears above. All transactions are subject to proof and verification.
For assistance, phone 1-800-CALL-MNB (1-800-225-5662), TDD users phone 1-800-662-4833.
Always obtain a validated receipt. Please see reverse side for an explanation of this receipt.

Checks and other items are received for deposit subject to the provisions of the Uniform Commercial Code and
the rules and regulations governing your account.  Payments received may be returned uncredited if for improper
amount or if loan has been accelerated.
First Line:    Transaction No., Bank/Branch No.,  Operator ID, Document Type, AM/PM, Time, Date
AM/PM:    AM = Same day processing, PM = Next day processing, CI = Cash In, CO = Cash Out
Document Type:  RC = Receipt, D = Duplicate, F = Offline
Second Line:   Branch location, Amount of cash within transaction
Third Line:   Type of transaction, Bank/Account No., Amount
This is a receipt for your Michigan National Bank checking account deposit or other transaction, as indicated, at
the office whose symbol or validation appears below.  All transactions are subject to proof and verification.

```
071083 11003 LN80300  R      AM N  16:02 09-01-00
CSR #4626                    01
ELT SAV DEP 1147278103        AMT.    $49,765.86
```

**For assistance, phone 1-800-CALL-MNB (1-800-225-5662), TDD users phone
1-800-662-4833).** Always obtain a validated receipt. Please see above for an explanation of this receipt.  🏠
Member FDIC
2502 (10/99)                                                                           3

Checks and other items are received for deposit subject to the provisions of the Uniform Commercial Code and
the rules and regulations governing your account.  Payments received may be returned uncredited if for improper
amount or if loan has been accelerated.
First Line:    Transaction No., Bank/Branch No.,  Operator ID, Document Type, AM/PM, Time, Date
AM/PM:    AM = Same day processing, PM = Next day processing, CI = Cash In, CO = Cash Out
Document Type:  RC = Receipt, D = Duplicate, F = Offline
Second Line:   Branch location, Amount of cash within transaction
Third Line:   Type of transaction, Bank/Account No., Amount
This is a receipt for your Michigan National Bank checking account deposit or other transaction, as indicated, at
the office whose symbol or validation appears below.  All transactions are subject to proof and verification.

**Ex. E**

```
013059 11003 JJ21i00  R      AM N  15:16 12-22-00
CSR #7295 ELT SAV DEP        01
1147278103                   AMT    $456.46
```

75,780.61

**For assistance, phone 1-800-CALL-MNB (1-800-225-5662), TDD users phone
1-800-662-4833).** Always obtain a validated receipt. Please see above for an explanation of this receipt.  🏠
Member FDIC

Checks and other items are received for deposit subject to the provisions of the Uniform Commercial Code and
the rules and regulations governing your account.  Payments received may be returned uncredited if for improper
amount or if loan has been accelerated.
First Line:    Transaction No., Bank/Branch No.,  Operator ID, Document Type, AM/PM, Time, Date
AM/PM:    AM = Same day processing, PM = Next day processing, CI = Cash In, CO = Cash Out
Document Type:  RC = Receipt, D = Duplicate, F = Offline
Second Line:   Branch location, Amount of cash within transaction
Third Line:   Type of transaction, Bank/Account No., Amount
This is a receipt for your Michigan National Bank checking account deposit or other transaction, as indicated, at
the office whose symbol or validation appears below.  All transactions are subject to proof and verification.

```
048089 11003 DV76700  R      AM N  16:01 04-27-01
CSR #7040 ELT SAV DEP        01
1147278103                   AMT    $15,925.34
```

85,660.80

**For assistance, phone 1-800-CALL-MNB (1-800-225-5662), TDD users phone
1-800-662-4833).** Always obtain a validated receipt. Please see above for an explanation of this receipt.  🏠
Member FDIC

EX E

# EXHIBIT

# I

---

Sworn Affidavit In Support of Petition to the U.S.
Justice Department For Restoration and Return of
Forfeited Savings Account

**AFFIDAVIT OF STEVEN A. MCGEE IN SUPPORT OF**

**PETITION FOR RESTORATION AND RETURN OF FORFEITED**

<u>SAVINGS ACCOUNT AND CASH</u>

State of Pennsylvania )
                       ) ss:
County of Union        )

I, Steven A. McGee, being duly sworn, deposes and states that this Affidavit is made on personal knowledge, is true and correct, and if sworn as a witness, I can testify competently to the following facts:

(1)   On March 11, 1999, I opened a savings account at Michigan National Bank in Kalamazoo, Michigan, account no.1147278103, with a check obtained from the First National Bank of Three Rivers in the amount of $23,709.31 from the sale of a small five acre plot of land that I Had purchased several years earlier. The property was purchased prior to the alleged period of violation charged in a Federal Indictment against me that was issued on May 24, 2001.

(2)   There were only ever four deposits to the account, which are depicted in the attached Exhibit page containing copies of the deposit slips to the account. There were never any cash deposits to the account.

(3)   Two of the other deposits to the account were also checks from real estate transactions, both of properties that had been purchased several years before the period of alleged violations charged in the Federal Indictment of May24, 2001. The deposit of $49,765.86 recorded on September 1, 2000 was a check from Cross Roads Real Estate for sale of a property that I had originally purchased on or about 1985. The deposit of $15,925.34 was a check from Title Bond & Mortgage from sale of a rental house  at 1411 James Street in

FILED

OCT 2 5 2007

01-1923

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

(1)

Kalamazoo that I had originally purchased on or about 1987.

(4)    The deposit of $456.46 was a cashiers check.

(5)    The only money in the account, other than the $456.46 in the cashiers check, derived from legitimate real estate transactions involving properties purchased prior to the period of alleged violation charged in the Indictment of May 24, 2001.

(6)    The money in the account was not derived from drug proceeds, or used to facilitate the alleged conspiracy to manufacture marijuana charged in the Indictment of May 24, 2001, in any manner whatsoever. Further Affiant saiths not.

Executed: __12-28-06__          _Steven A McGee_
                                        Steven A. McGee

        On this __28__ of December  2006 before me a Notary Public in and for said County appeared Steven A. McGee, to me known to be the same person described in and who executed the foregoing instrument and then acknowledged the same to be his free act and deed.

                                        _Christine R Vandine_

Steven A. McGee
#10511-040
LSCI Allenwood
P.O. Box 1000
White Deer, Pa. 17887

NOTARIAL SEAL
Christine R. Vandine, Notary Public
Gregg Twp., Union County
My commission expires February 9, 2008

**163**

*Ex. E*

*motion for withdrawal*
*of plea*

*U.S. v. Steven Allen McGee*
*100-CR-122*

| OFFICE OF TRANSACTION | OFFICE OF ACCOUNT | OTHER |

**Michigan National Bank**

Checks and other items are received for dep___ ___ject to the provisions of the Uniform Commercial Code and the rules and regulations governing your account. Payme... ...received may be returned uncredited if for improper amount or if loan has been accelerated.

082121 ·11003 JI71100 R       PM N  15:29 03-11-99
CSR #7234
SAV DEP     1147278103        AMT      $23,000.00

This is a receipt for your checking account deposit or other transaction, as indicated, at the office whose
symbol or validation appears above. All transactions are subject to proof and verification.
For assistance, phone 1-800-CALL-MNB (1-800-225-5662), TDD users phone 1-800-662-4833.
Always obtain a validated receipt. Please see reverse side for an explanation of this receipt.

25032 (2/94)

Checks and other items are received for deposit subject to the provisions of the Uniform Commercial Code and
the rules and regulations governing your account.  Payments received may be returned uncredited if for improper
amount or if loan has been accelerated.
First Line:      Transaction No., Bank/Branch No.,  Operator ID, Document Type, AM/PM, Time, Date
AM/PM:         AM = Same day processing, PM = Next day processing, CI = Cash In, CO = Cash Out
Document Type: RC = Receipt, D = Duplicate, F = Offline
Second Line:   Branch location, Amount of cash within transaction
Third Line:    Type of transaction, Bank/Account No., Amount
This is a receipt for your Michigan National Bank checking account deposit or other transaction, as indicated, at
the office whose symbol or validation appears below.  All transactions are subject to proof and verification.

071083 11003 LN80300 R       AM N  16:02 09-01-00
CSR #4626                01
ELT SAV DEP  1147278103       AMT     $49,765.86

**For assistance, phone 1-800-CALL-MNB (1-800-225-5662), TDD users phone**
**1-800-662-4833).** Always obtain a validated receipt. Please see above for an explanation of this receipt.
Member FDIC                                                                    3
25032 (10/99)

Checks and other items are received for deposit subject to the provisions of the Uniform Commercial Code and
the rules and regulations governing your account.  Payments received may be returned uncredited if for improper
amount or if loan has been accelerated.
First Line:      Transaction No., Bank/Branch No., Operator ID, Document Type, AM/PM, Time, Date
AM/PM:         AM = Same day processing, PM = Next day processing, CI = Cash In, CO = Cash Out
Document Type: RC = Receipt, D = Duplicate, F = Offline
Second Line:   Branch location, Amount of cash within transaction
Third Line:    Type of transaction, Bank/Account No., Amount
This is a receipt for your Michigan National Bank checking account deposit or other transaction, as indicated, at
the office whose symbol or validation appears below.  All transactions are subject to proof and verification.

013059 11003 JJ21100 R       AM N  15:16 12-22-00
CSR #7295 ELT SAV DEP    01
1147278103                   AMT      $456.46

*75,780.61*

**For assistance, phone 1-800-CALL-MNB (1-800-225-5662), TDD users phone**
**1-800-662-4833).** Always obtain a validated receipt. Please see above for an explanation of this receipt.
Member FDIC

Checks and other items are received for deposit subject to the provisions of the Uniform Commercial Code and
the rules and regulations governing your account.  Payments received may be returned uncredited if for improper
amount or if loan has been accelerated.
First Line:      Transaction No., Bank/Branch No., Operator ID, Document Type, AM/PM, Time, Date
AM/PM:         AM = Same day processing, PM = Next day processing, CI = Cash In, CO = Cash Out
Document Type: RC = Receipt, D = Duplicate, F = Offline
Second Line:   Branch location, Amount of cash within transaction
Third Line:    Type of transaction, Bank/Account No., Amount
This is a receipt for your Michigan National Bank checking account deposit or other transaction, as indicated, at
the office whose symbol or validation appears below.  All transactions are subject to proof and verification.

048089 11003 QV76700 R       AM N  16:01 04-27-01
CSR #7040 ELT SAV DEP    01
1147278103                   AMT      $15,925.34

*85,600.80*

**For assistance, phone 1-800-CALL-MNB (1-800-225-5662), TDD users phone**
**1-800-662-4833).** Always obtain a validated receipt. Please see above for an explanation of this receipt.
Member FDIC                                                                    6



# EXHIBIT

# J

Judgment R.#170

AO 245B (Rev.)     Sheet 1 - Judgment in a Criminal Case

# United States District Court
## Western District of Michigan

UNITED STATES OF AMERICA

v.

STEVEN ALLEN MCGEE

**JUDGMENT IN A CRIMINAL CASE**

Case Number: 1:01-CR-122-02

USM Number: 10511-040

Kenneth Tableman (stand-by counsel)
Defendant's Attorney

THE DEFENDANT:
[x] pleaded guilty to Count 1 of an Information.
[ ] pleaded nolo contendere to Count(s)   which was accepted by the court.
[ ] was found guilty on Count(s)   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Offense Ended | Count |
|---|---|---|
| 21 U.S.C. 846, 841(a)(1), 841(b)(1)(A)(vii) | May 11, 2001 | 1 |

Nature of Offense:

Conspiracy to Manufacture More than 1,000 Marijuana Plants

The defendant is sentenced as provided in pages 2 through 6 of this judgment.  The sentence is
imposed pursuant to the Sentencing Reform Act of 1984.

[ ]   The defendant has been found not guilty on Count(s)  .

[x] Indictment is dismissed on the motion of the United States.

IT IS ORDERED that the defendant must notify the United States attorney for this district within 30 days of any change
of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this
judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of
any material change in the defendant's economic circumstances.

Date of Imposition of Judgment: May 20, 2004

DATED: May 20, 2004

ROBERT HOLMES BELL
CHIEF UNITED STATES DISTRICT JUDGE

01-1923    **FILED**

OCT 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

60

AO 245B (Rev. J3) Sheet 6 - Schedule of Payments
Judgment—Page 6 of 6
Defendant: STEVEN ALLEN MCGEE
Case Number: 1:01-CR-122-02

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

A    [x]    Lump sum payment of $ __100.00__ due immediately, balance due

      ☐    not later than _____, or
      [x]    in accordance with ☐ C, ☐ D,  ☐ E, or [x] F below; or

B    ☐    Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $_____ over a
period of (e.g., months or years), to commence ____ (e.g., 30 or 60 days) after the date of this judgment
or

D    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $_____ over a
period of (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from
imprisonment to a term of supervision; or

E    ☐    Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days)
after release from imprisonment.  The court will set the payment plan based on an assessment of the
defendant's ability to pay at that time; or

F    [x]    Special instructions regarding the payment of criminal monetary penalties:  Payment is to be made from
prison earnings at a rate of $20.00 per month and is to begin no later than one year from the date of this judgment.
Within thirty days of  release to supervision, defendant shall make monthly payments in the amount of $100.00.  The
balance is due in full not later than the end of the term of supervised release.


Unless the court has expressly ordered otherwise in the special instruction above, if this judgment imposes a period of
imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment.  All criminal
monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility
Program, are made to the Clerk of the Court, 399 Federal Building, 110 Michigan, NW, Grand Rapids, Michigan 49503,
unless otherwise directed by the court, the probation officer, or the United States attorney.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐    Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and
    Several Amount, and corresponding payee, if appropriate.


☐    The defendant shall pay the cost of prosecution.

☐    The defendant shall pay the following court cost(s):

☐    The defendant shall forfeit the defendant's interest in the following property to the United States:


Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine
principal, (5) community restitution, (6) fine interest (7) penalties, and (8) costs, including cost of prosecution and court
costs.

# EXHIBIT

# K

District Court Certified Docket Page Showing R.#56, the U.S. Marshals Writ of Execution ("Return") on the Initial Order of Forfeiture, Demonstrating the Marshals **Seizure** of Plaintiff's Savings Account On **June 12, 2001**, <u>Three Months Before</u>  the Initial Order of Forfeiture Was Issued On **October 19, 2001**

| | | (Entered: 09/26/2001) |
|---|---|---|
| 09/21/2001 | 46 | MARSHAL'S RETURN (CERTIFICATE OF SERVICE) showing National City Bank, Account No. 157652745 with a balance of $1,577.97 plus accrued interest received from DEA on 6/12/01 pursuant to Initial Order of Forfeiture (ldm) Modified on 09/26/2001 (Entered: 09/26/2001) |
| 09/21/2001 | 47 | MARSHAL'S RETURN (CERTIFICATE OF SERVICE) for Kalsee Credit Union, Account No. 80716 with a balance of $1,117.06 plus interest received from DEA on 6/12/01 per Initial Order of Forfeiture (ldm) (Entered: 09/26/2001) |
| 09/21/2001 | 48 | MARSHAL'S RETURN (CERTIFICATE OF SERVICE) for $4,466 US Currency seized from 2722 Mt. Olivet Road, Kalamazoo, MI received from DEA on 6/12/01 pursuant to Initial Order of Frofeiture (ldm) (Entered: 09/26/2001) |
| 09/21/2001 | 49 | MARSHAL'S RETURN (CERTIFICATE OF SERVICE) for CUNA Mutual Life Insurance Co. IRA No. 0140014819 with a balance of $13,048.97 plus interest received from DEA on 6/12/01 pursuant to Initial Order of Forfeiture (ldm) (Entered: 09/26/2001) |
| 09/21/2001 | 50 | MARSHAL'S RETURN (CERTIFICATE OF SERVICE) for Real Property 2722 Mount Olivet, Kalamazoo, MI showing property was posted on 9/20/01 with Initial Order of Forfeiture and by serving owner Todd Estes (ldm) (Entered: 09/26/2001) |
| 09/21/2001 | 51 | MARSHAL'S RETURN (CERTIFICATE OF SERVICE) for 78 Assorted Weapons received from DEA on 7/11/01 per Initial Order of Forfeiture (ldm) (Entered: 09/26/2001) |
| 09/21/2001 | 52 | MARSHAL'S RETURN (CERTIFICATE OF SERVICE) for Advertising in Kalamazoo Gazette showing service on 9/20/01 (ldm) (Entered: 09/26/2001) |
| 10/09/2001 | 53 | INITIAL ORDER of FORFEITURE (4 pgs) by Chief Judge Robert Holmes Bell as to deft Steven Allen McGee; (cc: all counsel, USM) [EOD Date 10/10/01] (dmh) (Entered: 10/10/2001) |
| 10/23/2001 | 54 | NOTICE by pltf USA of Forfeiture for Publication as to deft Steven Allen McGee (dmh) (Entered: 10/24/2001) |
| 10/23/2001 | 56 | US Marshal Receipt and Returns (CERTIFICATE OF SERVICE) showing property seized (taken from DEA) pursuant to Initial Order of Forfeiture as to deft Steven Allen McGee (dmh) (Entered: 10/24/2001) |
| 10/29/2001 | 57 | PETITION by pltf USA for Final Order of Forfeiture as to deft Todd Richard Estes w/proposed Final Order and certificate of service (dmh) (Entered: 10/29/2001) |
| 10/30/2001 | 58 | USMS Receipt and Return as to deft Steven Allen McGee, showing (Certificate of svc) property on STADIUM DRIVE posed with Order of Forfeiture, Advertising with Kalamazoo Gazette , and property in Pokagon Twp., Cass County, MI posed with Order of Forfeiture (dmh) (Entered: |

FILED

07-1923    OCT 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# EXHIBIT

# L

R.#56, The U.S. Marshals Writ of Execution (Return of
Service) Forfeiting the Plaintiff's Savings Account
and $87,355.48

Judge Bell

U.S. Department of Justice
United States Marshals Service

## PROCESS RECEIPT AND RETURN
See Instructions for "Service of Process by the U.S. Marshal"
on the reverse of this form.

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| United States of America | 1:01-CR-122 |

| DEFENDANT | TYPE OF PROCESS |
|---|---|
| Steven Allen McGee | Initial Order of Forfeiture |

**SERVE**
➡
**AT**

NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC., TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN
Michigan National Bank Accounts No. 4111941235 and 1147278103

ADDRESS (Street or RFD, Apartment No., City, State and ZIP Code)
in the amounts of $1,334.78 and $86,020.70.

SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW:

Brian K. Delaney, AUSA
United States Attorney's Office
P.O. Box 208
Grand Rapids, MI   49501-0208

| | |
|---|---|
| Number of process to be served with this Form - 285 | 1 |
| Number of parties to be served in this case | 1 |
| Check for service on U.S.A. | |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available For Service):

CATS ID No. 01-DEA-392842

Please seize property pursuant to Initial Order of Forfeiture

Signature of Attorney or other Originator requesting service on behalf of:

Brian K. Delaney, AUSA   By:  Norma

☒ PLAINTIFF
☐ DEFENDANT

| TELEPHONE NUMBER | DATE |
|---|---|
| (616)456-2404 | 10/18/01 |

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY — DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated. (Sign only first USM 285 if more than one USM 285 is submitted) | Total Process | District of Origin No. | District to Serve No. | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|
| | 1 | 40 | 40 | | 10/19/01 |

I hereby certify and return that I ☒ have personally served, ☒ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc., named above (See remarks below)

Name and title of individual served (if not shown above)

☐ A person of suitable age and discretion then residing in the defendant's usual place of abode.

Address (complete only if different than shown above)

01-1923
**FILED**
OCT 2 5 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| Date of Service | Time | am |
|---|---|---|
| 10/22/01 | 2:43 | pm |

Signature of U.S. Marshal or Deputy

| Service Fee | Total Mileage Charges (including endeavors) | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S. Marshal or | Amount of Refund |
|---|---|---|---|---|---|---|

REMARKS:

Received $87,355.48 U.S. Currency from DEA
S/A Mike Swidwinski on June 12, 2001

# EXHIBIT

# M

Title Commitment Document from Sale of Plaintiff's Forfeited Home at 10603 Stadium Drive, Kalamazoo, Mi., Illustrating Clause That Government Must Obtain **Warranty Deed** From Steven A. McGee To Convey Valid Title

FILE NO: 39-062084
REVISION # 1

2004 @ 9:01 AM
:aiakat: RAP    Legal Desc: B46X120130TB

# A.L.T.A. COMMITMENT

## SCHEDULE A.

Effective Date 7/21/02 AT 8:00 AM

1 POLICY OR POLICIES TO BE ISSUED:

OWNER'S: A.L.T.A. OWNERS POLICY: . . . . . . . . . . . . . . . . . . . . . .          $    110,000.00
POLICY FORM:          RESIDENTIAL OWNER'S POLICY

(A) PROPOSED INSURED:

MICHAEL D. MAHIEU

LOAN: A.L.T.A. LOAN POLICY: . . . . . . . . . . . . . . . . . . . .          NONE
POLICY FORM:

(B) PROPOSED INSURED:

2. THE ESTATE OR INTEREST IN THE LAND DESCRIBED OR REFERRED TO IN THIS COMMITMENT AND COVERED HEREIN IS A FEE SIMPLE, AND TITLE THERETO IS AT THE EFFECTIVE DATE HEREOF VESTED IN:

STEVEN A. MCGEE, SUBJECT TO THE INTEREST OF THE CITY OF KALAMAZOO ET AL AS EVIDENCED BY THE AFFIDAVIT RECORDED IN DOCUMENT NUMBER 2001-017862

3. THE LAND REFERRED TO IN THIS COMMITMENT IS LOCATED IN TEXAS TOWNSHIP, KALAMAZOO COUNTY, STATE OF MICHIGAN, AND IS DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTH AND SOUTH QUARTER LINE OF SECTION 6, TOWN 3 SOUTH, RANGE 12 WEST, 1,320 FEET NORTH OF THE CENTER OF SAID SECTION, RUNNING THENCE NORTH 89 DEGREES 50' WEST 333 FEET FOR THE PLACE OF BEGINNING OF THE LAND HEREIN CONVEYED; CONTINUING THENCE NORTH 89 DEGREES 50' WEST 500 FEET; THENCE NORTH 563.74 FEET TO THE SOUTHERLY LINE OF THE HIGHWAY KNOWN AS U.S. 12; THENCE NORTHEASTERLY ALONG SAID SOUTHERLY LINE OF SAID HIGHWAY, U.S. 12, TO A POINT DUE NORTH OF THE PLACE OF BEGINNING; THENCE SOUTH 783.7 FEET TO THE PLACE OF BEGINNING.

EXCEPTING: COMMENCING AT A POINT ON THE NORTH AND SOUTH QUARTER LINE OF SECTION 6, TOWN 3 SOUTH, RANGE 12 WEST, 1603.7 FEET NORTH OF THE CENTER OF SAID SECTION; RUNNING THENCE NORTH 89 DEGREES 50 MINUTES WEST, 333 FEET FOR THE PLACE OF BEGINNING OF THE LAND HEREINAFTER DESCRIBED; CONTINUING THENCE NORTH 89 DEGREES 50 MINUTES WEST, 193.99 FEET; THENCE NORTH, 49.74 FEET TO THE SOUTH LINE OF STADIUM DRIVE; THENCE SOUTHWESTERLY ALONG SAID SOUTH LINE OF STADIUM DRIVE, 419.30 FEET; THENCE SOUTH 500.00 FEET; THENCE NORTH 89 DEGREES 50 MINUTES WEST, 290.00 FEET; THENCE SOUTH 127.88 FEET; THENCE EAST ALONG THE NORTH FRACTIONAL 1/2 OF THE NORTHWEST FRACTIONAL 1/4 OF SECTION 6, TOWN 3 SOUTH, RANGE 12 WEST, 800.00 FEET; THENCE NORTH, 283.10 FEET TO THE PLACE OF BEGINNING.

P.P. 3909-06-130-013

07-1923   **FILED**

OCT 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

FORM #2202              SEE SCHEDULE B ATTACHED HERETO

APPELLANT'S BRIEF  04-1406

EXHIBIT          PAGE

5                23

Jul 13, 2004 @ 9:01 AM

(103 LD05 MT01 G001 FX01 TX07 TX12 F0720 TX32 GE03 RW60 TX94 ST01 FD20)

FILE NO: 39-062084
REVISION # 1

## SCHEDULE B

**The following are the general requirements to be complied with:**

1. PAYMENT OF THE FULL CONSIDERATION TO, OR FOR THE ACCOUNT OF, THE GRANTOR OR MORTGAGORS.

2. PAYMENT OF ALL TAXES, CHARGES, ASSESSMENTS, LEVIED AND ASSESSED AGAINST SUBJECT PREMISES, WHICH ARE DUE AND PAYABLE.

3. FOR ALL LOAN POLICIES: ESTOPPEL CERTIFICATE ON FORM PROVIDED BY THIS COMPANY SIGNED BY OR ON BEHALF OF ALL MORTGAGORS ACKNOWLEDGING RECEIPT OF THE MORTGAGE CONSIDERATION AND MAKING REPRESENTATIONS AS TO THE AGES OF INDIVIDUAL MORTGAGORS AND SUCH OTHER MATTERS AS ARE THEREIN SET FORTH.

4. FOR ALTA LOAN POLICIES WITHOUT THE EXCEPTIONS IN SCHEDULE B, II, 2 HEREOF: PROPER SWORN STATEMENTS AND WAIVERS SHOWING PAYMENT OR RELEASE OF ALL LIEN RIGHTS COVERING IMPROVEMENT MADE ON SUBJECT LAND IN THE LAST 90 DAYS OR SATISFACTORY PROOF THAT NO IMPROVEMENTS HAVE BEEN MADE WITHIN THE LAST 90 DAYS; AND, SATISFACTORY SURVEY BY AN APPROVED SURVEYOR SHOWING NO VARIATION IN LOCATION OR DIMENSIONS, ENCROACHMENTS, OR ADVERSE RIGHTS, AND SUCH EVIDENCE OF POSSESSION AS MAY BE REQUIRED.

5. INSTRUMENTS NECESSARY TO CREATE THE ESTATE OR INTEREST TO BE INSURED MUST BE PROPERLY EXECUTED, DELIVERED AND DULY FILED FOR RECORD.

6. RECORD A WARRANTY DEED FROM MARLENE Y. RHEAULT TO UNITED STATES OF AMERICA (TO TERMINATE THE INTEREST EVIDENCED BY THE WARRANTY DEED EXECUTED BY STEVEN A. MCGEE TO MARLENE Y. RHEAULT RECORDED IN DOCKET NO. 2001-029622, KALAMAZOO COUNTY RECORDS).

7. RECORD A WARRANTY DEED FROM STEVEN A. MCGEE AND WIFE, IF ANY TO UNITED STATES OF AMERICA (PURSUANT TO PLEA AGREEMENT WITH STEVEN ALLEN MCGEE IN THE MATTER OF UNITED STATES OF AMERICA VS STEVEN ALLEN MCGEE, U.S. DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION CASE NO. 1:01:CR:122.

8. RECORD A WARRANTY DEED FROM UNITED STATES OF AMERICA TO MICHAEL D. MAHIEU.

9. ALL DEEDS DELIVERED AT CLOSING MUST COMPLY WITH THE RECORDING REQUIREMENTS OF THE SUBDIVISION CONTROL ACT AMENDMENT OF 1996 REGARDING FARM OPERATIONS AND LAND DIVISION.

10. RECORD A RELEASE OF THE MORTGAGE IN THE ORIGINAL AMOUNT OF $30,000.00, EXECUTED BY STEVEN A. MCGEE TO MARLENE RHEAULT DATED JUNE 22, 2000, RECORDED JULY 11, 2001 IN DOCUMENT NUMBER 2001-027352.

11. RECORD A RELEASE OF THE AFFIDAVIT RELATING TO MATTER AFFECTING TITLE TO REALTY FROM THE CITY OF KALAMAZOO AS EVIDENCED BY DOCUMENT NUMBER 2001-017862.

FORM #T-2203

SCHEDULE B — CONTINUED ON NEXT PAGE



| APPELLANT'S BRIEF | 04-1406 |
|---|---|
| EXHIBIT | PAGE |
| **5** | **24** |

# EXHIBIT

# N

Motion For Return of Unlawfully Seized Property [R.#140]

# EXHIBIT

# O

Motion For Return of Unlawfully Seized Property [R.#141]

01-1923

**FILED**

OCT 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# EXHIBIT

# P

Motion For Return of Unlawfully Seized Property [R.#142]

# EXHIBIT

# Q

Face Page of Motion To Strike Portions of Appellee Brief
#04-1706 Due To Fraud On The Court, and U.S. Postal Receipts
Showing Delivery to the Sixth Circuit On March 20, 2006

07-1923

**FILED**

OCT 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES

PLAINTIFF-APPELLEE

     V               FILED UNDER PROTEST       CASE# 04-1406

STEVEN A. MCGEE

DEFENDANT-APPELLANT

MOTION TO STRIKE PORTIONS OF APPELLEE BRIEF

and to

REQUIRE REDRAFTING AND RESUBMISSION OF THE APPELLEE BRIEF,

&&

REQUEST FOR ETHICAL SANCTIONS

Comes now the Appellant, Steven A. McGee, in pro per, and
moves this Court to Order portions of the recent Appellee Brief
filed in this matter by AUSA Shekmer and U.S. Attorney Chiara stricken
from the record, and to Order the Appellee Brief to be redrafted and
resubmitted without what are alleged to be fraudulent inclusions in
the Brief by the U.S. Attorney's Office that would prejudice
Appellant McGee's rights on Appeal if allowed to remain in the Appellee
Brief where they can be read by reviewing judges.

There are many seemingly intentional misstatements of fact
and law contained in the 140 page Appellee Brief indicating deceptive
intent, but the specific inclusions in the Appellee Brief that are
alleged to actually be fraudulent and require the immediate attention
of the Court, excision from the Appellee Brief, and the imposition
of sanctions on the U.S. Attorney's Office, are the references to,
and inclusion of, on pages 63,64 & 65, in support of the fallacious
argument that the Government ever established the "nexus" required

(1)

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Clerk of the Court
U.S. Court of Appeals
100 East Fifth St, Rm 540
Potter Stewart US Courthouse
Cincinnati, Ohio 45202-3988

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                   ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
                                   3/28/06

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail       ☐ Express Mail
   ☐ Registered           ☐ Return Receipt for Merchandise
   ☐ Insured Mail         ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)

7003 3110 0006 1303 2675

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Clerk of the Court
U.S. Court of Appeals
Leonard Green
100 East Fifth St, Rm 540
Potter Stewart US Courthouse
Cincinnati, Ohio 45202

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                   ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
                                   3/28/06

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail       ☐ Express Mail
   ☐ Registered           ☐ Return Receipt for Merchandise
   ☐ Insured Mail         ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)

7004 2510 0005 4444 8031

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

# EXHIBIT

# R

Downloaded Court of Appeals Docket Sheet From Pacer
Showing That the Motion To Strike Portions of the Appellee
Brief Was Not Recorded in the Sixth Circuit Docket

CA6 Home   Full_Docket

If you view the full docket, you will be charged for 13 Pages   $ 1.04

## US Court of Appeals for the Sixth Circuit
## Case Summary

Court of Appeals Docket #: 04-1706                              Filed: 6/8/04
Nsuit:    0
USA v. McGee
Appeal from: Western District of Michigan at Grand Rapids

Lower court information:
     District: 0646-1 : 01-00122
     Trial Judge: Robert Holmes Bell, Chief District Judge

| | |
|---|---|
| 3/9/06 | Request to waive oral argument and submit case on the briefs, (waiver on page: xvi), filed by B. Rene Shekmer for Appellee USA [04-1706] (stb) [04-1706] |
| 3/30/06 | BRIEFING LETTER SENT resetting schedule: USA to provide a shortened designation to apply to this case by 4/14/06. Appendix 4/28/06; all final briefs 5/12/06. [04-1706] (stb) [04-1706] |
| 3/31/06 | FILED : revised designation from B. Rene Shekmer for Appellee USA. [04-1706] (only removing 16 pgs) (stb) [04-1706] |
| 4/10/06 | Appellant MOTION : for leave to file reply brief out of time. Motion filed by appellant McGee. Certificate of service 4/6/06. [04-1706] (stb) [04-1706] |
| 4/10/06 | REPLY BRIEF filed by appellant McGee. Copies: 1 Certificate of service 4/6/06. Number of Pages: 100+. [04-1706] (stb) [04-1706] |
| 4/17/06 | FILED : addendum to reply brief (supplemental reply brief filed in 04-1706) from appellant McGee. [04-1706] (stb) [04-1706] |
| 4/22/06 | RULING granting appellant's motion to file reply brief out of time. [04-1706] (stb) [04-1706] |
| 4/27/06 | APPENDIX filed by Melvin Houston for Appellant Steven A. McGee in 04-1706. Copies: 6, 3 volumes (vol 3 PSI). Certificate of service 4/27/06. [04-1706, 04-1406, 04-2003, 04-2005, 05-2198] (stb) [04-1406 04-1706 04-2003 04-2005 05-2198] |
| 5/1/06 | FINAL BRIEF filed by Melvin Houston for appellant McGee. 7 copies. Certificate of service 4/29/06. [04-1706] (stb) [04-1706] |
| 5/12/06 | FINAL copy of Supplemental brief from appellant McGee. Copies: 1. Certificate of service 5/9/06. [04-1706] (stb) [04-1706] |

07-1923

FILED

OCT 25 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/17/2006 07:46:57 | | | |
| PACER Login: | sm2329 | Client Code: | |
| Description: | dkt summary | Case Number: | 04-1706 |
| Billable Pages: | 1 | Cost: | 0.08 |

# EXHIBIT

# S

Later Sixth Circuit Docket Demonstrating Tampering With the Docket by Case Manager Sue Burlage In Later Filing the Motion To Strike Portions of the Appellee Brief, and Retroactively Backdating the Filing Almost Three Months To March 20, 2006

*07-1923*

**FILED**

OCT 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

04-1706   USA v. McGee

3/20/06          Appellant MOTION : to strike portions of appellee brief.
                 Motion filed by appellant McGee. Certificate of service
                 3/11/06. [04-1706] (stb) [04-1706]

3/20/06          Appellant MOTION : for an enlargement of time to file a
*Added to docket*   supplemental reply brief. Objections to briefing deadlines
*after 5-17-06*     and consolidation of appeals. Motion filed by appellant
                 McGee. Certificate of service 3/17/06. [04-1706] (stb)
                 [04-1706]

3/30/06          BRIEFING LETTER SENT resetting schedule: USA to provide a
                 shortened designation to apply to this case by 4/14/06.
                 Appendix 4/28/06; all final briefs 5/12/06. [04-1706] (stb)
                 [04-1706]

3/31/06          FILED : revised designation from B. Rene Shekmer for
                 Appellee USA. [04-1706] (only removing 16 pgs) (stb)
                 [04-1706]

4/10/06          Appellant MOTION : for leave to file reply brief out of
                 time. Motion filed by appellant McGee. Certificate of
                 service 4/6/06. [04-1706] (stb) [04-1706]

4/10/06          REPLY BRIEF filed by appellant McGee. Copies: 1 Certificate
                 of service 4/6/06. Number of Pages: 100+. [04-1706] (stb)
                 [04-1706]

4/17/06          FILED : addendum to reply brief (supplemental reply brief
                 filed in 04-1706) from appellant McGee. [04-1706] (stb)
                 [04-1706]

4/22/06          RULING granting appellant's motion to file reply brief out
                 of time. [04-1706] (stb) [04-1706]

4/27/06          APPENDIX filed by Melvin Houston for Appellant Steven A.
                 McGee in 04-1706.  Copies: 6, 3 volumes (vol 3 PSI).
                 Certificate of service 4/27/06. [04-1706, 04-1406, 04-2003,
                 04-2005, 05-2198] (stb) [04-1406 04-1706 04-2003 04-2005
                 05-2198]

5/1/06           FINAL BRIEF filed by Melvin Houston for appellant McGee. 7
                 copies. Certificate of service 4/29/06. [04-1706] (stb)
                 [04-1706]

5/12/06          FINAL copy of Supplemental brief from appellant McGee.
                 Copies: 1. Certificate of service 5/9/06. [04-1706] (stb)
                 [04-1706]

5/15/06          FINAL BRIEF filed by B. Rene Shekmer for Appellee USA in
                 04-1706 .  Copies: 7. Certificate of service 5/11/06.
                 [04-1706] (stb) [04-1706]

5/16/06          Supplemental final reply brief filed by appellant McGee.
                 Copies: 1. Certificate of service 5/12/06. [04-1706] (stb)

Docket as of June 26, 2006 9:17 pm                    Page 13

04-1706   USA v. McGee

                    [04-1706]

5/23/06             Case referred to staff attorney for possible Rule 34
                    submission. [04-1706] (alr) [04-1706]

6/8/06              Appellant MOTION : to compel clerk to file motion to
                    strike. (already on docket) Motion filed by appellant
                    McGee. Certificate of service 6/5/06. [04-1706] (stb)
                    [04-1706]

6/8/06              Appellant MOTION : to compel service of the joint appendix
                    and to hold the appeals in abeyance. Motion filed by
                    appellant McGee. Certificate of service 6/6/06. [04-1706,
                    04-1406, 04-2003, 04-2005, 05-2198] (stb) [04-1406 04-1706
                    04-2003 04-2005 05-2198]

6/19/06             CJA-21 appendix sent to Administrative Office. [04-1706]
                    Payment made to Becker Gallagher on voucher 060619000022 in
                    the amount of 1328.36. (cf) [04-1706]

Docket as of June 26, 2006 9:17 pm                    Page 14

| PACER Service Center |||
|---|---|---|
| Transaction Receipt |||
| 06/29/2006 11:52:49 |||
| PACER Login: | sm2329 | Client Code: |
| Description: | dkt report | Case Number: | 04-1706 |
| Billable Pages: | 14 | Cost: | 1.12 |

no change   8/28/06 @ 12:42 pm.
  "    "    9/6/06 @ 12:49 p.m.
  "    "    9/11/06 @ 8:13 Am

no change  7/4/06 @ 11:20 Am.
  "    "    7/6/06 @ 11:22 Am
  "    "    7/10/06 @ 10:11 AM
  "    "    7/17/06 @ 12:02 pm
  "    "    7/26/06 @ 8:04 am
  "    "    7/28/06 @ 8:47 Am
  "    "    7/31/06 @ 4:13 pm
  "    "    8/3/06 @ 5:33 pm
  "    "    8/9/06 @ 3:19 pm
  "    "    8/21/06 @ 12:39 pm.

# EXHIBIT

# T

Face Page of Motion To Require Revision of the Joint Appendix
Due To Fraud On The Court, and U.S. Postal Receipts Showing
Delivery to the Sixth Circuit

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES

PLAINTIFF-APPELLEE

V

STEVEN A. MCGEE

DEFENDANT-APPELLANT

CASE# 04-1706, 04-2003,
04-2005, & 05-2198

MOTION TO REQUIRE REVISION OF THE JOINT APPENDIX

DUE TO FRAUD ON THE COURT & FIFTH AMENDMENT VIOLATIONS,

&

MOTION FOR ETHICAL SANCTIONS ON THE U.S. ATTORNEY'S OFFICE

Comes now the Appellant, Steven A. McGee in pro per, and
pursuant to the inherent supervisory powers of the Court of Appeals
to protect judicial integrity and to provide a remedy for violations
of recognized rights, United States v Hasting, supra, Federal Rules of
Appellate Procedure 30(d), Sixth Circuit Rule 30(m), and 28 USC 1927,
moves this Honorable Court to Order the Joint Appendix filed in the
above-captioned matters to be withdrawn from the record until it has
been satisfactorily revised by the Government to avoid prejudicing the
Appellant's substantial due process rights on Appeal and, further, to
Order that the cost of the necessary revisions to the Joint Appendix
be borne personally by AUSA B. Rene Shekmer and U.S. Attorney Chiara
as a disciplinary sanction for knowingly and fraudulently excluding
from the Joint appendix material and relevant portions of designated
docket entries necessary to impartial deliberation of issues raised 1-1923
on Appeal, and for fraudulently including an unrevised Presentence
Report in the Joint Appendix that contains information stricken from
the PSI and the record by the presiding Judge during Sentencing on
May 20, 2004. [R.#216,JA: pg.784-].

FILED
OCT 25 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES

PLAINTIFF-APPELLEE

V                                                    CASE# 04-1706,  04-2003,
                                                     2005, & 05-2198
STEVEN A. MCGEE

DEFENDANT-APPELLANT

CERTIFICATE OF SERVICE

        Now comes the Appellant, Steven A. McGee to hereby certify

that on August 17 2006 he mailed by first class mail, postage

prepaid a copy of a Motion To Require Revision of the Joint Appendix

Due To Fraud On The Court and Fifth Amendment Violations and, Motion

For Ethical Sanctions On The U.S. Attorney's Office, filed in the

above-captioned matters, to the following address:

                                        AUSA Barbra Shekmer
                                        c/o U.S. Attorney's Office
                                        P.O. Box 208
                                        Grand Rapids, Mi. 49501


Steven A. McGee
#10511-040
LSCI Allenwood
P.O. Box 1000
White Deer, Pa. 17887

*Steven A McGee*
8-17-06



**U.S. Postal Service**
**CERTIFIED MAIL, RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com.

OFFICIAL USE

| | |
|---|---|
| Postage | $ 4.95 |
| Certified Fee | 2.40 |
| Return Reciept Fee (Endorsement Required) | 1.85 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 9.20 |

Postmark Here

Sent To  U.S. Court of Appeals
Street, Apt. No.; or PO Box No.  100 East Fifth St. Rm 532
City, State, ZIP+4  Cincinnati, Ohio 45202

PS Form 3800, June 2002

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Clerk of the Court
U.S. Court of Appeals
100 East Fifth St. Rm 532
Potter Stewart U.S. Courthouse
Cincinnati Ohio 45202

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____    ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  J. Sievering    C. Date of Delivery  8/21/06

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number (Transfer from service label)
7003 3110 0006 1302 5769

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

# EXHIBIT

# U

Letter from Plaintiff McGee to Sixth Circuit Clerk's
Office of November 29, 2006, Requesting Public Judicial
Records From the Docket of His Own Appeal #04-1706
Seeming to Show the Involvement of Case Manager Sue Burlage
In Efforts to Conceal the Fraud On The Court of Removing
The Suppression Motions From the Judicial Record

Clerk of the Court
U.S. Court of Appeals
For the Sixth Circuit
Leonard Green                                    November 29, 2006

                    Dear Sir;

                    I am writing to request that copies of public

judicial records from the docket of the Sixth Circuit in my criminal

Appeals be provided to me. Specifically, I am requesting copies of

the documents entered into the record in COA# 04-1706 dated 9/22/04,

3/30/06, & 3/31/06, where the docket states:

(1)        "9/22/04---- Letter sent ny Chief Deputy declaring as moot the
           motion to correct certified record [3028600-1] filed by Steven Allen
           McGee [04-1706] appeals court does not accept new evidence; tapes
           already part of dc record; will be considered, tapes returned. (ert)"

(2)  3/30/06 "Briefing Letter Sent resetting schedule: USA to provide a
           shortened designation to apply to this case by 4/14/06. Appendix 4/28/06;
           all final briefs 5/12/06. [04-1706] (stb)"

(3)        "3/31/06---- Filed: revised designation from B. Rene Shekmer for
           Appellee USA. [04-1706] (only removing 16 pages) (stb) [04-1706]"

           My attorney-in-fact, Charles Smith, has repeatedly contacted

the Clerk's Office over the past two weeks, by both phone and fax, to

request these documents and to arrange for payment. The Clerk's Office

has yet to comply with Mr. Smith's requests for the records or to

arrange for payment, despite his numerous requests. 07-1923

           As you may be aware from my recent filings with the Court of

my letters to Congressman John Conyers and Congressman Waxman of the

House Judiciary Committee and the Committee On Government Reform, that

have yet to be recorded in the docket, I have requested an investigation

by Congress and the FBI into the removal or destruction of my filed

Suppression Motions [R.#23, 1:01-Cr-122] from the judicial records of

the District Court and Court of Appeals, and the possible involvement

**FILED**

OCT 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

(1)

of the U.S. Attorney's Office and judicial officers of the District
Court or the Sixth Circuit in the disappearance of those judicial
records, which were crucial to my claims of ineffective assistance
on direct Appeal.

The documents I am requesting from the docket on 9/22/04,
3/30/06, and 3/31/06 may be relevant to the inquiry into the
destruction or removal of my judicial records, and this letter stands
as official Notice of my request for those documents, and intention
to file a civil action to acquire those records if they are not
provided to my attorney-in-fact Charles Smith within ten days of the
official receipt of this letter.

Due to the already previously documented frauds on the Court
committed by the Clerk's Office in refusing to file validly submitted
Motions in my Appeals, in attempting to cover-up for prosecutorial
misconduct by the U.S. Attorney's Office and the destruction or
removal of documents from my Federal judicial records, the Clerk's
Office is not entitled to any deference in this matter, and I
therefore expect literal and immediate compliance with the law and
the provision of the requested records.

                                        Sincerely yours,

                                        Steven A. McGee

# EXHIBIT

# V

Records of Plaintiff's Attorney-In-Fact Charles Smith's
Efforts to Acquire Public Judicial Records From Sixth
Circuit Records Clerk Ken Lumas, Including the Payment
of $26.00 For Records That Were Never Delivered

LOG OF COPY REQUEST FROM 6TH CIRCUIT COURT OF APPEALS

Case Number 04-1706
(Compiled by Charles G. Smith, Attorney-in-fact for Steven A. McGee)

November 13, 2006 at 8:47am   faxed request to COA copy clerk "Ken" seeking copies of docket entries dated 3/30/2006 and 3/31/2006   (fax transmission verified)

November 16, 2006    called the Court and was informed that "Ken" was not in today. I left my name and number with the person answering the phone.

November 21, 2006 at 10:46am   spoke with "Ken" but he had not gotten the file yet to make copies of the requested docket entries.

November 28, 2006 at 10:42 am   spoke with "Ken" and gave him my phone number to call me since he had not gotten the file yet.

December 4, 2006 at 3:30pm   re-faxed the original fax to the Court and added the additional docket entry from 9/22/2004 issued by the Chief Deputy.

December 4, 2006 at 4:44pm   called "Ken" to get confirmation of the second request with additional docket entry.  Ken informed me that the file was in the sub-basement and I would have to pay a $26.00 fee to have it brought up for copying.

December 4, 2006 at 5:54pm   my check number 3889 in the amount of $26.00 was mailed from the service counter of the Westwood US Post Office to the Court.

December 12, 2006 at 12:30pm   spoke with "Ken" and he confirmed payment was received, file was requested, but had not been brought up from the basement yet. He said it should be available by Dec. 15th .

December 19, 2006   "Ken" out of the office until December 26th

December 26, 2006 at 9:00am   "Ken" stated that he had not been given the file yet and requested I call back on Thursday 12/28

January 5, 2007at 10:25am   "Ken" indicated it was his first day back and he was swimming in paper. He took my number and will call me back.

January 9, 2007 at 12:55pm  I left a message on "Ken's" voice mail to call me back with the status of my request.

January 16, 2007 at 9:05am  "Ken" indicated that he still does not have the file yet and He will call me back.  He has a sticky note right in front of him to remind him.
(This was the last contact with the Court concerning this matter – request un-answered!) *07-1923*

**FILED**

OCT 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

US Court of Appeals / 6th Circuit
Attn: Ken – Copy Clerk
540 Potter Stewart Courthouse
100 East Fifth Street
Cincinnati, OH 45202

```
=====================================
          WESTWOOD POST OFFICE
          KALAMAZOO, Michigan
               490099998
             2539230004-0096
12/04/2006 (269)343-2560 05:54:33 PM
=====================================
========= Sales Receipt =========
Product         Sale Unit      Final
Description      Qty Price      Price

CINCINNATI OH 45202            $0.39
First-Class
0.40 oz.
                              ========
Issue PVI:                     $0.39

                              =========
Total:                         $0.39

Paid by:                       $0.40
Cash                          -$0.01
Change Due:

Bill#:100C400136528
Clerk:21

All sales final on stamps and postage.
Refunds for guaranteed services only.
     Thank you for your business.
            Customer Copy
```

12/12/06 @ 12:30pm
Ken: * file was requested
     * ck. was received
     * file not up yet, should
       be available by FRI. 12/15

12/26/06 – 9 Am
file not to him yet - call back Thursday

12/28/06
Ken: 1st day back, swimming in

12/19/06 Ken out of the office till
Tues. 12/26/06

1/8/07 @ 10:25 am

## Account Detail For SMITH SMITH Account 7745540 Checking  9

### Draft

| YTD Dividends | Annual Percent Yield | Dividend Rate | Prior-Year Dividends |
|---|---|---|---|
| $0.00 | 0.75 | 0.750% | $32.82 |

**History for 12/1/2006 to 12/31/2006**

| Effective Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| 12/04/2006 | Withdrawal (Item #3883) | -$40.00 | $1,379.71 |
| 12/05/2006 | Withdrawal (Item #3884) | -$20.00 | $1,359.71 |
| 12/06/2006 | Withdrawal (Item #3879) | -$86.00 | $1,273.71 |
| 12/06/2006 | Withdrawal (Item #3886) | -$145.99 | $1,127.72 |
| 12/08/2006 | Withdrawal (Item #3885)-ACH-A-4829 ARCCharter (chk pymt ) | -$37.63 | $1,090.09 |
| | Withdrawal (Item #3887)-ACH-A-4622 ARCIN MI POWER CO (CHECK PYMT ) | -$58.49 | $1,031.60 |
| 12/08/2006 | Withdrawal (Item #3889) | -$26.00 | $1,005.60 |
| | Withdrawal-ACH-A-2424 TRANSFIRST LLC (DISCOUNT ) 3230227355 SMITH & ASSOCIATES DISCOUNT | -$13.42 | $992.18 |
| 12/11/2006 | Withdrawal (Item #3888) | -$60.48 | $931.70 |
| 12/14/2006 | Deposit | $1,250.66 | $2,182.36 |
| 12/18/2006 | Withdrawal (Item #3894) | -$228.56 | $1,953.80 |
| 12/19/2006 | Withdrawal (Item #3891)-ACH-A-6650 ARCCARDMEMBER SERV (CR CD PMT ) | -$31.76 | $1,922.04 |
| 12/19/2006 | Withdrawal (Item #3890) | -$9.50 | $1,912.54 |
| 12/20/2006 | Withdrawal (Item #3892) | -$72.96 | $1,839.58 |
| 12/21/2006 | Withdrawal (Item #3893) | -$159.32 | $1,680.26 |
| 12/21/2006 | Withdrawal (Item #3895) | -$225.00 | $1,455.26 |
| 12/22/2006 | Withdrawal (Item #3896) | -$201.85 | $1,253.41 |
| 12/26/2006 | Deposit @ TAMRA Trace #00001L004988 Transfer "DTD" 50.00 from account 9030470 share 9 | $50.00 | $1,303.41 |
| 12/27/2006 | Withdrawal (Item #3900) | -$42.23 | $1,261.18 |
| 12/28/2006 | Withdrawal (Item #3897) | -$916.99 | $344.19 |
| 12/29/2006 | Withdrawal (Item #3899) | -$200.00 | $144.19 |
| 12/30/2006 | Deposit @ Personal Credit Union Trace #2922252472 Transfer "STD" 150.00 from account 2817410 share 0 | $150.00 | $294.19 |
| 12/31/2006 | Dividend Through date: 31DEC2006 | $2.25 | $296.44 |